# EXHIBIT A

*Plaintiff's First Amended Complaint*
No. 4:22-cv-4120

2022-SW-0180

2022-SW-0180
WARR
Warrant
6586575

**WARRANT NUMBER:** ____ISW011422 JCB

### AFFIDAVIT FOR SEARCH WARRANT

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| **COUNTY OF FORT BEND** | § |
| **268TH JUDICIAL DISTRICT** | § |

The undersigned Affiant, being a peace officer under the laws of Texas, and being duly sworn, on oath makes the following statements and accusations:

**I. THERE IS IN FORT BEND COUNTY A SUSPECTED PLACE AND PREMISES DESCRIBED AS FOLLOWS:**

One (1) Black Campro body worn camera tagged into evidence under Tag Number 210004180 as Item Number 3.

This body worn camera is also referred to in this Affidavit as SUBJECT BODY WORN CAMERA.

The SUBJECT BODY WORN CAMERA is currently located at and/or under the control of the Fort Bend County Sheriff's Office, 1410 Richmond Parkway, Richmond, Fort Bend County, Texas. The SUBJECT BODY WORN CAMERA is currently located at the Fort Bend County Sheriff's Office Evidence Room.

A photograph of the herein-described body worn camera is embedded below; it is to be considered a part of this affidavit and included for all descriptive purposes





**2. SAID SUSPECTED BODY WORN CAMERA AND PREMISES ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS:**

Eric Fagan, Fort Bend County Sheriff
Justin Pulliam (Owner/Suspect)

**3. IT IS THE BELIEF OF THE AFFIANT, AND HE HEREBY CHARGES AND ACCUSES THAT:**

Affiant has reason to believe and does believe that **Justin Pulliam (W/M DOB: 11/21/1989),** committed the offense of **Interference with Public Duties (PC38.15)** when Justin Pulliam did then and there, while Sergeant Taylor Rollins, a peace officer, was performing a duty or exercising authority imposed or granted by law, namely responding to a report of a person with homicidal ideations that was potentially barricaded and/or undergoing severe mental health crisis or securing an incident scene, with criminal negligence, interrupt, disrupt, impede, or interfere with Sergeant Taylor Rollins by not following Sergeant Taylor Rollins' instructions to move or causing a delay in Sergeant Taylor Rollins' ability to secure the scene.

**4. THE PROPERTY AND ITEMS WHICH ARE LOCATED AT THE FORT BEND COUNTY SHERIFF'S OFFICE EVIDENCE ROOM, AND CONSTITUTE EVIDENCE OF DESCRIBED OFFENSE AND WHICH TEND TO SHOW THAT THE ABOVE DESCRIBED SUSPECT COMMITTED THE ABOVE DESCRIBED OFFENSE ARE MORE PARTICULARLY DESCRIBED AS BEING:**

The property and items which are located therein and which constitute evidence or instrumentalities of an offense and which tend to show that **Justin Pulliam** committed the offense of **Interference with Public Duties (PC38.15)** include but are not limited to:

1. Any photographs, digital images, or video recordings on SUBJECT BODY WORN CAMERA that would show Justin Pulliam's participation in the offense of Interference with Public Duties occurring on December 21, 2021 in Fort Bend County, Texas, or is evidence of the offense of Interference with Public Duties occurring on December 21, 2021 in Fort Bend County, Texas;
2. Computer programs or media players capable of viewing, displaying, and/or playing photographs, digital images, or video recordings.

**AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING FACTS:**

Affiant, Detective Travis James, is a credible person and a Texas Peace Officer with the Fort Bend County Sheriff's Office. Affiant has over twelve (12) years of certified Law Enforcement experience, including ten (10) years of patrol with certifications in Crisis Negotiations and has been employed as a commissioned Texas Peace Officer with the Fort Bend County Sheriff's Office for four (4) years. Affiant is currently assigned as a Detective to the Criminal Investigation Division, Robbery/Homicide Section.

Affiant's belief that the foregoing facts and allegations are true and correct is based upon his personal knowledge of this case, including review of Fort Bend County Sheriff's Office Offense Report #21-



50633, and conversations with Sergeant A. Hickey, Sergeant T. Rollins and Deputy R. Rodriguez, peace officers with the Fort Bend County Sheriff's Office, which collectively reveals the following:

Affiant read Fort Bend County Sheriff's Office Offense Report #21-50633, and learned that on Tuesday, December 21, 2021, Sergeant Rollins and Deputy Rodriguez were dispatched to 22134 FM 762, Damon, Fort Bend County, Texas in reference to a Check Welfare. Affiant learned from the report that the situation had evolved into an armed barricaded subject situation.

Affiant read in Sergeant Rollins' report that when Sergeant Rollins arrived on scene, Sergeant Rollins observed a male subject, who he identified as Justin Pulliam DOB: 11/21/1989, to be recording the incident with a body worn camera and a handheld camera. Affiant also observed that Sergeant Rollins notated in his reports that Sergeant Rollins observed Justin Pulliam standing in the direct line of fire.

Sergeant Rollins is known to Affiant as being a member, or former member, of the Fort Bend County Regional SWAT team west, and has training in recognizing the danger of Justin Pulliam being in the direct line of fire of the barricaded subject.

Sergeant Rollins documented in his report that he requested Justin Pulliam move across the street due to him being in the line of fire of the barricaded person, and that Justin Pulliam initially began to walk across the street. Affiant read in Sergeant Rollins report that Justin Pulliam stopped, and questioned Sergeant Rollins reasoning. Affiant read that Sergeant Rollins told Justin Pulliam it was for his (Pulliam's) safety. Affiant read that Sergeant Rollins told Justin Pulliam again to move across the street.

In the report, Sergeant Rollins documented that Justin Pulliam refused to comply, and so was placed into custody for Interference with Public Duties, due to the safety hazard Justin Pulliam posed as well as causing Sergeant Rollins' attention to be diverted from the barricaded subject while Sergeant Rollins was attempting to secure the scene. In the report, Sergeant Rollins documented that Justin Pulliam was placed inside a marked police unit, and that police unit was moved to a safer location.

Affiant then read Deputy Rodriguez's report. In the report, Deputy Rodriguez wrote that as he and Deputy M. Lacey were securing the perimeter of the incident for the safety of himself and the public, he observed Justin Pulliam arrive on scene. In the report, Affiant read that Deputy Rodriguez wrote Deputy Rodriguez saw Justin Pulliam exit a vehicle and begin filming the scene.

Affiant read that Deputy Rodriguez observed Sergeant Rollins speak with Justin Pulliam, and heard Sergeant Rollins tell Justin Pulliam to leave the location for safety purposes. Affiant read that Deputy Rodriguez overheard Justin Pulliam argue with Sergeant Rollins. Affiant read that Justin Pulliam was arrested after Justin Pulliam refused to leave the location.

Affiant read that Deputy Rodriguez seized the handheld camera equipment, cell phone, and **Campro body worn camera (SUBJECT BODY WORN CAMERA)** Justin Pulliam was using on scene and placed all items into the Fort Bend County Sheriff's Office Evidence room. Affiant learned the Campro body worn camera (SUBJECT BODY WORN CAMERA) was photographed. A photograph of the Campro body worn camera seized from Justin Pulliam is included below:





Affiant learned that the Campro body worn camera (SUBJECT BODY WORN CAMERA) was assigned Tag Number 210004180 and Item Number 3 when booked into the Fort Bend County Sheriff's Office Evidence Room.

Affiant later contacted and spoke with Sergeant Rollins. Affiant was advised that after the detention of Justin Pulliam, Sergeant Rollins observed the body worn camera Justin Pulliam had been wearing was on. However, Sergeant Rollins stated that he was not sure if the body worn camera was recording. Sergeant Rollins advised Affiant that the handheld camera was on and recording, as he stopped the recording and turned the camera off.

Sergeant Rollins stated to Affiant that he does not recall if the cell phone was on and recording at the time of the detention.

Affiant was also advised by Sergeant Rollins that while on scene, Justin Pulliam would turn his body towards Sergeant Rollins whenever Sergeant Rollins was speaking with Justin Pulliam, indicating that the body worn camera was on and recording.

Deputy Rodriguez also advised Affiant that the two (2) memory cards listed in the property report were removed from the handheld camera system. Deputy Rodriguez stated this was done to inventory *all property* seized during the arrest. Deputy Rodriguez stated to Affiant that he is unaware if there are any other forms of internal/external memory for the camera system.

Affiant knows that Justin Pulliam on many occasions has arrived at the scenes of police investigations, filmed what is occurring at the scenes using equipment capable of making video recordings, and posted the filmed video footage on social media.

Based on the statements made to Affiant, it is the belief of the Affiant that Justin Pulliam used the black Campro body worn camera (SUBJECT BODY WORN CAMERA) to record activities that were occurring while he was present located at 22134 FM 1462, Damon, Fort Bend County, Texas, and therefore the data on the black Campro body worn camera (SUBJECT BODY WORN CAMERA) will contain evidence of the offense Interference with Public Duties or evidence tending to show that Justin Pulliam committed the offense of Interference with Public Duties.



WHEREFORE, Property CONSIDERED, your Affiant respectfully requests that a warrant issue authorizing your Affiant or any other Peace Officer of Fort Bend County, Texas, to forensically download the black Campro body worn camera, which is further described as follows:

**One (1) Black Campro body worn camera tagged into evidence under Tag Number 210004180 as Item Number 3**

to search and seize any data that is evidence of the offense of Interference with Public Duties (PC 38.15) or tending to show that Justin Pulliam committed the offense of Interference with Public Duties (PC 38.15).  Affiant further seeks permission from the court to take and/or store any seized items, to any location within or outside of Fort Bend County, Texas, to an appropriate setting to be properly analyzed by a qualified person.

_____
DETECTIVE TRAVIS JAMES,  AFFIANT

SWORN AND SUBSCRIBED TO BEFORE ME on this the 14TH day of JANUARY, 2022.

_____
HONORABNE J.CHRISTIAN BECERRA
JUDGE PRESIDING
434TH JUDICIAL DISTRICT COURT
FORT BEND COUNTY, TEXAS

_____
PRINTED NAME OF JUDGE

FILED Um

2022 APR 13  PM 3: 03

CLERK DISTRICT COURT



WARRANT NUMBER: ___1Sw 0114 22J9B___

### SEARCH WARRANT

| | |
|---|---|
| THE STATE OF TEXAS | § |
| COUNTY OF FORT BEND | § |
| 268TH JUDICIAL DISTRICT | § |

**THE STATE OF TEXAS TO THE SHERIFF OR ANY PEACE OFFICER OF FORT BEND COUNTY, TEXAS.**

### GREETINGS:

WHEREAS, the Affiant, Detective Travis James, whose name appears on the affidavit attached hereto (which said affidavit is by this reference incorporated herein for all purposes) is a peace officer under the laws of the State of Texas, and did heretofore this day subscribe and swear to said affidavit before me, and whereas I find that the verified facts stated by Affiant in said affidavit show that Affiant has probable cause for the belief he expresses herein and establishes existence of proper grounds for issuance of this Warrant.

YOU ARE THEREFORE COMMANDED to forthwith enter the premises located at and/or under the control of the Fort Bend County Sheriff's Office, 1410 Richmond Parkway, Richmond, Fort Bend County, Texas, to search and seize the entire contents located within a body worn camera, to wit:

**One (1) Black Campro body worn camera tagged into evidence under Tag Number 210004180 as Item Number 3 (ALSO REFERRED TO HEREIN AS SUBJECT BODY WORN CAMERA).** A photograph of the herein-described premises is embedded below; it is to be considered a part of this warrant and is included for all descriptive purposes.



At said place, you shall SEARCH AND SEIZE the entire contents located within the SUBJECT BODY WORN CAMERA and search for and, if found, seize and bring before me the property described in the affidavit, to wit:



1. Any photographs, digital images, or video recordings on SUBJECT BODY WORN CAMERA that would show Justin Pulliam's participation in the offense of Interference with Public Duties occurring on December 21, 2021 in Fort Bend County, Texas, or is evidence of the offense of Interference with Public Duties occurring on December 21, 2021 in Fort Bend County, Texas;
2. Computer programs or media players capable of viewing, displaying, and/or playing photographs, digital images, or video recordings.

FURTHER, you are ordered, pursuant to the provisions of Article 18.10, Texas Code of Criminal Procedure, to retain custody of any property seized pursuant to this warrant, until further order of this court or any other court of appropriate jurisdiction shall otherwise direct the manner of safekeeping of said property. This court grants you leave and authority to remove such property from this county if such removal is necessary for the safekeeping of such seized property by you, if such removal is otherwise authorized by the provisions of article 18.10, Texas CCP, or if such removal is necessary to take and/or store any seized property to an appropriate setting and location to be properly analyzed by a qualified person. You are further ordered to give notice to the court, as a part of the inventory to be filed subsequent to the execution of this warrant, and as required by the article 18.10, Texas CCP. The execution of said warrant shall be within three whole days, exclusive of the day of its issuance and the day of its execution, with your return thereon, showing you have executed the same, filed in this court.

HEREIN FAIL NOT, and return make thereof.

WITNESS MY SIGNATURE on this the 14TH day of JANUARY, 2022 at 11:23 o'clock A.M.

HONORABLE J CHRISTIAN BECERRA
JUDGE PRESIDING
434TH JUDICIAL DISTRICT COURT
FORT BEND COUNTY, TEXAS

J Christian Becerra

PRINTED NAME OF JUDGE

FILED vm

2022 APR 13 PM 2: 59

CLERK DISTRICT COURT
FORT BEND COUNTY



WARRANT NUMBER: 1SW 011422JCA

## SEARCH WARRANT RETURN AND INVENTORY

THE STATE OF TEXAS                §

COUNTY OF FORT BEND          §

268TH JUDICIAL DISTRICT       §

The undersigned Affiant, being a Peace Officer under the laws of the State of Texas, and being duly sworn, on oath certified that the foregoing Warrant came to hand on the day it was issued and that it was executed on the 14TH day of JANUARY, 2022 by making the search directed therein and by seizing during such search the following described property, retained by such Peace Officer, under the laws of the State of Texas, and kept, stored and held as hereinafter set out:

AWAITING DATA; EXECUTED



DETECTIVE TRAVIS JAMES, AFFIANT

SWORN AND SUBSCRIBED TO BEFORE ME on this the _____ day of _____, 20__.

_____
NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS



I, BEVERLEY MCGREW WALKER, District Clerk of Fort Bend
County,Texas,do hereby certify that the foregoing
is a true, correct and full copy of the instrument
herein set out as appears of record in the District
Court of Fort Bend County, Texas.

This 17 day of November 20 22



BEVERLEY MCGREW WALKER
By CDauiler Deputy

Christina Davila

# EXHIBIT B

*Plaintiff's First Amended Complaint*
No. 4:22-cv-4120

2022-SW-0184

**WARRANT NUMBER:** 2SW 014223CB

## AFFIDAVIT FOR SEARCH WARRANT

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| **COUNTY OF FORT BEND** | § |
| **268TH JUDICIAL DISTRICT** | § |

The undersigned Affiant, being a peace officer under the laws of Texas, and being duly sworn, on oath makes the following statements and accusations:

l. THERE IS IN FORT BEND COUNTY A SUSPECTED PLACE AND PREMISES DESCRIBED AS FOLLOWS:

    (A) **one Wise SD style 256gb memory card, silver, black, yellow, blue and white in color removed from a black handheld Lumix camera tagged into evidence under Tag Number 210004180 as Item Number 4.**

    (B) **one Lexar SD style 256gb memory card, black and white in color removed from a black handheld Lumix camera tagged into evidence under Tag Number 210004180 as Item Number 5.**

These memory cards are also referred to in this Affidavit as SUBJECT MEMORY CARDS.

The SUBJECT MEMORY CARDS are currently located at and/or under the control of the Fort Bend County Sheriff's Office, 1410 Richmond Parkway, Richmond, Fort Bend County, Texas.  The SUBJECT MEMORY CARDS are currently located at the Fort Bend County Sheriff's Office Evidence Room.

A photograph of the herein-described memory cards is embedded below; it is to be considered a part of this affidavit and included for all descriptive purposes.



2022-SW-0184
WARR
Warrant
6587209





**2. SAID SUSPECTED MEMORY CARDS ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS:**

Eric Fagan, Fort Bend County Sheriff
Justin Pulliam (Owner/Suspect)

**3. IT IS THE BELIEF OF THE AFFIANT, AND HE HEREBY CHARGES AND ACCUSES THAT:**

Affiant has reason to believe and does believe that **Justin Pulliam (W/M DOB: 11/21/1989),** committed the offense of **Interference with Public Duties (PC38.15)** when Justin Pulliam did then and there, while Sergeant Taylor Rollins, a peace officer, was performing a duty or exercising authority imposed or granted by law, namely responding to a report of a person with homicidal ideations that was potentially barricaded and/or undergoing severe mental health crisis or securing an incident scene, with criminal negligence, interrupt, disrupt, impede, or interfere with Sergeant Taylor Rollins by not following Sergeant Taylor Rollins' instructions to move or causing a delay in Sergeant Taylor Rollins' ability to secure the scene.

**4. THE PROPERTY AND ITEMS WHICH ARE LOCATED AT THE FORT BEND COUNTY SHERIFF'S OFFICE EVIDENCE ROOM, AND CONSTITUTE EVIDENCE OF DESCRIBED OFFENSE AND WHICH TEND TO SHOW THAT THE ABOVE DESCRIBED SUSPECT COMMITTED THE ABOVE DESCRIBED OFFENSE ARE MORE PARTICULARLY DESCRIBED AS BEING:**

The property and items which are located therein and which constitute evidence or instrumentalities of an offense and which tend to show that **Justin Pulliam** committed the offense of **Interference with Public Duties (PC38.15)** include but are not limited to:

1. Any photographs, digital images, or video recordings on SUBJECT MEMORY CARDS that would show Justin Pulliam's participation in the offense of Interference with Public Duties occurring on December 21, 2021 in Fort Bend County, Texas, or is evidence of the



offense of Interference with Public Duties occurring on December 21, 2021 in Fort Bend County, Texas;

2. Computer programs or media players capable of viewing, displaying, and/or playing photographs, digital images, or video recordings.

## AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING FACTS:

Affiant, Detective Travis James, is a credible person and a Texas Peace Officer with the Fort Bend County Sheriff's Office.  Affiant has over twelve (12) years of certified Law Enforcement experience, including ten (10) years of patrol with certifications in Crisis Negotiations and has been employed as a commissioned Texas Peace Officer with the Fort Bend County Sheriff's Office for four (4) years. Affiant is currently assigned as a Detective to the Criminal Investigation Division, Robbery/Homicide Section.

Affiant's belief that the foregoing facts and allegations are true and correct is based upon his personal knowledge of this case, including review of Fort Bend County Sheriff's Office Offense Report #21-50633, and conversations with Sergeant A. Hickey, Sergeant T. Rollins and Deputy R. Rodriguez, peace officers with the Fort Bend County Sheriff's Office, which collectively reveals the following:

Affiant read Fort Bend County Sheriff's Office Offense Report #21-50633, and learned that on Tuesday, December 21, 2021, Sergeant Rollins and Deputy Rodriguez were dispatched to 22134 FM 762, Damon, Fort Bend County, Texas in reference to a Check Welfare.  Affiant learned from the report that the situation had evolved into an armed barricaded subject situation.

Affiant read in Sergeant Rollins' report that when Sergeant Rollins arrived on scene, Sergeant Rollins observed a male subject, who he identified as Justin Pulliam DOB: 11/21/1989, to be recording the incident with a body worn camera and a handheld camera.  Affiant also observed that Sergeant Rollins notated in his reports that Sergeant Rollins observed Justin Pulliam standing in the direct line of fire.

Sergeant Rollins is known to Affiant as being a member, or former member, of the Fort Bend County Regional SWAT team west, and has training in recognizing the danger of Justin Pulliam being in the direct line of fire of the barricaded subject.

Sergeant Rollins documented in his report that he requested Justin Pulliam move across the street due to him being in the line of fire of the barricaded person, and that Justin Pulliam initially began to walk across the street.  Affiant read in Sergeant Rollins report that Justin Pulliam stopped, and questioned Sergeant Rollins reasoning.  Affiant read that Sergeant Rollins told Justin Pulliam it was for his (Pulliam's) safety.  Affiant read that Sergeant Rollins told Justin Pulliam again to move across the street.

In the report, Sergeant Rollins documented that Justin Pulliam refused to comply, and so was placed into custody for Interference with Public Duties, due to the safety hazard Justin Pulliam posed as well as causing Sergeant Rollins' attention to be diverted from the barricaded subject while Sergeant Rollins was attempting to secure the scene.  In the report, Sergeant Rollins documented that Justin Pulliam was placed inside a marked police unit, and that police unit was moved to a safer location.



Affiant then read Deputy Rodriguez's report. In the report, Deputy Rodriguez wrote that as he and Deputy M. Lacey were securing the perimeter of the incident for the safety of himself and the public, he observed Justin Pulliam arrive on scene. In the report, Affiant read that Deputy Rodriguez wrote Deputy Rodriguez saw Justin Pulliam exit a vehicle and begin filming the scene.

Affiant read that Deputy Rodriguez observed Sergeant Rollins speak with Justin Pulliam, and heard Sergeant Rollins tell Justin Pulliam to leave the location for safety purposes. Affiant read that Deputy Rodriguez overheard Justin Pulliam argue with Sergeant Rollins. Affiant read that Justin Pulliam was arrested after Justin Pulliam refused to leave the location.

Affiant read that Deputy Rodriguez seized the handheld camera equipment, cell phone, a Campro body worn camera, **and two (2) SD style 256gb memory cards (SUBJECT MEMORY CARDS)** Justin Pulliam was using on scene and placed all items into the Fort Bend County Sheriff's Office Evidence room. Affiant learned the two (2) SD style 256gb memory cards ( one Wise SD style 256gb memory card, silver, black, yellow, blue and white in color  and one Lexar SD style 256gb memory card, black and white in color)  (SUBJECT MEMORY CARDS) were photographed. A photograph of the two SD style memory cards seized from Justin Pulliam is included below:



Affiant learned that the Lexar SD Memory Card was assigned Tag Number 210004180 and Item Number 5 when booked into the Fort Bend County Sheriff's Office Evidence Room. Affiant learned that the Lexar SD Memory Card was assigned Tag Number 210004180 and Item Number 4 when booked into the Fort Bend County Sheriff's Office Evidence Room.

Affiant later contacted and spoke with Sergeant Rollins. Affiant was advised that after the detention of Justin Pulliam, Sergeant Rollins observed the body worn camera Justin Pulliam had been wearing was on. However, Sergeant Rollins stated that he was not sure if the body worn camera was recording. Sergeant Rollins advised Affiant that the handheld camera was on and recording, as he stopped the recording and turned the camera off.

Sergeant Rollins stated to Affiant that he does not recall if the cell phone was on and recording at the time of the detention.



Affiant was also advised by Sergeant Rollins that while on scene, Justin Pulliam would turn his body towards Sergeant Rollins whenever Sergeant Rollins was speaking with Justin Pulliam, indicating that the body worn camera was on and recording.

Deputy Rodriguez also advised Affiant that the two (2) memory cards listed in the property report were removed from the handheld camera system. Deputy Rodriguez stated this was done to inventory *all property* seized during the arrest. Deputy Rodriguez stated to Affiant that he is unaware if there are any other forms of internal/external memory for the camera system.

Affiant checked the online listing for the type of handheld camera that Justin Pulliam was using, and it appears that there is *no* internal memory system for a Panasonic Lumix S1 handheld camera. However, Affiant observed that there are two (2) digital media slots compatible for SD style memory cards. (Online description of memory storage for Panasonic Lumix S1 camera pictured below)

### DUAL MEMORY CARD SLOTS

The LUMIX S1 is equipped with a double Memory Card slot compatible with SD (UHS-II) and XQD Memory Cards for high-speed, high-capacity continuous data recording. Users can flexibly choose the recording method from Relay Recording, Backup Recording or Allocation Recording using the double slots. It will also be compatible with CFexpress in the near future. The 7.2-V 3,100 mAh high-capacity battery can be quickly charged via USB PD (USB Power Delivery) using the bundled USB3.1 Type-C cable. And it also realizes high-speed data transfer.

Affiant knows that Justin Pulliam on many occasions has arrived at the scenes of police investigations, filmed what is occurring at the scenes using equipment capable of making video recordings, and posted the filmed video footage on social media.

Based on the statements made to Affiant, it is the belief of the Affiant that Justin Pulliam used a black Lumix handheld camera which contained the SUBJECT MEMORY CARDS to record activities that were occurring while he was present located at 22134 FM 1462, Damon, Fort Bend County, Texas, and therefore the data on the SUBJECT MEMORY CARDS will contain evidence of the offense Interference with Public Duties or evidence tending to show that Justin Pulliam committed the offense of Interference with Public Duties.

WHEREFORE, Property CONSIDERED, your Affiant respectfully requests that a warrant issue authorizing your Affiant or any other Peace Officer of Fort Bend County, Texas, to forensically download the SUBJECT MEMORY CARDS, which are further described as follows:

(A) one Wise SD style 256gb memory card, silver, black, yellow, blue and white in color removed from a black handheld Lumix camera tagged into evidence under Tag Number 210004180 as Item Number 4.
(B) one Lexar SD style 256gb memory card, black and white in color removed from a black handheld Lumix camera tagged into evidence under Tag Number 210004180 as Item Number 5.



to search and seize any data that is evidence of the offense of Interference with Public Duties (PC 38.15) or tending to show that Justin Pulliam committed the offense of Interference with Public Duties (PC 38.15).  Affiant further seeks permission from the court to take and/or store any seized items, to any location within or outside of Fort Bend County, Texas, to an appropriate setting to be properly analyzed by a qualified person.

DETECTIVE TRAVIS JAMES,  AFFIANT

SWORN AND SUBSCRIBED TO BEFORE ME on this the 14th day of JANUARY, 2022.

HONORABLE J.CHRISTIAN BECERRA
JUDGE PRESIDING
434TH JUDICIAL DISTRICT COURT
FORT BEND COUNTY, TEXAS

PRINTED NAME OF JUDGE

FILED um

2022 APR 13  PM 3: 02

CLERK DISTRICT COURT
FORT BEND COUNTY



2022-SW-0184

**WARRANT NUMBER:**  2 SW 011422 JCB

**SEARCH WARRANT**

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| **COUNTY OF FORT BEND** | § |
| **268TH JUDICIAL DISTRICT** | § |

**THE STATE OF TEXAS TO THE SHERIFF OR ANY PEACE OFFICER OF FORT BEND COUNTY, TEXAS.**

**GREETINGS:**

WHEREAS, the Affiant whose name appears on the affidavit attached hereto (which said affidavit is by this reference incorporated herein for all purposes) is a peace officer under the laws of the State of Texas, and did heretofore this day subscribe and swear to said affidavit before me, and whereas I find that the verified facts stated by Affiant in said affidavit show that Affiant has probable cause for the belief he expresses herein and establishes existence of proper grounds for issuance of this Warrant.

YOU ARE THEREFORE COMMANDED to forthwith enter the premises located at and/or under the control of the Fort Bend County Sheriff's Office, 1410 Richmond Parkway, Richmond, Fort Bend County, Texas, to search and seize the entire contents located within two memory cards, to wit:

(A) **one Wise SD style 256gb memory card, silver, black, yellow, blue and white in color removed from a black handheld Lumix camera tagged into evidence under Tag Number 210004180 as Item Number 4.**
(B) **one Lexar SD style 256gb memory card, black and white in color removed from a black handheld Lumix camera tagged into evidence under Tag Number 210004180 as Item Number 5.**

(ALSO REFERRED TO HEREIN AS SUBJECT MEMORY CARDS)

A photograph of the herein-described memory cards is embedded below; it is to be considered a part of this affidavit and included for all descriptive purposes.





At said place, you shall SEARCH AND SEIZE the entire contents located within the SUBJECT MEMORY CARDS and search for and, if found, seize and bring before me the property described in the affidavit, to wit:

1. Any photographs, digital images, or video recordings on SUBJECT MEMORY CARDS that would show Justin Pulliam's participation in the offense of Interference with Public Duties occurring on December 21, 2021 in Fort Bend County, Texas, or is evidence of the offense of Interference with Public Duties occurring on December 21, 2021 in Fort Bend County, Texas;

2. Computer programs or media players capable of viewing, displaying, and/or playing photographs, digital images, or video recordings.

FURTHER, you are ordered, pursuant to the provisions of Article 18.10, Texas Code of Criminal Procedure, to retain custody of any property seized pursuant to this warrant, until further order of this court or any other court of appropriate jurisdiction shall otherwise direct the manner of safekeeping of said property. This court grants you leave and authority to remove such property from this county if such removal is necessary for the safekeeping of such seized property by you, if such removal is otherwise authorized by the provisions of article 18.10, Texas CCP, or if such removal is necessary to take and/or store any seized property to an appropriate setting and location to be properly analyzed by a qualified person. You are further ordered to give notice to the court, as a part of the inventory to be filed subsequent to the execution of this warrant, and as required by the article 18.10, Texas CCP. The execution of said warrant shall be within three whole days, exclusive of the day of its issuance and the day of its execution, with your return thereon, showing you have executed the same, filed in this court.

HEREIN FAIL NOT, and return make thereof.

WITNESS MY SIGNATURE on this the 14TH day of JANUARY, 2022 at 11:25 o'clock A.M.

HONORABLE J. CHRISTIAN BECERRA
JUDGE PRESIDING
434TH JUDICIAL DISTRICT COURT
FORT BEND COUNTY, TEXAS

PRINTED NAME OF JUDGE

FILED um

2022 APR 13 PM 2:59

Beverly Mc Gan Walker
CLERK DISTRICT COURT
FORT BEND CO., TX



**WARRANT NUMBER:** ~~2 SW 011422 JCR~~

### SEARCH WARRANT RETURN AND INVENTORY

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| **COUNTY OF FORT BEND** | § |
| **268TH JUDICIAL DISTRICT** | § |

The undersigned Affiant, being a Peace Officer under the laws of the State of Texas, and being duly sworn, on oath certified that the foregoing Warrant came to hand on the day it was issued and that it was executed on the 14th day of JANUARY , 2022 by making the search directed therein and by seizing during such search the following described property, retained by such Peace Officer, under the laws of the State of Texas, and kept, stored and held as hereinafter set out:

EXECUTED ; DATA RECIEVED IN VIDEO FORM

_____

DETECTIVE TRAVIS JAMES, AFFIANT

SWORN AND SUBSCRIBED TO BEFORE ME on this the _____ day of _____,
20___.

_____
NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS



I, BEVERLEY MCGREW WALKER, District Clerk of Fort Bend
County, Texas, do hereby certify that the foregoing
is a true, correct and full copy of the instrument
herein set out as appears of record in the District
Court of Fort Bend County, Texas.

This 17 day of November 20 22



BEVERLEY MCGREW WALKER

By Davila Deputy

Christina Davila

# EXHIBIT C

*Plaintiff's First Amended Complaint*
No. 4:22-cv-4120

# PROBABLE   CAUSE   AFFIDAVIT

STATE OF TEXAS
COUNTY OF FORT BEND

Came unto me this day, Sergeant Taylor Rollins(name of officer/ deputy), a person known by me the undersigned notary, and upon oath swears as follows:

My name is Sergeant Taylor Rollins (name of officer/deputy). I have good reason to believe and do believe the facts asserted below.

Affiant, Taylor Rollins (name of officer/deputy) is employed by the Fort Bend County Sheriff's Office (name of agency).

On the 21 day of December, 2021, I arrested Justin Pulliam (name of defendant) for the offense of Interference with Public Duties ( ☐ Felony / ☒ Misdemeanor) based on the following facts:

*(List facts that justify arrests, facts that justify search, injuries incurred, property recovered (with weight of narcotics or value of property) DOCUMENT FACTS TO ESTABLISH EACH ELEMENT OF THE OFFENSE.*

That in Fort Bend County, Texas: On December 21, 2021 I, Sergeant T. Rollins was dispatched to 22134 FM 762. Edwin Kraft's mother called in stating her son was Homicidal, Suicidal, and Psychotic. She stated she slept in her car all night because she was afraid for her life. Edwin Kraft locked her out of the house and would not communicate with her. Edwin Kraft was having hallucinations and says there were people in the walls and ceiling trying to get him.

For the last few weeks, we have had several reports of Edwin Kraft walking around with either a firearm, machete, or a baseball bat threatening neighbors. We also had an active warrant for his arrest for Stalking. Edwin Kraft is known to use Methamphetamemes and last year tried to set a church on fire.

Due to Edwin Kraft's mental state, and the reports of him being armed with a weapon, and his past violent history, we treated the call like a barricaded person and set up a perimeter around the house.

Upon my arrival, 2 Deputies were setup on the front and backside of the residence behind cover and concealment. I noticed a male subject standing in the direct line of fire in front of the residence, video recording with a body worn camera and a handheld camera. There were 3 females close to him as well. I immediately told all of them to quickly move across the street. The females identified themselves as Edwin Kraft's mother and 2 Mental Health Screeners from Texana. I wanted to utilize them to help make contact with Edwin Kraft so I moved them to a safe location behind our vehicle and behind a gas station next door. I told the male subject video recording (Justin Pulliam) he needed to move across the street. Justin Pulliam looked at me and said, "Why? So ya'll can shoot him?" I asked him what was wrong with him. I again told him to move across the street because he couldn't stand there due to it being directly in front of the residence where Edwin Kraft was barricaded with a weapon. He began to walk in that direction, then stopped and said, You didn't say it was for my safety". I told Justin Pulliam it was in fact for his safety. I again told him to move across the street and said I wasn't going to say it again. I told Justin Pulliam he had 5 seconds to start moving and he just stood there. By him staying in that area it put him and myself in danger. I began to count down from 5 down to 1, and Justin did not move. I placed Justin Pulliam in custody for Interference with Public Duties. I placed him inside a marked Tahoe, then had the Tahoe moved to a safer location.

Edwin Kraft was later found in a field behind his house armed with a rifle. Edwin Kraft had no regard for anyone's safety and pointed the rifle at Deputies. He was taken into custody for Aggravated Assault on a Peace Officer, Interfering, and Stalking (Warrant).

_____

Affiant's Signature

SUBSCRIBED AND SWORN TO before me, the undersigned Notary Public, on this the
21 day of Dec , 2021.

_____

Notary Public in and for the State of Texas

DAPHNE T. MARIN
Notary Public, State of Texas
Comm. Expires 01-23-2025
Notary ID 10047683

# EXHIBIT D

*Plaintiff's First Amended Complaint*
No. 4:22-cv-4120

2022-SW-0176 SEARCH WARRANT

THE STATE OF TEXAS, COUNTY OF FORT BEND

TO THE SHERIFF OR ANY PEACE OFFICER OF FORT BEND COUNTY, TEXAS OR ANY PEACE OFFICER OF THE STATE OF TEXAS, GREETING:

**WHEREAS,** THE AFFIANT WHOSE NAME APPEARS ON THE ATTACHED AFFIDAVIT IS A PEACE OFFICER UNDER THE LAWS OF TEXAS AND DID HERETOFORE THIS DAY SUBSCRIBE AND SWEAR TO SAID AFFIDAVIT BEFORE ME (WHICH SAID AFFIDAVIT IS BY REFERENCE INCORPORATED HEREIN AND MADE PART HEREOF FOR ALL PURPOSES) AND WHEREAS I FIND THAT THE VERIFIED FACTS STATED BY AFFIANT IN SAID AFFIDAVIT SHOW THAT AFFIANT HAS PROBABLE CAUSE FOR THE BELIEF EXPRESSED THEREIN AND ESTABLISHES THE EXISTENCE OF PROPER GROUNDS FOR ISSUANCE OF THIS WARRANT;

**NOW THEREFORE,** YOU ARE COMMANDED TO ENTER THE SUSPECTED PLACE AND PREMISES DESCRIBED IN SAID AFFIDAVIT, TO WIT: A MOTOR VEHICLE, FURTHER DESCRIBED AS:

A motor vehicle described as a white 2014 GMC Sierra displaying TX LICENSE PLATE ███████, bearing VIN ███████████████. The said vehicle is registered to Isauro Trevino ███████████ █ ████ █. The said vehicle was being driven by Isauro Trevino (DOB: ███████████) on March 14, 2022 The said vehicle is currently located in a secure storage area at Houtex Towing & Recovery ███████████ ████

AT SAID PLACES YOU SHALL SEARCH FOR AND, IF SAME BE FOUND, SEIZE AND BRING BEFORE ME THE PROPERTY DESCRIBED IN THE AFFIDAVIT, TO WIT:

The investigating officers have determined that this vehicle has a device commonly called an airbag / electronic control module (Event Data Recorder) that was installed by the manufacturer that may record certain data, including, but not limited to:

      (1)    The speed the vehicle was traveling for five seconds prior to airbag deployment.

      (2)    Engine Cycle Revolutions Per Minute for five seconds prior to airbag deployment.

      (3)    Engine throttle pressure for five seconds prior to airbag deployment.

      (4)    Braking information for five seconds prior to point of impact.

      (5)    The driver's safety belt status.

      (6)    Ignition cycles of the vehicle.

      (7)    Change in velocity after airbag deployment.

This information is transmitted to a central communications system. This information is stored in the device's memory when there is an airbag deployment as there is in this case. This data may be extracted by a laptop computer containing the appropriate software.

A crash data recorder to include the data contained therein located within the passenger compartment, any and all digital control modules, any alcoholic beverage containers/drugs and

their contents, receipts for the purchase of any alcoholic beverage/drugs or portion of a container or receipt, a weapon, including but not limited to firearms and ammunition and/or parts thereof; bodily fluids, including but not limited to blood and DNA; clothing, notes, documents, writings and/or personal chattel used in the commission of for the offense of Aggravated Assault as referenced herein;  Photographs and measurements and/or video recordings of vehicle exterior and interior: latent and/or patent prints, fibers, fluids, substances and/or any residual substance constituting trace evidence; digital storage and/or communication devices, including but not limited to cell phone(s), cameras, computers, digital and/or cassette style voice recorders; data retained within and/or transmitted by any digital storage and/or communication devices, including but not limited to cell phone(s), cameras, computers, digital and/or cassette style voice recorders; and the airbags.

This Court grants Affiant's request to have the subject vehicle transported off site for a mechanical inspection, to be conducted by a competent mechanic or other knowledgeable person.

**FURTHER, YOU ARE ORDERED**, PURSUANT TO THE PROVISIONS OF ARTICLE 18.10, TEXAS CODE OF CRIMINAL PROCEDURE, TO RETAIN CUSTODY OF ANY PROPERTY SEIZED PURSUANT TO THIS WARRANT, UNTIL FURTHER ORDER OF THIS COURT OR ANY OTHER COURT OF APPROPRIATE JURISDICTION SHALL OTHERWISE DIRECT THE MANNER OF SAFEKEEPING OF SAID PROPERTY.  THIS COURT GRANTS YOU LEAVE AND AUTHORITY TO REMOVE SUCH PROPERTY FROM THIS COUNTY IF AND ONLY IF SUCH REMOVAL IS NECESSARY FOR THE SAFEKEEPING OF SUCH SEIZED PROPERTY BY YOU, OR IF SUCH REMOVAL IS OTHERWISE AUTHORIZED BY THE PROVISIONS OF ARTICLE 18.10, T.C.C.P. YOU ARE FURTHER ORDERED TO GIVE NOTICE TO THE COURT, AS A PART OF THE INVENTORY TO BE FILED SUBSEQUENT TO THE EXECUTION OF THIS WARRANT, AND AS REQUIRED BY THE ARTICLE 18.10, T.C.C.P..  THE EXECUTION OF SAID WARRANT SHALL BE WITHIN THREE WHOLE DAYS, EXCLUSIVE OF THE DAY OF IT'S ISSUANCE AND THE DAY OF IT'S EXECUTION, WITH YOUR RETURN THEREON, SHOWING YOU HAVE EXECUTED THE SAME, FILED IN THIS COURT.

ISSUED THIS THE _18_ DAY OF MARCH A.D., 2022, AT _10 37_ O: CLOCK _A_.M. TO CERTIFY WHICH WITNESS MY HAND THIS DAY.

**FILED**

APR 1 2 2022

AT _9:38_ A M.

_Beverly M. Brun Wall_
CLERK DISTRICT COURT, FORT BEND CO., TX

_____
PRESIDING JUDGE

_434_ TH DISTRICT COURT
FORT BEND COUNTY, TEXAS

J Christian Becerra
_____
PRINTED NAME OF JUDGE

STATE OF TEXAS §
COUNTY OF FORT BEND §

## ORDER FOR SAFEKEEPING OF PROPERTY

It is further ordered that you may place the property located in the suspected place and premises as stated in the search warrant in the custody of the evidence officer, if any, of your department, and that said property may be stored for safekeeping in the evidence room of your department or in any secure place designated by your department to safe-keep evidence.

**FILED**

APR 1 2 2022

AT _____9:38_____ A.M.

Beverly McLean Walker

CLERK DISTRICT COURT, FORT BEND CO., TX

_____
PRESIDING JUDGE

434 TH DISTRICT COURT
FORT BEND COUNTY, TEXAS

_____
PRINTED NAME OF JUDGE

4 SW03 1822 JCB

## AFFIDAVIT FOR SEARCH WARRANT

**STATE OF TEXAS**                         §
**COUNTY OF FORT BEND**            §

The undersigned Affiant, Alexandria Muellner, being a peace officer under the laws of Texas, and being duly sworn, on oath makes the following statements and accusations;

1.      **THERE IS IN FORT BEND COUNTY A SUSPECTED PLACE AND PREMISES DESCRIBED AS FOLLOWS:**

A motor vehicle described as a white 2014 GMC Sierra displaying TX LICENSE PLATE ███████, bearing VIN ████████████. The said vehicle is registered to Isauro Trevino ████████████. The said vehicle was being driven by Isauro Trevino (DOB: ████████) on March 14, 2022 The said vehicle is currently located in a secure storage area at Houtex Towing & Recovery ████████████
██████

2.      **SAID SUSPECTED PLACE AND PREMISES ARE IN THE CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING NAMED PERSONS:**

Jaafar Mohammed, Owner of Houtex Towing & Recovery

3.      **IT IS THE BELIEF OF AFFIANT, AND AFFIANT HEREBY CHARGES AND ACCUSES THAT SAID SUSPECTED PARTY HAS POSSESSION OF AND IS CONCEALING IN SAID AUTOMOBILE, PHYSICAL EVIDENCE OF THE OFFENSE HEREIN DESCRIBED WHICH CONSTITUTES A VIOLATION OF THE LAWS OF TEXAS AND WOULD TEND TO SHOW THAT A SUSPECTED PERSON COMMITTED THE OFFENSE, AND IS DESCRIBED AS FOLLOWS:**

On Monday March 14, 2022 0756 hours the vehicle described herein: a white 2014 GMC Sierra displaying TX LICENSE PLATE ███████, bearing VIN ████████, a Black 2013 Honda Civic displaying TX LICENSE PLATE ████████, BEARING Vin ████████████, were involved in a 2 vehicle crash at Bissonnet St and Castlemont Dr, Houston, Fort Bend County Texas, which resulted in Bodily Injury to Kyara Cormier.

The investigating officers have determined that this vehicle has a device commonly called an airbag / electronic control module (Event Data Recorder) that was installed by the manufacturer that may record certain data, including, but not limited to:
(1)     The speed the vehicle was traveling for five seconds prior to airbag deployment.
(2)     Engine Cycle Revolutions Per-Minute for five seconds prior to airbag deployment.
(3)     Engine throttle pressure for five seconds prior to airbag deployment.
(4)     Braking information for five seconds prior to point of impact.
(5)     The driver's safety belt status.
(6)     Ignition cycles of the vehicle.
(7)     Change in velocity after airbag deployment.

This information is transmitted to a central communications system. This information is stored in the device's memory when there is an airbag deployment, as there is in this case. This data may be extracted by a laptop computer containing the appropriate software.

A crash data recorder, to include the data contained therein, located within the passenger compartment, any and all digital control modules, any alcoholic beverage containers/drugs and their contents, receipts for the purchase of any alcoholic beverage/drugs or portion of a container or receipt, a weapon, including but not limited to firearms and ammunition and/or parts thereof; bodily fluids, including but not limited to blood and DNA; clothing, notes, documents, writings and/or personal chattel used in the commission of for the offense of Aggravated Assault as referenced herein;  Photographs and measurements and/or video recordings of vehicle exterior and interior: latent and/or patent prints, fibers, fluids, substances and/or any residual substance constituting trace evidence; digital storage and/or communication devices, including but not limited to cell phone(s), cameras, computers, digital and/or cassette style voice recorders; data retained within and/or transmitted by any digital storage and/or communication devices, including but not limited to cell phone(s), cameras, computers, digital and/or cassette style voice recorders; and the airbags.

Affiant further requests leave of the court to have the subject vehicle transported off site for a mechanical inspection to be conducted by a competent mechanic or other knowledgeable person.

**4.     AFFIANT HAS GOOD REASON TO BELIEVE, DOES BELIEVE, AND HEREBY CHARGES AND ACCUSES THAT:**

On or about March 14, 2022, in Fort Bend County, Texas Isauro Trevino, did then and there operate a motor vehicle in a public place and intentionally struck the victim's multiple times, causing bodily injury of another, namely, Kyara Cormier, by accident or mistake, to wit: by driving the motor vehicle into and causing it to collide with a vehicle operated by Kyara Cormier.

**5.     AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING FACTS AND CIRCUMSTANCES:**

On Monday, March 14th, 2022 Affiant, Deputy Alexandria Muellner #4072 is a certified peace officer with the Fort Bend County Sheriff's Office Patrol Division, has been a certified peace officer for the State of Texas for 3.9 years, is certified in crash.

Affiant bases her observations and opinions on her training and experience, her investigation of the scene and the reports by Deputy Jason Bulman, is a certified peace officer with the State of Texas employed by the Fort Bend County Sheriff's Office and is a credible and reliable source.

On March 14, 2022 at approximately 0756 hours, Deputy Jason Bulman was dispatched to Bissonnet St. and Castlemont Dr., Houston, Fort Bend County, Texas, in reference to a Motor Vehicle Crash, later determined to be an Aggravated Assault with a Deadly Weapon. Bissonnet St. is a two-lane roadway that runs west and east. The west and east bound lane is separated by a grassy media. The lanes in both directions have striped lane markers. Castlemont Dr. is a two way roadway that intersects with Bissonnet St. Castlemont Dr. has a grassy median and dividing the roadway into the subdivision.

Affiant learned that the crash involved two (2) vehicles: (1) a white 2014 GMC Sierra displaying TX LICENSE PLATE ███████, bearing VIN █████████, driven by Isauro Trevino who was identified by his TDL#████████ and (2) 2013 Honda Civic displaying TX LICENSE PLATE ████████, BEARING VIN ██████████████, driven by Kyara Cormier who was identified by her TDL#███████

Upon arrival, Deputy J. Bulman stated that he observed a 2014 GMC Sierra had rear-ended the back of a 2013 Honda Civic. Deputy J. Bulman spoke with the driver of the 2013 Honda Civic, Kyara Cormier (DOB: ███████ a credible and reliable source and hereafter called the "Complainant". Complainant stated the truck wouldn't let her into the line to exit the parking lot, hit her on the left side of her vehicle, and pushed her vehicle out of the way. Complainant stated she tried to leave because the driver of the truck was aggressive and she was in fear for her life. Complainant stated she turned onto Bissonnet St and was at a stop, in traffic, when the driver of the truck struck the back end of her vehicle again and proceeded to ram his truck into the back of her vehicle approximately 5 times. Complainant stated she was in pain and also in fear for her life.

Deputy J. Bulman spoke with the driver of the 2014 GMC Sierra, Isauro Trevino (DOB: ███████ ) hereafter called the "Suspect" who stated the crash occurred in the parking lot when he struck the back end of the Honda Civic. Suspect stated he was chasing after her because she was leaving the accident. Suspect stated he did hit the back end of the Honda Civic while she was at a complete stop near the intersection of Bissonnet St and Castlemont Dr. one time and then his foot slipped off the brake pedal and hit the gas pedal, causing him to hit the back of the Honda Civic a second time.

Deputy J. Bulman observed the Honda Civic to have extensive damage to the rear of the vehicle and the 2014 GMC Sierra had come to rest with part of the front end of the truck almost touching the back seat in the 2013 Honda Civic. Deputy J. Bulman reviewed surveillance footage of Suspect chasing after Complainant after the first crash.

Affiant is aware that the white 2014 GMC Sierra displaying TX LICENSE PLATE ███████, bearing VIN ███████████████ that is the subject of this warrant has a device commonly called an Event Data Recorder, hereafter EDR. The EDR monitors the airbag / electronic control module that monitors various vehicle data in an effort to determine whether a particular event warrants deploying the vehicles airbag system. Affiant is further aware that besides monitoring various vehicle functions the EDR will retain certain data under two circumstances: 1) in the event that the vehicle's airbag is deployed or 2) in a near-deployment event, an event involving a significant enough change in velocity to require the system to contemplate deploying the airbag. This data includes:

(1)     The speed the vehicle was traveling for five seconds prior to airbag deployment.
(2)     Engine Cycle Revolutions Per-Minute for five seconds prior to airbag deployment.
(3)     Engine throttle pressure for five seconds prior to airbag deployment.
(4)     Braking information for five seconds prior to point of impact.
(5)     The driver's safety belt status.
(6)     Ignition cycles of the vehicle.
(7)     Change in velocity after airbag deployment.

Affiant knows this information is transmitted to a central communications system and retained within the vehicle and may be downloaded into a laptop computer for further analysis.

Affiant is seeking this information as the data contained in the vehicle's EDR should be able to provide evidence of the speed of the white 2014 GMC Sierra displaying TX LICENSE PLATE ███████, bearing VIN ███████████████, driven by Isauro Trevino before striking the black 2013 Honda Civic displaying TX LICENSE PLATE ███████, BEARING Vin ███████████████, driven by Kyara Cormier. Additionally, said data should reveal any

efforts Isauro Trevino made to brake his vehicle prior to the impact of the collisions.  Said data will contribute to the accuracy of Affiant's investigation of the crash.

WHEREFORE, Affiant asks for issuance of a warrant that will authorize Affiant and other peace officers to search said suspected place and premises for said property described above and seize the same.

_____
AFFIANT

Sworn to and subscribed before me by said Affiant on this the 1̲4̲ day of March, 2022

_____
Presiding Judge

4̲3̲4̲th District Court
Fort Bend County, Texas

**FILED**
CD

APR 1 2 2022
AT _9:38_ A M.
_Brenda McBean Wall_
CLERK DISTRICT COURT, FORT BEND CO., TX

_____
Printed Name of Judge

4SW031822 JCB

**STATE OF TEXAS**                    §
**COUNTY OF FORT BEND**          §

## RETURN AND INVENTORY

The undersigned Affiant, being a Peace Officer under the laws of Texas and being duly sworn, on oath certifies that the foregoing evidentiary search warrant came to hand on the day it was issued and that it was executed on the ___21___ day of MARCH, 2018 by making the search directed therein and seizing during such search the following described property:

ACM Download

_____
**AFFIANT**

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the _____ day of MARCH 2022.

# EXHIBIT E

*Plaintiff's First Amended Complaint*
No. 4:22-cv-4120

2022-SW-0185

**WARRANT NUMBER:** _22-458.335_

| | |
|---|---|
| **THE STATE OF TEXAS** | §  2022 – SW – 0185 |
| | §  **WARR** |
| | §  **Warrant** |
| **THE COUNTY OF FORT BEND** | §  **6588298** |
| | § |
| **268ᵀᴴ JUDICIAL DISTRICT** | § |

## APPLICATION FOR SEARCH WARRANT FOR
## STORED ELECTRONIC COMMUNICATIONS

COMES NOW, the State of Texas, by and through the requesting peace officer, Joel Kader, and

requests that a search warrant be signed, pursuant to Arts. 18.02 (13) and 18.21(5A) of the Texas Code of

Criminal Procedure, and, in accordance with, Title 18 United States Code (U.S.C.), 2703(a) requiring the

herein named electronic communications provider to furnish all cellular phone records including:

1) All account holder information for the target device with assigned number, █████████,
   inclusive of all subscriber information, including expanded subscriber information including but not
   limited to first, middle, last names, dates of birth, social security numbers, state issued identification
   numbers (regardless of issuing state), passport numbers, consulate identification numbers, and any
   other identifiers not specifically listed herein that can be used to identify the account holder in
   question.  Further this is including any available telephone numbers such sub accounts or can be
   reached numbers or other methods of contact utilized by said provider to include email addresses,
   twitter handles, Facebook or Instagram page link, Google or Google Plus or other un-named social
   media linked to account holder.  Twinned or paired devices and their unique identifiers including the
   actual phone number, IMSI, IMEI and MAC addresses. IP authentication addresses (including ports
   through the source transport layer (layer 4), etc., and/or  unique account, equipment, and/or network
   addressing, these may include the   Electronic Serial Number (ESNs), International Mobile
   Subscriber Identifier (IMSIs), Temporary Mobile Subscriber Identity number (TMSI), International
   Mobile Equipment Identifiers (IMEIs), Mobile Equipment Identifiers (MEIDs), Mobile Station
   Identifiers (MSIDs), Mobile Identification Numbers (MINs), Mobile Dialed Numbers (MDN),
   Integrated Circuit Card IDs (ICCIDs), Personal Unlocking/Unblocking Codes (PUKs), PINs
   (personal identification numbers), Blackberry PINs (personal identification numbers/codes), Apple's
   Unique Device Identifier (ID) (UDID), and/or Media Access Control (MAC) address(es), and all
   billing/payment information and accounts notes, for the specified cellular/wireless telephones, and
   for any other cellular/wireless telephones on the same account as the target numbers.

2) All stored communication and other files reflecting communications, including but not limited to: the
   content of voice mail messages, electronic mail messages, or text messages [Short Message Service
   (SMS) or Multimedia Message Service (MMS)] from January 1, 2022 to March 8, 2022, to or
   from wireless telephone number █████████;

3) All transactional information of all activity of the telephone number █████████ from January
   1, 2022 to March 8, 2022, whether transmitted to or transmitted from the wireless telephone
   handset associated with █████████, including messaging logs, other log files, dates, times,
   methods of connecting, and/or locations. Messaging logs should contain:
   a. Date of message;

b. Time of message (including time zone);

c. Source of message (i.e. the IMEI, IMSI, MEID, and/or ESN associated with the handset from which the message originated, the telephone number associated with that handset, and the provider associated with that handset; and

d. Destination of the message (i.e. the IMEI, IMSI, MEID, and/or ESN associated with the handset from which the message originated, the telephone number associated with that handset, and the provider associated with that handset,

4) All transactional information of all telephone calls originating to or terminating from telephone number ███████, whether transmitted to or transmitted from the wireless telephone handset associated with ███████, for a period from January 1, 2022 to March 8, 2022, and

5) All Call Detail Records (CDRs) associated with ███████ from January 1, 2022 to March 8, 2022, including all outgoing and incoming communications (call, text or MMS detail records) combined herein as CDRs, with cell sites for 2G, 3G and 4G networks, including all telephone numbers (number calling and number called), date and time (including time zone of call or text), duration of call, chirp numbers/direct connects/walkie-talkie/Universal Fleet Mobile Identifier (UFMI) numbers, email addresses (electronic mail), Internet Protocol (IP) addresses, World Wide Web (www) addresses, dialed/communicated with (outgoing and/or incoming). This includes local and long distance telephone connection records, including all text [short message service SMS)] detail records, email detail records [including IP (Internet Protocol) logs, email header information, and email addresses], IP connection detail records/logs, *and* video, audio, and/or photo image transactions records, such as multimedia messaging service (MMS) (picture/video messaging) detail records/logs, sent or received, to provide dates, times, and methods of voicemail access, including all available SS7 signaling records of these communications, and, records of session times and durations. Cell Sites are required if they are available on any and all transactional/addressing and routing data. All cell site activations and sectors for all originating (outgoing) and terminating (incoming) calls, together with a complete listing of cell site identification number, physical address, latitude & longitude, sector identifiers, and true orientations of all cell sites in the market where the telephone handset may be located.

6) Cell sites activations and all registration information, including signal strengths, logs, etc. (if obtainable), including any location information delivered to a public safety answering point (PSAP) pursuant from a 911 call or derived from any system capable of delivering location information to a PSAP from February 1, 2022 to February 3, 2022.

7) **Specialized Location Records**: All call, text, and data connection location information from January 1, 2022 to March 8, 2022 associated with assigned number, ███████, or target account. Including, all specialized carrier records that may be referred to as RTT (Real Time Tool), PCMD (Per Call Measurement Data), Network Location Services (NELOS), Mediation Records, Digger Reports, E911, LAC/CID or LTE Site ID to include Switch/MSC/BSC/Cell name and azimuth, as well as Azimuths for the sectors accessed during the communications, and/or any historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell-Site and sector of the device in relationship to the network when connected to the network for the above referenced numbers. Any historical geo-location services/global positioning system (GPS) data/enhanced 911 (E911) records including but not limited to any available ranging data [distance from tower, range to tower (PCMD/RTT/REVEAL/Historic MLTs, TrueCall, TDOA, Timing Advance Ranging Data Information, Timing Advance Records (TA), or other similar un-named records held by **T-Mobile USA**.

8) If available, an engineering map; showing all cell-site antenna/tower locations, sectors, azimuths, beam widths, pilot PN (pseudo noise) offsets, and true orientations. And, a list of any and all cellular sites numbers [Long Term Evolution (LTE) —complete ECGI, CGI, Tracking Area Code (TAC) and specific eNodeB and Cell Site, NodeB, Local Area Codes (LACs), Cellular Identifiers (CIDs), intercept access points (IAP) system identities, repolls, switches, etc.], locations, addresses, neighbor lists, etc., and/or latitude and longitude of any said sites. Also, that cellular sites lists, including latitudes and longitudes, be provided, via electronic mail, or via shipping when email is not available, in an electronic format, if available and/or possible. Furthermore, the concerned carrier(s) will provide RF (radio frequency) propagation maps/surveys and cellular antenna/tower maintenance records, and cellular antenna/tower maintenance records procedures, upon request. These maps/surveys and maintenance records will be provided in electronic format, such as original color format, if available.

9) Should the cellular/wireless number/equipment which is the current target of this Warrant have changed, prior to or during the requested period, including the MINs/MSIDs, MDNs, ESNs, MEIDs, IMEIs, IMSIs, ICCIDs, PUKs, IP addresses, UDIDs, PINs and/or MAC addresses, or combinations thereof, have been changed by the subscribers during the period of time(s) covered by this Warrant, then this Warrant will apply to any other MINs/MSIDs, MDNs, ESNs, MEIDs, IMEIs, IMSIs, ICCIDs, PUKs, IP addresses, UDIDs, PINs, email addresses, and/or MAC addresses. Furthermore, the specific manufacturer and model of said handset shall be released to the Affiant and/or the **Fort Bend County Sherriff's Office.**

10) Information regarding whether ▮▮▮▮▮ roamed from January 1, 2022 to March 8, 2022, including but not limited to if the device associated with ▮▮▮▮▮ roamed (and what specific networks are roamed to/from) from a home/primary network to another network and it is known by the home/primary network to what roaming network the devices roamed. This includes the last known network registrations/activity. And, if the accounts were active accounts, including if the account was inactivated or closed for non-payment, and, how many minutes and/or credits remained on prepaid type accounts.

11) Identify the existence of any **T-Mobile USA** cloud services associated with ▮▮▮▮▮ and provide any data held within the cloud to include SMS, MMS, and email communications from January 1, 2022 to March 8, 2022.

12) Retail Outlets or Any Other Entities be ordered to release, upon specific request, all purchase, payment (cash, credit, check, prepaid card, etc.), and activation information (even if through third parties) for all target devices, accounts, and subsequent payments, such as prepaid minute cards. This includes the specific data, time, location (including the specific store, register, clerk, etc.) that all devices, account changes, purchases, payments, etc., occurred. It is also ordered that all involved retailers (and neighboring businesses/residences) release any available surveillance video from the aforementioned transactions, both from within, and from the outside of the stores, and the area of the stores, where any of the aforementioned transactions occurred.

13) That this Warrant be ordered to apply to any and all companies/entities which may provide and/or carry wireless/telecommunication services for the target mobile numbers/unique account identifiers/equipment, and/or, any other entity who may possess the requested information, such as Internet companies/entities. This may be required because of number portability and/or if the original carrier was modified due to roaming and/or other considerations/reasons.

14) Provide a detailed definitions page, which identifies all information in the records.

Affiant asserts that the requested records and information from **T-Mobile USA**, an electronic communications provider doing business in the State of Texas under a contract or under the terms of a service agreement with a citizen of the State of Texas, are held in electronic storage by **T-Mobile USA**. Affiant further asserts that the requested records and information will constitute evidence that a specific offense has been committed or will constitute evidence that a particular person(s) committed the offense.

Affiant further requests that the service provider be ordered not to disclose the fact of this Application or potential Search Warrant as its disclosure could cause an adverse result for this ongoing investigation such as flight of the suspect or tampering with evidence.

I.

The electronic communications provider is **T-Mobile USA, Attn: Custodian of Records,** ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, a cellular provider.

II.

The suspect cellular telephone number is ▮▮▮▮▮▮▮▮▮▮▮▮.

III.

## AFFIDAVIT OF REQUESTING PEACE OFFICER

Affiant, Detective Joel Kader, is a peace officer under the laws of the State of Texas and is currently employed with the Fort Bend County Sheriff's Office as a Detective. Affiant, Detective Joel Kader, is a credible person and has been a licensed Texas Peace Officer for over 14 years. Affiant is currently assigned to the Burglary and Theft Unit of the Fort Bend County Sheriff's Office and is responsible for and has experience in the investigation of burglary and theft offenses. Affiant is an experienced criminal investigator, has no criminal record, is credible and reliable, and thus, is worthy of belief.

Affiant has reason to believe and does believe that the information sought, namely, the release of the requested cellular phone/landline phone/VoIP phone records, technical information, and technical assistance constitute evidence of the offense of <u>BURGLARY OF HABITATION</u> or evidence that a particular person committed the offense of <u>BURGLARY OF HABITATION</u>. In support of its request for a warrant under Texas Code of Criminal Procedure Articles 18B.351- 18B.359 and consistent with Title 18, United States Code sections 3123 & 2703(c)(1)(A) & (d) (directing the furnishing of customer records and other information and authorizing the disclosure of non-content location-based records), Affiant in this Affidavit sets forth the specific, articulable, sufficient, and substantial facts cited in this Affidavit showing that there is probable cause to believe that the customer records and other information pertaining to the telephone number, ▮▮▮▮▮▮▮▮, likely to be identified through the historical records of the telephone number, ▮▮▮▮▮▮▮, constitute evidence of the offense of <u>BURGLARY OF</u>

HABITATION or evidence that a particular person committed the offense of BURGLARY OF HABITATION.

Affiant's belief that the foregoing facts are true and correct are based upon his personal review of offense reports, personal investigation, and conference with Fort Bend County Sheriff's Office; Detectives Kirk Fregia, Sergeant Sean Baudat and Sergeant Daniel Calvillo which collectively reveals the following facts:

On December 7, 2021, Affiant was assigned a burglary that occurred at ▇▇▇▇▇▇▇▇▇▇, Sugar Land, Fort Bend County, Texas, which was documented under Fort Bend County Sheriff's Office Case Number 21-48094. During a review of the report and crime scene photos, Affiant learned the entry was made by prying open the door and that the peep hole was missing. Affiant realized there was a trend of apartment burglaries within Fort Bend County, Texas, over the last several months, with the specific modus operandi (MO) of pry force entry and with the peep hole on the front door missing or partially unscrewed. It is Affiant's belief that this allows the suspect(s) to see inside of the apartment prior to entry to ensure there are no residents inside of the apartment at the time.

On January 14, 2022, Affiant was assigned to investigate a burglary that occurred on January 13, 2022, that occurred at ▇▇▇▇▇▇▇▇▇▇, Katy, Fort Bend County, Texas, documented under Fort Bend County Sheriff's Office Case Number 22-1834. Affiant reviewed the report and crime scene photos and learned that the peep hole was missing and damage to the door frame appeared to be pry force. Affiant observed the report noted jewelry, clothing, and electronics were stolen.

On January 18, 2022 Affiant made contact with the complainant from Fort Bend County Sheriff's Office Case Number 22-1834, Shamecha Smith, who told Affiant she had cameras inside her apartment but received a notification that her camera was disconnected from the cloud. Shamecha Smith sent Affiant a screenshot of the notification that read "Mecha Cameras has been disconnected from the Blink Cloud for 30 minutes". Affiant noticed the notification is time stamped at 2:16pm leading Affiant to believe the burglary likely occurred around 1:45pm.

Affiant knows there is a Flock License Plate Recognition Camera (LPR) situated on Gaston Rd. just south of the sole entrance into this apartment complex. Affiant ran a search for vehicles captured on the Flock LPR camera from about 1:45pm to 2:15pm. During Affiant's review of vehicles captured on the Flock LPR one in particular, a black Lexus with Texas License Plate ▇▇▇▇▇, caught Affiant's attention because it has only been captured on Flock LPR a few times in the previous 30 days, suggesting it doesn't frequent this particular area often. Affiant ran a full search on Texas License Plate ▇▇▇▇▇ for Flock LPR hits for the previous 30 days and it showed an "inbound" read at 11:42am and an "outbound" read at 1:52 pm. The only other Flock LPR hits on this plate within the last 30 days are within this same area (Hickory Creek HOA cameras) on January 5, 2021. Affiant did not locate any reported burglaries on January 5, 2022.

Affiant ran the registration on the vehicle and observed it returned to Kieana Jessie, ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇, Houston, Texas, in the north Houston area. At the time Affiant had no further information and just documented the information.

On February 3, 2022, Affiant was reviewing calls for service and learned five (5) apartment burglaries were reported at an apartment complex located at ▇▇▇▇▇▇▇, Stafford, Fort Bend County, Texas, at apartments ▇▇▇▇▇▇▇▇▇▇. These cases are documented under Fort Bend County Sheriff's Office Case Numbers 22-4542, 22-4548, 22-4557, 22-4565 and 22-4588.

During review of the offense report and crime scene photos for Fort Bend County Sheriff's Office Case Number 22-4542 for Apartment ███ Affiant noticed again that a peep hole was missing and there was pry force entry at the door. Affiant noted the complainant in the case Derrick Miller stated he left his apartment around 3:26pm and returned home by 3:59pm. The report noted Derrick Miller reported seeing a black Lexus 4-door sedan with dark tinted windows parked near his vehicle but didn't think anything of it. The report mentions when Derrick Miller returned home and discovered his apartment broken into, he left to go tell the Leasing Office and believed he saw the same black Lexus again driving around another apartment building within the same apartment complex.

On February 4, 2022, Affiant made location at ███████ ███████, Stafford, Fort Bend County, Texas, to look for cameras and try to determine if the cases may be related as all the reports were taken around the same time frame.

While checking the apartments (apartment numbers: ███████████████████) Affiant noticed the peep hole was either completely missing and/or unscrewed and loose confirming Affiant's suspicion all the cases are related. Affiant noted the only exception was apartment ███ where maintenance was already on location fixing the door. Affiant spoke with the complainant for this apartment, Trenette Steele, and asked about the peep hole and she told Affiant it was loose and was already screwed back in by apartment maintenance.

While checking the area for cameras Affiant was flagged down by a maintenance worker who advised one of his workers saw a black Lexus with a regular Texas license plate and a black male who appeared to be 'chubby' walking around the apartment complex with a bag. Affiant noted this is consistent with the Derrick Miller's statement regarding a black Lexus vehicle. The maintenance man stated he has worked at the complex for many years and knows that the black Lexus has not been seen at the apartment complex before. Affiant did not have any further information on the Lexus.

On February 24, 2022, Affiant learned from Detective Kirk Fregia that on February 22, 2022, at approximately 1753 hours the Fort Bend County Sheriff's Office received a call for service in reference to a burglary of habitation at ███████, Katy, Fort Bend County, Texas, which was documented under Fort Bend County Sheriff's Office case number 22-7741. Affiant learned the complainant advised she left home around 1000 hours and returned home around 1730 hours and noticed the front door was damaged and the apartment was ransacked. The complainant stated several electronics were stolen from the residence and was unsure what else was stolen at the time. Affiant learned from Detective Fregia he observed in the deputy's photographs the peep hole appeared missing from the apartment door.

Affiant learned from Detective Fregia he knew the only way in and out of the apartment complex located at ████████████, Katy, Fort Bend County, Texas, was to pass through a Flock License Plate Reader camera. Affiant learned from Detective Fregia he conducted a Flock LPR search in the area of ███████ ███, Katy, Fort Bend County, Texas, for a black Lexus sedan during the burglary time frame because of his previous knowledge of a black Lexus sedan being involved in similar recent burglaries at ███████ Stafford, Fort Bend County, Texas. Affiant learned from Detective Fregia that the search resulted in ten (10) matching vehicles passing through those two Flock LPRs in that time frame. Affiant learned Detective Fregia began research on those ten (10) matching vehicles and learned only one (1) vehicle had a registration address that did not return in the immediate area. Affiant learned the vehicle displayed a Texas License Plate of ████████ and the results show it passing the Flock LPR near the entrance of the apartment complex at 1343 hours and leaving the area of the apartment complex at 1433 hours. Affiant learned Detective Fregia did a look up search on Flock for that license plate and learned it has never hit those same Flock LPRs in the past thirty (30) days which is the length of time Flock saves LPR hits.

Affiant learned from Detective Fregia he ran the license plate registration for Texas ████ and learned it was registered to Kieana Jessie, ████████████████, Houston, Texas. Affiant then realized this was the same Lexus sedan that Affiant researched on January 18, 2022.

On February 24, 2022, Affiant and Detective Fregia went to the apartment complex located at ████ ██, Stafford, Fort Bend County, Texas, and spoke to the maintenance worker identified as Eliecer Meneses who saw the burglary suspect and the black Lexus vehicle the suspect was using. Affiant showed Eliecer Meneses a Flock LPR photograph of the black 2014 Lexus ES3 bearing Texas License Plate ████ and Eliecer Meneses told Affiant with certainty that was the suspect vehicle he saw the day of the burglaries. Eliecer Meneses speaks only Spanish and translation was done by Fort Bend County Sheriff's Office Detective Sergeant Daniel Calvillo.

On February 26, 2022, Affiant learned from Detective Fregia he made contact with the Harris County Precinct 4 Constable's Office to inquire if any traffics stops or contact has been made by their agency on the Lexus passenger car displaying Texas license plate ████. Detective Fregia informed Affiant he learned the registered owner, Kieana Jessie, was stopped on a traffic stop in January 2022, and provided a home address during the stop as ████████, Houston, Texas. Affiant learned from Detective Fregia a search was conducted by Harris County Precinct 4 Constable's Office on Kieana Jessie's name and located a report from August 20, 2020, in which Kieana Jessie and her boyfriend identified as Reginald Jackson-Louis (DOB ████) were stopped by Harris County Sheriff's Office and found to be in possession of stolen property that was taken from an apartment burglary that occurred on August 17, 2020. Affiant learned from Detective Fregia this report is documented by the Harris County Sheriff's Office under Case Number 200806393.

Affiant learned on Thursday, March 3, 2022, Detective Fregia made contact with the complainant from the Harris County Sheriff's Office Case Number 200806393 who was identified as Jhonadab Salazar. Affiant learned Detective Fregia spoke with Jhonadab Salazar about apartment burglary case. Affiant learned from Detective Fregia that he asked Jhonadab Salazar if the peep hole from his apartment door was removed during the burglary of his apartment in August 2020 and Jhonadab informed Detective Fregia that it was removed from his door by the suspect. Based on the information learned, Affiant and Detective Fregia felt it was likely that Reginald Jackson-Louis was likely the suspect in the aforementioned burglaries we were investigating occurring in the Fort Bend County Sheriff's Office jurisdiction.

On March 8, 2022, Affiant and Detective Kirk Fregia performed a surveillance operation on the black Lexus ES3 displaying Texas license plate ████. Affiant and Detective Fregia surveilled the vehicle to an apartment complex in the Cypress area identified as the ████████ located at ████ ████████, Cypress, Texas 77433. Affiant observed the vehicle entered the apartment complex around 11:22am and left the area around 11:36am. Affiant observed the vehicle drive through the apartment complex parking lot and parked in several different spots before leaving the area.

Affiants knows from experience in prior serial apartment burglary investigations the behavior of parking in multiple locations within a complex is consistent with suspects performing pre-burglary surveillance of a complex to attempt to identify potential victim apartments.

Over the course of approximately three hours, Affiant and Detective Fregia continued to follow the black Lexus ES3 bearing Texas license plate ████ while it traveled into nine different apartment complexes in Harris and Fort Bend Counties. In each of the complexes, Affiant observed the suspect to behave as seen at ████████rive, Cypress, Harris County, Texas, by driving through the complex and parking in several different spots before leaving the area.

At approximately 1345 hours, Affiant and Detective Fregia followed the black Lexus ES3 bearing Texas license plate ███████ to the ███████████ apartment complex located at ██████████████████████ ███, Richmond, Fort Bend County, Texas. Affiant observed the black Lexus ES3 bearing Texas license plate ███████ drove through the apartment complex and then parked in front of Building 12 for about 15 minutes before leaving the apartment complex. After the black Lexus ES3 bearing Texas license plate ███████ left the complex, Affiant learned Detective Fregia went to building 12 where the black Lexus ES3 bearing Texas license plate ███████ was parked to attempt to verify if any apartment burglaries occurred. Affiant learned Detective Fregia located Apartment ███ with the peep hole missing and pry markings on the door jam. Affiant learned Detective Fregia attempted to open the door but it appeared to be still locked and entry was not made. Affiant later made contact with the apartment manager Tia Dixon and learned apartment ███ is currently vacant and is frequently shown to potential residents and therefore knows that the door jam was not damaged and the peep hole was not missing.

While coordinating with Fort Bend County Sheriff's Office Patrol Units, Affiant maintained surveillance on the suspect vehicle who then traveled to three additional apartment complexes, █████████████, Richmond, Texas, ██████████████████., Katy, Texas, and ███████████████, Katy, Texas, while Patrol Units were being en route to assist in conducting a traffic stop on the black Lexus ES3 bearing Texas license plate ████████. At approximately 1444 hours Affiant learned Fort Bend County Sheriff's Office Patrol Deputy T. Mangum and Patrol Sergeant S. Baudat were able to catch up to and conduct a traffic stop on the black Lexus ES3 bearing Texas license plate ███████ in the 1720 blk of Mason Rd, Katy, Harris County, Texas, just north of the Fort Bend County line. The driver was identified as Reginald Jackson-Louis (DOB ████████, Texas Identification Card number ████████████), the same person from the August 2020 Harris County Sheriff's Office apartment burglary report that was found to be in possession of stolen property from a "peep hole" style burglary.

Affiant and Detective Fregia both arrived at the traffic stop location. While on scene Affiant and Detective Fregia smelled the overwhelming odor of marijuana emitting from the interior of the black Lexus ES3 bearing Texas license plate ████████. Affiant and Detective Fregia then located a clear plastic baggy containing a green, leafy substance believed to be marijuana in plain view in the front, driver's side door handle pocket. Affiant learned from Detective Fregia he later weighed the suspected marijuana at the Fort Bend County Jail and had a total approximate weight of 9 grams.

During a probable cause search of the vehicle a large bucket containing a large amount of US Coins and a few Mexican Pesos was located on the backseat driver's side floorboard. Affiant learned from Detective Fregia he found a silver in color Apple MacBook Air with a name on the log-in screen showing "Steven Gutierrez" with what appeared to be approximately 50% battery life left. This computer was found on the backseat passenger side floorboard.

Affiant learned from Detective Fregia he also found a black pry bar sitting on top of the Apple MacBook Air computer and the items were concealed by a large red jacket. Affiant also learned Detective Fregia found multiple watches, designer shoes, designer shoes and jewelry in the vehicle, consistent with items that are commonly stolen in apartment burglaries. Affiant observed the pry bar had a rectangular end consistent with markings seen on the door frame from the attempted burglary at ████████████████████ ████████████████, Richmond, Fort Bend County, Texas.

Affiant learned Detective Fregia contacted the Harris County Sheriff's Office Fusion Center to inquire if there were any recent apartment burglaries with the name "Steven Gutierrez" listed as a complainant. Affiant learned Detective Fregia was informed by the Harris County Sheriff's Office Fusion Center that "Steven Gutierrez" was the listed complainant in Harris County Precinct 4 Constable's Office case number

220300326 which was an apartment burglary which occurred on March 3, 2022, in which an Apple MacBook Air laptop was among the items stolen.

Affiant made contact with Steven Gutierrez and showed him a photograph of the silver in color Apple MacBook Air computer that was located within Reginald Jackson-Louis' vehicle during the traffic stop and he confirmed to Affiant that was indeed his computer stolen during the burglary of his apartment on March 3, 2022, which was documented under Harris County Precinct 4 Constable Office case number 220300326. Affiant also learned from Steven Gutierrez that the peep hole of his apartment door was popped out during the burglary. Affiant learned Steven Gutierrez stated the Apple MacBook Air was valued at approximately $999.00.

Affiant was able to ascertain the phone because it was in the vehicle Reginald Jackson-Louis was driving at the time of the traffic stop.

Based on the above facts that Reginald Jackson-Louis attempted to enter into an apartment that is adapted for the overnight accommodation of persons and with intent to commit theft, was in possession of a crow bar adapted for use as a tool to burglarize an apartment, was in possession of marijuana and was in possession of stolen property, Reginald Jackson-Louis was placed into custody and transported to the Fort Bend County Jail where he was booked in for Attempted Burglary of a Habitation (3rd Degree Felony), Possession of Criminal Instrument (State Jail Felony), Possession of Marijuana < 2 ounces (Class B Misdemeanor) and Theft of Property >= $750 < $2,500 (Class A Misdemeanor).

On March 11, 2022 Affiant obtained a search warrant to search Reginald Jackson-Louis' Apple IPhone that was signed by Judge Lisa Gonzalez of the 268th District Court, Fort Bend County.

On March 11, 2022 Affiant learned from Detective Kirk Fregia he performed a forensic download of Reginald Jackson-Louis' Apple Iphone using the Cellebrite 4PC Software.

Affiant learned from Detective Fregia during review of text and chat message threads and photographs within the phone, stolen property dating as far back as June 17, 2019 was located. Affiant viewed a photograph in a message thread that showed a blue Glock 43 pistol that displayed Serial Number ██████. Affiant learned Detective Fregia ran Serial number ██████ in the TCIC/NCIC Computer database it returned stolen out of the Tomball Police Department under Tomball Police Department Case Number 190617-009.

On March 15, 2022 Affiant conducted research of the Fort Bend County Sheriff's Office Reporting System and performed a keyword search for Burglaries where the word "Peephole" had the word peephole referenced.

Affiant located a Burglary of Habitation Report documented under Fort Bend County Sheriff's Office Report Number 18-42349 that occurred at ████████████████, Katy, Fort Bend County, Texas.

During review of Fort Bend County Sheriff's Office report number 18-42349 Affiant learned a burglary occurred and there was pry force to the back door and the peephole on the front door was pushed out. Affiant learned jewelry, a watch, and small electronic was stolen.

Affiant knows by speaking with Detective Fregia this is the same address, ████████████, Katy, Fort Bend County, Texas is linked to a burglary with this same Modus Operandi that was committed by Reginald Jackson-Louis. Affiant learned from Detective Fregia that an arrest warrant was issued by

Judge Robert Rolnik of the 458th District Court on March 17, 2022 related to the burglary mentioned above from January 22, 2022 and documented under Fort Bend County Sheriff's Office Case Number 22-7741 that occurred at ███████, Katy, Fort Bend County, Texas.

Affiant learned the phone number for Reginald Jackson-Louis' Apple Iphone is ███████ as provided by the forensic download of the cell phone. On March 16, 2022 Affiant ran a phone number lookup search through www.zetx.com that shows the phone number is a T-Mobile phone number assigned to Kieana Jessie, who Affiant knows from his investigation is the girlfriend of Reginald Jackson-Louis and the registered owner of the Lexus car with Texas License Plate ███████.

On March 17, 2022 Affiant spoke with Ashley Coggins an Investigator with T-Mobile who informed Affiant phone number ███████ was opened in January 2022.

On March 17, 2022 Affiant obtained a copy of Tomball Police Department Case Number 190617-009 and reviewed the report. Affiant learned the gun was stolen from an apartment during a Burglary. The report noted a witness observed a black male about 5 feet 10 inches tall and 200 pounds walking down the stairs with property. Affiant observed this description is consistent with Reginald Jackson-Louis' physical characteristics.

Based on the above facts, Affiant has probable cause to believe that Reginald Jackson-Louis has been involved in Burglary of Habitations all over the Houston Metropolitan Area for the past several years. Therefore, Affiant has probable cause to obtain an extended period of cell phone records for phone number ███████ and that the records will likely produce evidence that tends to show Reginald Jackson-Louis' involvement in the offenses of <u>BURGLARY OF HABITATION</u>.

Affiant has both training and experience in the investigation of crimes involving the use of wireless communications services. Affiant's knows the following through training, experience, and knowledge:

1. Wireless communication service providers, such as T-Mobile USA, facilitate wire and electronic communications among wireless communication devices. Such devices are most often mobile telephone devices ("mobile phones"), but they can include wireless networking cards that interoperate with personal computers and similar devices. Such communications can include both voice communications and data services.

2. Wireless communication devices can be identified in a number of ways. One way is by reference to the current telephone number assigned to that device by the wireless provider. Because wireless providers can change the telephone number assigned to the same wireless device, such devices may also be identified by other identification numbers including the International Mobile Equipment Identity ("IMEI"), the Mobile identified by the International Mobile Subscriber Identity ("IMSI") presently associated with the device. The Mobile Equipment Identifier ("MEID"), or the Electronic Serial Number ("ESN") assigned to the device.

3. Among the services provided by most wireless communication service providers are "Short Message Service" ("SMS") and "Multimedia Messaging Service" ("MMS"), which provide the ability to send discrete data messages from wireless device to wireless device through one or more wireless providers. These can range from short text messages to small audio, video, and image files which are communicated among wireless users.

4. Typically, these SMS and MMS messages are addressed to a wireless communication device using the telephone number currently assigned to that device. Wireless communication service providers then cooperatively route the messages to the intended addressee for delivery to that device.

5. Mobile phones and similar devices may not be continuously communicating with the wireless provider's network, as they may be turned off or in a place where service is unavailable. Accordingly, SMS and MMS messaging is provided on a "store and forward" basis. Under this model, the recipient's wireless provider receives the SMS or MMS message intended for its subscriber and stores it temporarily until it can be delivered to the recipient's mobile phone or other wireless device when it again is accessible to the network.

6. Even after delivery of the SMS or MMS message to the customer, the wireless communications provider may choose to preserve a copy of the message and transactional records associated with the message for billing, backup, or record purposes. Providers may keep such records of such messages, including the date, time, sender, recipient, and/or content of the message, for a number of days or weeks after they have been sent or received by the wireless customer.

7. Such SMS and MMS messages can be and are used by criminals to transmit relevant information about their criminal activities, including information relating to times and places of meetings, information and records relating to their criminal and fraudulent activities, and other communications to facilitate criminal activity.

8. Wireless providers also generally retain records of their subscribers address, banking, or credit information and usage information in order to facilitate billing for usage of the account. This information can be useful for identifying individuals using the wireless communications device.

Affiant knows from previous criminal investigations that person(s) participating in the commission of crimes as detailed herein often communicate with co-conspirators and other third party individuals via cellular phone communication and said communication(s) can occur prior, during and subsequent to the commission of the crime. Affiant further knows that cellular handheld devices can establish communications with area cellular towers for purpose of data transfer in the absence of third party communication efforts.

Affiant knows from training and experience that when a cellular telephone or other electronic device is turned on to register its availability to receive communications on the network, or when the device actually sends or receives communications, it will communicate with a cell tower or satellite within its radio frequency range. Cellular service providers maintain data that can be used to generally locate a cellular telephone at a particular point in time. These include cell site maps, per call measurement data, and/or signal testing results for their networks, including round trip signal testing data, that show the geographical location of all cell sites within its service area. Using the cell site geographical information or GPS information, officers would be able to determine the physical location of the individual using a particular cellular telephone. Some cell phones or other electronic communication devices additionally communicate their physical location, in precise terms (such as longitude and latitude), to the provider via global positioning system ("GPS") satellite or multilateration (e.g. triangulated signals off three or more towers) measurements that are shared with or accessible to the provider owing to software settings and terms of service (TOS) agreements. This information is often evidence of or pertaining to criminal activity in that it enables law enforcement to locate a suspect at the time of a crime, either at or away from a crime scene, and can be used to assist and corroborate surveillance officers' observations and anticipate future movements and locations of the suspect and/or

his or her criminal associates, by establishing his or her communication and location habit patterns over time. For example, if the telephone consistently signals the same tower both late at night and in the early morning hours, it is reasonable to conclude that the suspect is living, sleeping, hiding or working at a night job in that vicinity.

In addition, Affiant knows that T-Mobile USA is a company that provides wireless telephone and data services to the general public. Among the services commonly offered to wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on Affiant's knowledge and experience, he believes that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by T-Mobile USA for short periods incident to and following their transmission.

In order to minimize any disruption of computer service to innocent third parties, T-Mobile USA employees will create an exact duplicate of the text message accounts and files described, including an exact duplicate of all information stored in the text message accounts and files described therein.

An exact copy of the warrant will be served to T-Mobile USA personnel, either by telephonic facsimile transmission or electronic mail (email) transmission, who will be directed to produce those account records and communications in its possession. The information requested should be readily accessible to T-Mobile USA by computer search, and its production should not prove to be burdensome.

Affiant knows the disclosure of transactional and subscriber records and information is regulated by the Electronic Communications Privacy Act (ECPA), specifically found in Title 18 USC, Section 2701, et seq. The ECPA requires the disclosure of content of an electronic communication held by an electronic communication or remote computing service pursuant to a state search warrant, and Title 18 USC Section 2703(g), states the presence of an officer is not required for service or execution of a search warrant issued requiring the disclosure by a provider of electronic communications service or remote computing service of the contents of an electronic communication.

Based on the information gathered in this investigation thus far, Affiant feels that the information provided by T-Mobile USA for records relating to ▮▮▮▮▮▮ could be material to Affiant's investigation.

WHEREFORE, PREMISES CONSIDERED, Affiant respectfully requests that a warrant issue authorizing Affiant, or any peace officer of Fort Bend County, Texas, to search the aforesaid location, T-Mobile USA, **Attn: Custodian of Records,** ████████, **Parsipanny, NJ 07054** with authority to search for and to seize any and all property, items, and contraband set out earlier in this Affidavit.

Joel Kader, AFFIANT

SWORN AND SUBSCRIBED TO BEFORE ME on this the 22nd day of March, 20 22.

**JUDGE PRESIDING**
458th JUDICIAL DISTRICT COURT
FORT BEND COUNTY, TEXAS

ROBERT ROLNICK
**PRINTED NAME OF JUDGE**

**FILED**
APR 18 2022  CO
AT 11:48 A M.
Beverly M Brown Walker
CLERK DISTRICT COURT, FORT BEND CO., TX

**WARRANT NUMBER:** 22-458- 335

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| | § |
| **THE COUNTY OF FORT BEND** | § |
| | § |
| **268ᵀᴴ JUDICIAL DISTRICT** | § |

## SEARCH WARRANT COMPELLING THE DISCLOSURE
## OF STORED ELECTRONIC COMMUNICATIONS

TO THE SHERIFF OR ANY PEACE OFFICER OF THE STATE OF TEXAS:

WHEREAS, the below signed authority, a Judge of a District Court located in Fort Bend County, Texas, upon proper Application by the State of Texas supported by the sworn Affidavit of the requesting peace officer, Joel Kader of the Fort Bend County Sheriff's Office, (which said Affidavit is here now made a part hereof for all purposes and incorporated herein as if written verbatim within the confines of this Warrant) through which the Court finds specific, articulable, sufficient, and substantial facts establishing probable cause to believe that the requested records constitute evidence of the offense of BURGLARY OF HABITATION or evidence that a particular person committed the offense of BURGLARY OF HABITATION.

This Warrant is signed pursuant to Articles 18.02(13) and 18.21(5A) of the Texas Code of Criminal Procedure and is consistent with Title 18 United States Code (U.S.C.), 2703(c)(2) and Orders the affiant or any peace officer of the State of Texas to go straightaway and deliver to T-Mobile USA, **Attn: Custodian of Records,** ▮▮▮▮▮▮▮▮, **Parsippany, NJ 07054** a copy of this order compelling the release of the following records and information:

1) All account holder information for the target device with assigned number, ▮▮▮▮▮▮▮▮, inclusive of all subscriber information, including expanded subscriber information including but not limited to first, middle, last names, dates of birth, social security numbers, state issued identification numbers (regardless of issuing state), passport numbers, consulate identification numbers, and any other identifiers not specifically listed herein that can be used to identify the account holder in question. Further this is including any available telephone numbers such sub accounts or can be reached numbers or other methods of contact utilized by said provider to include email addresses, twitter handles, Facebook or Instagram page link, Google or Google Plus or other un-named social media linked to account holder. Twinned or paired devices and their unique identifiers including the actual phone number, IMSI, IMEI and MAC addresses. IP authentication addresses (including ports through the source transport layer (layer 4), etc., and/or unique account, equipment, and/or network addressing, these may include the Electronic Serial Number (ESNs), International Mobile Subscriber Identifier (IMSIs), Temporary Mobile Subscriber Identity number (TMSI), International Mobile Equipment Identifiers (IMEIs), Mobile Equipment Identifiers (MEIDs), Mobile Station Identifiers (MSIDs), Mobile Identification Numbers (MINs), Mobile Dialed Numbers (MDN), Integrated Circuit Card IDs (ICCIDs), Personal Unlocking/Unblocking Codes (PUKs), PINs (personal identification numbers), Blackberry PINs (personal identification numbers/codes), Apple's Unique Device Identifier (ID) (UDID), and/or Media Access Control (MAC) address(es), and all

billing/payment information and accounts notes, for the specified cellular/wireless telephones, and for any other cellular/wireless telephones on the same account as the target numbers.

2) All stored communication and other files reflecting communications, including but not limited to: the content of voice mail messages, electronic mail messages, or text messages [Short Message Service (SMS) or Multimedia Message Service (MMS)] from January 1, 2022 to March 8, 2022, to or from wireless telephone number ▮▮▮▮▮▮▮;

3) All transactional information of all activity of the telephone number ▮▮▮▮▮▮▮ from January 1, 2022 to March 8, 2022, whether transmitted to or transmitted from the wireless telephone handset associated with ▮▮▮▮▮▮▮, including messaging logs, other log files, dates, times, methods of connecting, and/or locations. Messaging logs should contain:
   e. Date of message;
   f. Time of message (including time zone);
   g. Source of message (i.e. the IMEI, IMSI, MEID, and/or ESN associated with the handset from which the message originated, the telephone number associated with that handset, and the provider associated with that handset; and
   h. Destination of the message (i.e. the IMEI, IMSI, MEID, and/or ESN associated with the handset from which the message originated, the telephone number associated with that handset, and the provider associated with that handset,

4) All transactional information of all telephone calls originating to or terminating from telephone number ▮▮▮▮▮▮▮, whether transmitted to or transmitted from the wireless telephone handset associated with ▮▮▮▮▮▮▮, for a period from January 1, 2022 to March 8, 2022, and

5) All Call Detail Records (CDRs) associated with ▮▮▮▮▮▮▮ from January 1, 2022 to March 8, 2022, including all outgoing and incoming communications (call, text or MMS detail records) combined herein as CDRs, with cell sites for 2G, 3G and 4G networks, including all telephone numbers (number calling and number called), date and time (including time zone of call or text), duration of call, chirp numbers/direct connects/walkie-talkie/Universal Fleet Mobile Identifier (UFMI) numbers, email addresses (electronic mail), Internet Protocol (IP) addresses, World Wide Web (www) addresses, dialed/communicated with (outgoing and/or incoming). This includes local and long distance telephone connection records, including all text [short message service SMS)] detail records, email detail records [including IP (Internet Protocol) logs, email header information, and email addresses], IP connection detail records/logs, *and* video, audio, and/or photo image transactions records, such as multimedia messaging service (MMS) (picture/video messaging) detail records/logs, sent or received, to provide dates, times, and methods of voicemail access, including all available SS7 signaling records of these communications, and, records of session times and durations. Cell Sites are required if they are available on any and all transactional/addressing and routing data. All cell site activations and sectors for all originating (outgoing) and terminating (incoming) calls, together with a complete listing of cell site identification number, physical address, latitude & longitude, sector identifiers, and true orientations of all cell sites in the market where the telephone handset may be located.

6) Cell sites activations and all registration information, including signal strengths, logs, etc. (if obtainable), including any location information delivered to a public safety answering point (PSAP) pursuant from a 911 call or derived from any system capable of delivering location information to a PSAP from February 1, 2022 to February 3, 2022.

7) **Specialized Location Records**: All call, text, and data connection location information from January 1, 2022 to March 8, 2022 associated with assigned number, ▓▓▓▓▓▓, or target account. Including, all specialized carrier records that may be referred to as RTT (Real Time Tool), PCMD (Per Call Measurement Data), Network Location Services (NELOS), Mediation Records, Digger Reports, E911, LAC/CID or LTE Site ID to include Switch/MSC/BSC/Cell name and azimuth, as well as Azimuths for the sectors accessed during the communications, and/or any historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell-Site and sector of the device in relationship to the network when connected to the network for the above referenced numbers. Any historical geo-location services/global positioning system (GPS) data/enhanced 911 (E911) records including but not limited to any available ranging data [distance from tower, range to tower (PCMD/RTT/REVEAL/Historic MLTs, TrueCall, TDOA, Timing Advance Ranging Data Information, Timing Advance Records (TA), or other similar un-named records held by **T-Mobile USA**.

8) If available, an engineering map; showing all cell-site antenna/tower locations, sectors, azimuths, beam widths, pilot PN (pseudo noise) offsets, and true orientations. And, a list of any and all cellular sites numbers [Long Term Evolution (LTE) —complete ECGI, CGI, Tracking Area Code (TAC) and specific eNodeB and Cell Site, NodeB, Local Area Codes (LACs), Cellular Identifiers (CIDs), intercept access points (IAP) system identities, repolls, switches, etc.], locations, addresses, neighbor lists, etc., and/or latitude and longitude of any said sites. Also, that cellular sites lists, including latitudes and longitudes, be provided, via electronic mail, or via shipping when email is not available, in an electronic format, if available and/or possible. Furthermore, the concerned carrier(s) will provide RF (radio frequency) propagation maps/surveys and cellular antenna/tower maintenance records, and cellular antenna/tower maintenance records procedures, upon request. These maps/surveys and maintenance records will be provided in electronic format, such as original color format, if available.

9) Should the cellular/wireless number/equipment which is the current target of this Warrant have changed, prior to or during the requested period, including the MINs/MSIDs, MDNs, ESNs, MEIDs, IMEIs, IMSIs, ICCIDs, PUKs, IP addresses, UDIDs, PINs and/or MAC addresses, or combinations thereof, have been changed by the subscribers during the period of time(s) covered by this Warrant, then this Warrant will apply to any other MINs/MSIDs, MDNs, ESNs, MEIDs, IMEIs, IMSIs, ICCIDs, PUKs, IP addresses, UDIDs, PINs, email addresses, and/or MAC addresses. Furthermore, the specific manufacturer and model of said handset shall be released to the Affiant and/or the **T-Mobile USA**.

10) Information regarding whether ▓▓▓▓▓▓ roamed from January 1, 2022 to March 8, 2022, including but not limited to if the device associated with 346-812-8774 roamed (and what specific networks are roamed to/from) from a home/primary network to another network and it is known by the home/primary network to what roaming network the devices roamed. This includes the last known network registrations/activity. And, if the accounts were active accounts, including if the account was inactivated or closed for non-payment, and, how many minutes and/or credits remained on prepaid type accounts.

11) Identify the existence of any **T-Mobile USA** cloud services associated with ▓▓▓▓▓▓ and provide any data held within the cloud to include SMS, MMS, and email communications from January 1, 2022 to March 8, 2022.

12) Retail Outlets or Any Other Entities be ordered to release, upon specific request, all purchase, payment (cash, credit, check, prepaid card, etc.), and activation information (even if through third

parties) for all target devices, accounts, and subsequent payments, such as prepaid minute cards. This includes the specific data, time, location (including the specific store, register, clerk, etc.) that all devices, account changes, purchases, payments, etc., occurred. It is also ordered that all involved retailers (and neighboring businesses/residences) release any available surveillance video from the aforementioned transactions, both from within, and from the outside of the stores, and the area of the stores, where any of the aforementioned transactions occurred.

13) That this Warrant be ordered to apply to any and all companies/entities which may provide and/or carry wireless/telecommunication services for the target mobile numbers/unique account identifiers/equipment, and/or, any other entity who may possess the requested information, such as Internet companies/entities. This may be required because of number portability and/or if the original carrier was modified due to roaming and/or other considerations/reasons.

14) Provide a detailed definitions page, which identifies all information in the records.

IT IS HEREBY ORDERED that said records are to be delivered to the Applicant/Affiant, Joel Kader at the Fort Bend County Sheriff's Office, 1840 Richmond Parkway, Richmond, Texas 77469 within 15 business days after the date of service by mail, courier service, or by electronic mail to JOEL.KADER@FORTBENDCOUNTYTX.GOV.

IT IS FURTHER ORDERED that the requesting law enforcement agency compensate T-Mobile USA at the prevailing rate for expenses incurred directly relating to compliance with this order.

IT IS FURTHER ORDERED that T-mobile USA, including any of its employees or agents, may not disclose to any person the existence of this warrant for an indefinite period, as any notification or disclosure to any person of the existence of this warrant will have an adverse result as defined by Texas Code of Criminal Procedure (T.C.C.P) Chapter 18.B, Subchapter K, Art 18B.501 and 18 USC 2705b. Irrespective of California Penal Code Chapter 3.6 Section 1546 et al, this prohibition from notice to ANYONE has no expiration date. IT IS FURTHER ORDERED that T-Mobile USA SHALL notify the submitting agency, named investigator, and submitter of this process, in writing, 15 days prior to providing NOTICE to ANYONE so that additional legal process can be obtained.

**IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS**

HEREIN FAIL NOT, as the peace officer to whom this warrant is delivered you shall execute it without delay and within eleven whole days and due return make by faithfully completing the form attached hereto designated for such purpose.

SIGNED AND ENTERED on this the ____22ⁿᵈ____ day of ____March____, 20__22__ at _3:24_ O'clock ____ .M.

**FILED**

APR 18 2022

AT____ 11:48 ____ A.M.

CLERK DISTRICT COURT, FORT BEND CO., TX

_____
**JUDGE PRESIDING**
458ᵗʰ DISTRICT COURT
FORT BEND COUNTY, TEXAS

ROBERT ROLNICK
**PRINTED  NAME  OF  JUDGE**

## BUSINESS RECORDS AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared _____, who, being by me duly sworn, deposed as follows:

My name is _____, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the Controller and the custodian of the records for _____, Attached hereto are _____ page(s) of records from _____. These said _____ page(s) of records are kept by _____ in the regular course of business and it was the regular course of business of _____ for an employee or representative of _____, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record, and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are exact duplicates of the originals.

_____
**AFFIANT, Custodian of Records**

SWORN TO AND SUBSCRIBED before me on this the _____ day of _____, 20___.

NOTARY PUBLIC in and for the
State of _____
NOTARY'S PRINTED NAME _____
Commission expires:

**Written Notice of Request for Business Records Affidavit**

I, _____Joel Kader_____, am an authorized peace officer in the State of Texas, and I am serving a warrant for stored customer data or communication pursuant to Texas Code of Criminal Procedure Chapter 18, Section 5A. In addition to the warrant, I am delivering a business records affidavit form to the provider of an electronic communications service or the provider of a remote computing service responding to the accompanying warrant.

This writing serves as notice pursuant to Texas Code of Criminal Procedure (T.C.C.P.) Chapter 18, that an executed business records affidavit is required for the records that are the subject of the warrant. Pursuant to T.C.C.P. 18 5(A)(k), the provider shall verify the authenticity of the customer data, contents of communications, and other information produced in compliance with the warrant by including with the information the affidavit form. The affidavit form is to be completed and sworn to by a person who is a custodian of the information or a person otherwise qualified to attest to its authenticity that states that the information was stored in the course of regularly conducted business of the provider and specifies whether it is the regular practice of the provider to store that information.

STATE OF TEXAS        §
COUNTY OF FORT BEND   §
268TH JUDICIAL DISTRICT   §

## RETURN AND INVENTORY

    The undersigned Affiant, being a Peace Officer under the laws of Texas and being duly sworn, on oath certifies that the foregoing evidentiary search warrant came to hand on the day it was issued and that it was executed on the _____ 22 _____ day of _____ March _____, 2022, by making the search directed therein and seizing during such search the following described property:

**Kader, Joel**

| | |
|---|---|
| **From:** | LERRecords@T-Mobile.com |
| **Sent:** | Friday, March 25, 2022 9:16 AM |
| **To:** | Kader, Joel |
| **Subject:** | Tasks for Case Number: 22458335, T-Mobile US, Inc. Tracking ID: 3715373 |
| **Attachments:** | CDR_Mediations_3468128774_10563740.xls; 3715373_20220325_Certification.pdf; Data_Sessions_152617_3468128774.xlsx; SUB_Tibco_3468128774_10563741.xls; TimingAdvance_310260256622922_01-15-2022_01-21-2022_Records.xlsx; TimingAdvance_310260256622922_01-22-2022_01-28-2022_Records.xlsx; TimingAdvance_310260256622922_01-29-2022_02-04-2022_Records.xlsx; TimingAdvance_310260256622922_02-05-2022_02-11-2022_Records.xlsx; TimingAdvance_310260256622922_02-12-2022_02-18-2022_Records.xlsx; TimingAdvance_310260256622922_02-19-2022_02-25-2022_Records.xlsx; TimingAdvance_310260256622922_02-26-2022_03-04-2022_Records.xlsx; TimingAdvance_310260256622922_03-05-2022_03-08-2022_Records.xlsx; Interpreting Call Detail Records - 20220225.pdf; Interpreting Data Sessions20220225.pdf; Interpreting Subscriber Information 20210909.pdf; UTC Information Sheet 05252018.pdf |



_____
AFFIANT

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the _____ 12th _____ day of _____ April _____, 2022.

_____
NOTARY PUBLIC OF THE STATE OF TEXAS

> MICHELLE SCHMIDT
> Notary Public, State of Texas
> Comm. Expires 10-23-2022
> Notary ID 131769718

# EXHIBIT F

*Plaintiff's First Amended Complaint*
No. 4:22-cv-4120

2022-SW-0197
WARR
Warrant
6596841

2022-SW-0197

**WARRANT NUMBER:** 21-400-015

### SEARCH WARRANT

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| **COUNTY OF FORT BEND** | § |
| **268TH JUDICIAL DISTRICT** | § |

### THE STATE OF TEXAS TO THE SHERIFF OR ANY PEACE OFFICER OF FORT BEND COUNTY, TEXAS.

**GREETINGS:**

WHEREAS, the Affiant, Detective Christopher Arias, whose name appears on the affidavit attached hereto (which said affidavit is by this reference incorporated herein for all purposes) is a peace officer under the laws of the State of Texas, and did heretofore this day subscribe and swear to said affidavit before me, and whereas I find that the verified facts stated by Affiant in said affidavit show that Affiant has probable cause for the belief he expresses herein and establishes existence of proper grounds for issuance of this Warrant.

YOU ARE THEREFORE COMMANDED to forthwith enter the premises located at and/or under the control of the Fort Bend County Sheriff's Office, 1410 Richmond Parkway, Richmond, Fort Bend County, Texas, commonly known as the Fort Bend County Sheriff's Office, to search and seize the entire contents located within a cellular telephone, to wit: One (1) red Apple iPhone cell phone, Model: XR (also referred to herein as "SUBJECT CELLULAR TELEPHONE"). A photograph (attached exhibit A) of the here-in described premises is embedded below; it is to be considered a part of this warrant and included for all descriptive purposes. Said photograph (see attached exhibit A) of the SUBJECT CELLULAR TELEPHONE is pictured next to the evidence envelope it is currently stored in. Said envelope is marked with the address of the incident in question, marker number and date and time of collection, namely, ▮▮▮▮▮▮▮▮▮▮▮▮ marker 13 and 2/20/21 at 2129." .

At said place, you shall search and seize records, files, data, instruments or instrumentalities, and evidence located within SUBJECT CELLULAR TELEPHONE described as:

1) Computer hardware and software which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Any and all computer system(s) to include input and output devices, electronic storage media, all associated storage media for electronic data.
2) Any computer files that are used or may be used in connection with the usage or ownership of SUBJECT CELLULAR TELEPHONE.
3) A visual image or images contained within the internal memory files of the SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.
4) Records evidencing use or ownership of the SUBJECT CELLULAR TELEPHONE, including, but not limited to, registry and setup information within the SUBJECT CELLULAR TELEPHONE's

1

operating system and customizations to the SUBJECT CELLULAR TELEPHONE's directory structure.

5) Graphic files which are used, or capable of being used, to identify the person(s) in possession of the SUBJECT CELLULAR TELEPHONE, including, but not limited to, files formatted as Joint Graphic Experts Group (JPEG/JPG), Graphic Interchange Format (GIF), Moving Pictures Expert Group (MPEG/MPG) and Audio Video Interactive (AVI), and the data within the aforesaid objects relating to said materials.

6) Computer programs capable of viewing graphic files.

7) Text files, including subscriber assigned telephone number, originating (outgoing) or terminating (incoming) telephone calls, originating (outgoing) or terminating (incoming) "text messages", electronic mail (email), that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

8) Correspondence, including, but not limited to, electronic mail, chat logs, text messages, electronic audio files ("voice notes"), any voicemails stored, and electronic messages that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

9) Any and all electronic correspondences, electronic audio files ("voice notes"), notes, letters, address books, or other materials that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

10) Any and all records of Internet History and internet service usage, to include websites visited, search terms, favorites and Cookies, from SUBJECT CELLULAR TELEPHONE prior to and after said offense was alleged to have been committed that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

11) Any and all call logs pertaining to the usage of the SUBJECT CELLULAR TELEPHONE, including subscriber assigned telephone number, originating (outgoing) or terminating (incoming) telephone numbers and calls, and dates and times of incoming and outgoing telephone calls that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

12) Any photographs, digital images, or video recordings on SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

13) Images and all ExIF metadata (such as date, time, GPS locations, etc.) to include geotagging information (GPS identification of the location of the depicted image) that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

14) Application programs ("apps") capable of viewing graphic files or videos and any graphic files or videos contained within the programs found on the SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

15) SMS/MMS messages and attached multimedia files, to include incoming and outgoing communication received by or contained on SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT

CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

16) WiFi network information, to include SSID (Network name) and GPS information of the network used by SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

17) E-mails to include incoming and outgoing messages that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

18) Any account information, settings, and saved usage information for any and all installed applications, also known as "apps", on the SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

19) Any stored Global Positioning System (GPS) data that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

20) Contact information including email addresses, physical addresses, mailing addresses, and phone numbers that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

21) Any social media posts or messaging and any images hereto, including but not limited to that on Facebook, Twitter, and/or Instagram, that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

22) Any records, files, instrumentalities or instruments, and evidence that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

and to seize the same and bring it before me.

This Court grants Affiant's request to have the seized items transported off site and/or out of county for forensic examination, to be conducted by a competent forensic examiner or other knowledgeable person.

FURTHER, you are ordered, pursuant to the provisions of article 18.10, Texas Code of Criminal Procedure, to retain custody of any property seized pursuant to this warrant, until further order of this court or any other court of appropriate jurisdiction shall otherwise direct the manner of safekeeping of said property. This court grants you leave and authority to remove such property from this county if such removal is necessary for the safekeeping of such seized property by you, if such removal is otherwise authorized by the provisions of article 18.10, Texas CCP, or if such removal is necessary to take and/or store any seized property to an appropriate setting and location to be properly analyzed by a qualified person. You are further ordered to give notice to the court, as a part of the inventory to be filed subsequent to the execution of this warrant, and as required by the article 18.10, Texas CCP. The execution of said warrant shall be within three whole days, exclusive of the day of its issuance and the day of its execution, with your return thereon, showing you have executed the same, filed in this court.

3

HEREIN FAIL NOT, and return make thereof.

WITNESS MY SIGNATURE on this the ___4th___ day of ~~February, 2021,~~ march ℰℂℂ at ___9:53___ o'clock ___A___.M.

_Taneika Carter_
JUDGE PRESIDING

___400th___ DISTRICT COURT
FORT BEND COUNTY, TEXAS

_Tameika Carter_
PRINTED NAME OF JUDGE

# FILED

APR 2 8 2022
AT___3:00___ P.M.
_Beverly McGrew Walker_
CLERK DISTRICT COURT, FORT BEND CO., TX

WARRANT NUMBER: _21-400-015_

## AFFIDAVIT FOR SEARCH WARRANT

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| **COUNTY OF FORT BEND** | § |
| **268TH JUDICIAL DISTRICT** | § |

### I. THERE IS IN FORT BEND COUNTY A SUSPECTED CELLULAR TELEPHONE AND PREMISES DESCRIBED AS FOLLOWS:

One (1) red Apple iPhone cell phone, Model: XR. This cellular telephone is also referred to in this Affidavit as SUBJECT CELLULAR TELEPHONE.

Also see attached Exhibit A, a photograph of the SUBJECT CELLULAR TELEPHONE, pictured next to the evidence envelope it is currently stored in. Said envelope is marked with the address of the incident in question, marker number and date and time of collection, namely, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, marker 13 and 2/20/21 at 2129." I wish to incorporate Exhibit A as part of this sworn affidavit.

The SUBJECT CELLULAR TELEPHONE is currently located at and/or under the control of the Fort Bend County Sheriff's Office, 1410 Richmond Parkway, Richmond, Fort Bend County, Texas. The SUBJECT CELLULAR TELEPHONE is currently located at the Fort Bend County Sheriff's Office Evidence Room. The subject cellular telephone is currently located within the 268th Judicial District.

### 2. SAID SUSPECTED CELLULAR TELEPHONE AND PREMISES ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS:

Sheriff Eric Fagan, Fort Bend County Sheriff's Office, currently and previously by case Suspect Tyrik R. Hampton, DOB: ▮▮▮▮.

### 3. IT IS THE BELIEF OF THE AFFIANT, AND HE HEREBY CHARGES AND ACCUSES THAT:

On or about, February 20, 2021, in Fort Bend County, Texas, Tyrik Hampton (black male, DOB ▮▮▮▮▮▮▮) did then and there, with intent to cause serious bodily injury to an individual, namely, Simon Simmons B/M – DOB: ▮▮▮▮▮▮ commit an act clearly dangerous to human life that caused the death of said Simon Simons, by shooting him in the chest with a handgun.

### 4. THE PROPERTY AND ITEMS WHICH ARE LOCATED IN THE SUSPECTED CELLULAR TELEPHONE AND PREMISES WHICH CONSTITUTE EVIDENCE OF THE ABOVE DESCRIBED OFFENSE, WHICH TEND TO IDENTIFY THE POSSESSOR/OWNER OF THE CELLULAR COMMUNICATION DEVICE DESCRIBED HEREIN, OR WHICH CONSTITUTE EVIDENCE THAT THE ABOVE DESCRIBED SUSPECTS COMMITTED THE ABOVE DESCRIBED OFFENSE ARE MORE PARTICULARLY DESCRIBED AS BEING:

5

The property and items which are located therein and which constitute evidence or instrumentalities of an offense and which may tend to identify the rightful owner of herein described communication device include but are not limited to:

1) Computer hardware and software which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Any and all computer system(s) to include input and output devices, electronic storage media, all associated storage media for electronic data.

2) Any computer files that are used or may be used in connection with the usage or ownership of SUBJECT CELLULAR TELEPHONE.

3) A visual image or images contained within the internal memory files of the SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

4) Records evidencing use or ownership of the SUBJECT CELLULAR TELEPHONE, including, but not limited to, registry and setup information within the SUBJECT CELLULAR TELEPHONE's operating system and customizations to the SUBJECT CELLULAR TELEPHONE's directory structure.

5) Graphic files which are used, or capable of being used, to identify the person(s) in possession of the SUBJECT CELLULAR TELEPHONE, including, but not limited to, files formatted as Joint Graphic Experts Group (JPEG/JPG), Graphic Interchange Format (GIF), Moving Pictures Expert Group (MPEG/MPG) and Audio Video Interactive (AVI), and the data within the aforesaid objects relating to said materials.

6) Computer programs capable of viewing graphic files.

7) Text files, including subscriber assigned telephone number, originating (outgoing) or terminating (incoming) telephone calls, originating (outgoing) or terminating (incoming) "text messages", electronic mail (email), that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

8) Correspondence, including, but not limited to, electronic mail, chat logs, text messages, electronic audio files ("voice notes"), any voicemails stored, and electronic messages that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

9) Any and all electronic correspondences, electronic audio files ("voice notes"), notes, letters, address books, or other materials that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

10) Any and all records of Internet History and internet service usage, to include websites visited, search terms, favorites and Cookies, from SUBJECT CELLULAR TELEPHONE prior to and after said offense was alleged to have been committed that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

11) Any and all call logs pertaining to the usage of the SUBJECT CELLULAR TELEPHONE, including subscriber assigned telephone number, originating (outgoing) or terminating (incoming) telephone numbers and calls, and dates and times of incoming and outgoing telephone calls that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

12) Any photographs, digital images, or video recordings on SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

13) Images and all ExIF metadata (such as date, time, GPS locations, etc.) to include geotagging information (GPS identification of the location of the depicted image) that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

14) Application programs ("apps") capable of viewing graphic files or videos and any graphic files or videos contained within the programs found on the SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

15) SMS/MMS messages and attached multimedia files, to include incoming and outgoing communication received by or contained on SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

16) WiFi network information, to include SSID (Network name) and GPS information of the network used by SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

17) E-mails to include incoming and outgoing messages that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

18) Any account information, settings, and saved usage information for any and all installed applications, also known as "apps", on the SUBJECT CELLULAR TELEPHONE that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

19) Any stored Global Positioning System (GPS) data that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

20) Contact information including email addresses, physical addresses, mailing addresses, and phone numbers that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

21) Any social media posts or messaging and any images hereto, including but not limited to that on Facebook, Twitter, and/or Instagram, that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

22) Any records, files, instrumentalities or instruments, and evidence that would tend to identify person(s) in possession of the SUBJECT CELLULAR TELEPHONE, show SUBJECT CELLULAR TELEPHONE's participation in the offense of Murder, or is evidence of the offense of Murder.

**5. AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING FACTS:**

CRIME EVIDENCE

ME EVIDENCE

Exhibit
A

AFFIANT'S BELIEF IS BASED UPON THE FOLLOWING FACTS:

Affiant, Detective Christopher Arias, is a credible person and a Peace Officer with the Fort Bend County Sheriff's Office, 1410 Richmond Parkway, Richmond, Fort Bend County, Texas. Affiant has been employed with the Fort Bend County Sheriff's Office for five (5) years as a certified peace officer. Affiant is currently assigned to the Criminal Investigation Division, responsible for the investigation of robbery and homicide offenses. Affiant has received training regarding the investigation of offenses against persons, including assault, robbery, and homicide.

Affiant's belief that the foregoing facts and allegations are true and correct is based upon his knowledge of the facts surrounding this case through his personal investigation of physical evidence, his review of data contained within law enforcement indices, and conversations with his co-workers, Criminal Investigation Supervisor, Sergeant Taylor Rollins, Patrol Sergeant Jason Finberg, Detective Joel Kader, Detective David Williams, Detective Alexander Hickey, Crime Scene Investigator Glen St. Hilaire, all of whom are Peace Officers employed with the FBCSO, and Texas Department of Public Safety Trooper Drew Stoner; which collectively reveals the following:

On Saturday, February 20, 2021, Affiant was the on-call Detective for the Fort Bend County Sheriff's Office. Robbery – Homicide Unit. At approximately 1743 hours, Affiant received an e-mail from Fort Bend County Sheriff's Office Communications Division regarding a shooting which occurred in the ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ Affiant began responding to this call and learned the shooting occurred at ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Affiant arrived on scene and observed a black male, who Affiant later identified as Simon Simmonds (DOB ▮▮▮▮▮▮▮▮▮, laying on the ground in the supine position in the driveway of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Affiant observed EMS on scene providing medical attention to Simon Simmonds but he was declared deceased shortly after by EMS. Affiant observed Simon Simmonds to have what appeared to be multiple gunshot wounds to the chest.

Affiant observed a black female, who Affiant later identified as Krashaun Simmonds (DOB ▮▮▮▮▮▮ being transported by EMS to a hospital. Affiant later learned from Sergeant Finberg that Krashaun Simmonds was being transported to Memorial Hermann Downtown due to her suffering a gunshot wound.

Affiant was advised by Sergeant Rollins that Detective Kader conducted a follow-up at Memorial Herman with Krashaun Simmonds and learned that she suffered a gunshot wound to her back. Detective Kader was able to get a preliminary statement from Krashaun Simmonds. Krashaun Simmonds stated that she was standing near the front door of her residence, when she observed Tyrik Hampton shoot at her husband, Simon Simmonds, multiple times, while in the driveway of the aforementioned residence. Krashaun Simmonds stated Tyrik Hampton then directed his attention to her at which time she turned and ran into the residence and was shot in the back by Tyrik Hampton.

Affiant spoke with Trooper Stoner on scene and learned that he was driving by the aforementioned address, while on duty in his marked Texas Department of Public Safety patrol vehicle, when he on-viewed a black male, who Affiant later identified as Tyrik Rashad Hampton (DOB ▮▮▮▮▮▮ ) standing in the driveway and shoot at Simon Simmonds multiple times. Trooper Stoner advised that Simon Simmonds then fell to the ground and Tyrik Stoner ran into the aforementioned residence. Trooper Stoner advised that he exited his marked patrol vehicle and pursued Tyrik Hampton into the residence where he then placed Tyrik Hampton into custody at approximately 1732 hours. Trooper Stoner advised that while in the residence he observed, Krashaun Simmonds who appeared to have stuffed a gunshot wound as well. Trooper Stoner advised he placed Tyrik Hampton in the back seat of his marked patrol vehicle.

Affiant then conducted a custodial interrogation with Tyrik Hampton while on scene. Tyrik Hampton was read his Miranda Rights and he (Tyrik Hampton) waived his rights. Tyrik stated that he does not live at ███████ ████████████████████████████████████████ (offense location). Tyrik Hampton stated that his place of residence is ████████████, Hattiesburg, Mississippi.

Affiant learned from Sergeant Rollins that Detective Kader spoke with Krashaun Simmonds at Memorial Hermann and she provided a consent to search for her residence located at ████████████████████ ███████████████████████████████ffense location).

Affiant learned from Investigator St. Hilaire that while conducting his crime scene observations he located a red Apple iPhone Model: XR located within the residence near the front living room that is located closest to the front door of the residence.

Affiant later conducted a custodial interrogation with Tyrik Hampton at the Fort Bend County Sheriff's Office. Tyrik Hampton, again, was read his Miranda Rights and he (Tyrik Hampton) waived his rights. Tyrik Hampton stated he drove, in his Chevrolet Camaro, from his home, which is located at ████████████, Hattiesburg, Mississippi to the aforementioned residence to speak with his girlfriend, Karenna Genesis Antwine (DOB ████████████) of two (2) years. Tyrik Hampton stated she is the daughter of Simon and Krashaun Simmonds. Tyrik Hampton stated he parked his Chevrolet Camaro across the street from the aforementioned residence, near the mail box. Tyrik Hampton stated before exiting his vehicle, he attempted to call Karenna Antwine, using his cell phone multiple times but Karenna Antwine did not answer. Tyrik Hampton described his cell phone as a red Apple iPhone XR. Tyrik Hampton stated he knocked on the front door of the residence and spoke with Simon Simmonds. Tyrik Hampton stated Simon Simmonds closed the door on him. Tyrik Hampton stated he then went to Karenna Simmonds vehicle and took the value caps off her vehicle and went to place them into his vehicle. Tyrik Hampton described the value caps to be diamond style value caps. Tyrik Hampton stated it was at that point in time that he retrieved his Glock 48, 9mm pistol from his vehicle. Tyrik Hampton stated he walked back to Karenna Simmonds vehicle and stood next to it. Tyrik Hampton stated Simon Simmonds then exited the residence on the phone, with who he believed to be law enforcement, informing them of a domestic violence incident. Tyrik Hampton stated Simon Simmonds then reached for his waist band, at which time, Tyrik Hampton stated he displayed his Glock 48 and fired multiple times at Simon Simmonds. Tyrik Hampton stated he then directed his attention to Krashaun Simmonds, who was standing near the front door of the residence and fired at least twice at her. Tyrik Hampton stated at which time he retreated into the residence where he was then placed into custody by Trooper Stoner. Prior to concluding to the interrogation, Tyrik Hampton advised that his mother name was April Reed and requested I speak with her.

Affiant later spoke with Detective Williams who advised that Fort Bend County Death Investigator Janice Hutchinson arrived on scene at which time she released the deceased, Simon Simmonds, to be manipulated for further observations. Detective Williams advised that Simon Simmonds suffered multiple gunshot wounds and no firearm was located on, near or around his person.

Affiant has training, experience and knowledge that smart phones are capable of storing records of call detail records or logs, text messages, SMS messages, location detail, and other data. Affiant believes that a search of SUBJECT CELLULAR TELEPHONE's handheld cellular telephone (SUBJECT CELLULAR TELEPHONE) contains evidence of Murder. Additionally, Affiant believes that there may be evidence of Murder located on SUBJECT CELLULAR TELEPHONE. Based on the information received in this investigation thus far, Affiant believes that the SUBJECT CELLULAR TELEPHONE may contain evidence pertaining to the charge of Murder, and may contain evidence regarding the identity of the suspect(s).

9

Affiant knows from previous Murder investigations that person(s) participating in the commission of crimes as detailed herein often communicate with co-conspirators and other third party individuals via cellular phone communication and said communication(s) can occur prior, during and subsequent to the commission of the crime. Affiant further knows that cellular handheld devices can establish communications with area cellular towers for purpose of data transfer in the absence of third party communication efforts.

**Affiant is seeking evidence of communications**.  In my training and experience, suspects communicate with witnesses, victims, or co-conspirators via phone calls, text messages emails, and social network posts.  These communications often contain direct and indirect statements about crimes.  Furthermore, Affiant knows that communications rarely explicitly mention an intent to commit a crime.  Instead, they often allude to such an intent: "gunna go hustle" for instance may be a declaration of an intent to commit a theft crime, but without context it is meaningless.  In Affiant's training and experience, individuals often use digital devices and cellular devices to post messages to others on social networking applications.  In my training and experience, it is possible for cellular phone users to use a variety of messaging platforms including SMS, MMS, iChat, WhatsApp, call logs, and others. Therefore, Affiant seeks to search all the communications evidence on the device to understand not only what was said, but what was intended and to whom it was said.  Affiant is seeking this information since SUBJECT CELLULAR TELEPHONE was found to be at offense location.  Therefore, Affiant is seeking all the above evidence to establish communications between SUBJECT CELLULAR TELEPHONE and any witnesses and the victim related to the crime of Murder, as referenced by the Suspect in his statement to law enforcement.

**Affiant is seeking specific evidence related to this case.**  In addition to the previous information, Affiant believes the GPS location, financial information, cookies, bookmarks, web history, search terms and internet search history, photos/videos, communications on digital devices and cellular devices may contain relevant evidence such as the GPS location of the phone and/or suspect at or around the time of Murder, map directions, search and internet history that document where the suspect was before, during, and after the time of the Murder. Affiant is seeking specific evidence of phone calls, emails, text messages, and other communications that are evidence of the crime of Murder, including but not limited to evidence related to any internet search history. Therefore, by this warrant Affiant is seeking permission to search all the metadata, file data, setting data, photographic and video data, GPS location, financial information, cookies, bookmarks, web history, search terms and internet search history, photos/videos, communications on digital devices, and communication data on any digital device to seize any data that relates to the offenses of Murder.

**Affiant is seeking evidence of association**.  Affiant knows that establishing the association of suspects, witnesses, and victims is important in proving motive or a relationship between people.  In Affiant's training and experience, some of the best ways of linking suspects, witnesses, and victims together is by searching the calendar, contacts, photo gallery, communications, application data, call logs, and social networking connections. In Affiant's training and experience, when two or more individuals are in photographs together it demonstrates a mutual relationship.  In Affiant's training and experience, associates communicate together via phone calls, text messages and emails, therefore Affiant is seeking the communications evidence to demonstrate the associations and relationship between SUBJECT CELLULAR TELEPHONE and the Decedent, and any unknown witnesses or suspects. In Affiant's training and experience, a user's "connections," "buddies," and/or "friends," on social networking sites is indicative of who their associates are.

**Affiant is seeking evidence of location**.  In Affiant's training and experience, cellular devices track historical locations in multiple ways, GPS location, wi-fi transmissions, metadata attached to files, cellular tower connections, and application data. Affiant is aware that SUBJECT CELLULAR TELEPHONE was found to be at the offense location, which can show SUBJECT CELLULAR TELEPHONE respective locations prior to being in contact with the Fort Bend County Sheriff's Office, Suspect T. Hampton's travel routes and timing

leading up to the Suspect T. Hampton arriving at the crime. scene  Therefore, Affiant is seeking permission to search all GPS location, wi-fi transmissions, metadata attached to files, cellular tower connections, and application data.

**Affiant is seeking evidence of ownership, use, and identification**.  Affiant knows that ownership and control of a digital device can be placed at issue through a simple denial, "that is not my phone."  In my training and experience, some of the best ways to establish control are by searching the calendar, contacts, photo gallery, communications, settings, and social networking activity.  The calendar often contains appointments specific to an individual such as birthdays and doctor's appointments.  Contacts often contain friends and associates specific to an individual such as mom, dad, dentist, etc.  A photo gallery often contains selfie photos that clearly depict the owner/holder of the phone.  Communications via text messages, emails, and voicemails often identify the sender/recipient by name, additionally the context of the communications often identify the sender and/or recipient.  Settings often contain user names, addresses, and phone numbers, wi-fi network tables, associated wireless devices (such as known wi-fi networks and Bluetooth devices), associated connected devices (such as for backup and syncing), stored passwords, and user dictionaries that can identify the owner/user of the device.  Therefore, Affiant is seeking all of the above information to establish ownership and control of the device.

Affiant knows, based upon his training and experience and in conversation with other Peace Officers experienced in Digital Investigations that the types of cellular multi-media devices (cell phones) including the device as described in above are capable of sending, receiving and storing digital images, films and signals.  Affiant further knows based upon his training and experience, that information such as emails, text messages, call logs, voice messages, photographs, visual images, contacts, and other data are routinely stored on these types of devices. Affiant also knows from his training and experience that with the advances of modern technology, it is very easy for an individual to store and transport digital images in cellular multi- media devices, including in cellular phones, that are often taken with the individual (on their person) or kept in the individual's vehicle.

Affiant knows from previous investigations, subscribers of cellular telephones typically communicate with other cellular telephone subscribers by the use of written "text messages", in addition to oral conversations. These text messages are typically stored within the cellular telephone handset.  Investigators are usually unable to obtain the contents of these text messages directly from the cellular telephone companies due to extremely short data retention periods of these text messages on the cellular telephone company's network servers. Affiant believes information and records contained within SUBJECT CELLULAR TELEPHONE will aid Affiant in identifying the rightful owner of the SUBJECT CELLULAR TELEPHONE, assist in locating and identifying additional victims of criminal offenses described herein and identify anyone with whom communications were made with SUBJECT CELLULAR TELEPHONE prior to, during the commission of criminal offenses, such as Murder, and shortly after the commission of criminal offenses.

Affiant knows based upon his training and experience, that in order to fully and reliably retrieve the information from such devices a forensic examination of each individual device by a specially trained forensic analyst/examiner utilizing specialized equipment is required.

Affiant knows based upon his training and experience that artifacts located within cellular smart phones often stores the names and or identifiers of people who own and operate the device. This information is used for indicia of ownership to establish the identity of the person(s) in control of the device(s).

Affiant knows based upon his training and experience that these types of devices are often time needed to be taken to an off-site for examination because of the large volume of information stored.  A comprehensive forensic examination of this type of device may take days or even weeks.  Affiant knows based upon his

training and experience that digital material on cellular smart phones have the capability of remaining on devices designed to store them for an indefinite period of time including weeks, months, and years. Affiant also knows based upon his training and experience that sometimes it is possible to retrieve material that has been deleted from such devices through the use of forensic recovery programs.

Affiant knows that in order to completely and accurately retrieve data maintained in cellular smart phone multimedia devices to ensure accuracy and completeness of such data, and to prevent the loss of the data either from accidental or programmed destruction, it is necessary that the digital storage devices be examined/analyzed (and often copied) by a qualified forensic specialist.

Affiant is therefore requesting that a forensic examination of the cellular telephone device as described above be ordered and a search conducted for evidence tending to show that an unknown suspect engaged in criminal activity, specifically one or more of the following offense(s): Murder, and that the forensic analyst/examiner specifically search for items listed above.

If authorized to seize and search the above-described items/devices, the forensic analyst/examiner will conduct the search within approved forensic guidelines that will safeguard the integrity of the original data on each device.

WHEREFORE, PREMISES CONSIDERED, Affiant respectfully requests that a warrant issue authorizing Affiant or any other Peace Officer of Fort Bend County, Texas, to search One (1) red Apple iPhone cell phone, Model: XR. This cellular telephone is also referred to in this Affidavit as SUBJECT CELLULAR TELEPHONE and includes all electronic data files contained within. The SUBJECT CELLULAR TELEPHONE is currently located at or under the control of the Fort Bend County Sheriff's Office located at 1410 Richmond Parkway, Richmond, Fort Bend County, Texas; and to seize any records, files, instruments or instrumentalities, and evidence tending to show suspect participation in the offense of Murder.

Affiant further seeks permission from the court to take and/or store SUBJECT CELLULAR TELEPHONE, to any location within or outside of Fort Bend County, Texas, including taking the SUBJECT CELLULAR TELEPHONE to an appropriate setting to be properly analyzed by a qualified person.

_____ #169
DETECTIVE CHRISTOPHER ARIAS, AFFIANT

SWORN AND SUBSCRIBED TO BEFORE ME on this the __4__ day of ~~February,~~ march 2021.

**FILED**

APR 2 8 2022

AT_____3:00___P.M.

_____
CLERK DISTRICT COURT, FORT BEND CO., TX

_____
JUDGE PRESIDING
400ᵗʰ DISTRICT COURT
FORT BEND COUNTY, TEXAS

Tameika Carter
_____
PRINTED NAME OF JUDGE

Z1-400-015

## SEARCH WARRANT RETURN AND INVENTORY

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| **COUNTY OF FORT BEND** | § |
| **268TH JUDICIAL DISTRICT** | § |

The undersigned Affiant, being a Peace Officer under the laws of the State of Texas, and being duly sworn, on oath certified that the foregoing Warrant came to hand on the day it was issued and that it was executed on the 4th ~~2nd~~ day of ~~August~~ March 2021, by making the search directed therein and by seizing during such search the following described property, retained by such Peace Officer, under the laws of the State of Texas, and kept, stored and held as hereinafter set out:

Data

_____
A3029
DETECTIVE CHRISTOPHER ARIAS, AFFIANT

SWORN AND SUBSCRIBED TO BEFORE ME on this the 2nd day of _August_____, 2021.

_____
NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

JOANNE K. SIEBRECHT
Notary Public, State of Texas
Comm. Expires 05-19-2024
Notary ID 132485746