United States District Court
Southern District of Texas
**ENTERED**
June 30, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUSTIN PULLIAM, § § Plaintiff, § § v. § § COUNTY OF FORT BEND, *et al*, § § Defendants. § | Civil Action No. H-22-4210 |

## ORDER

Pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim on Which Relief Can be Granted Pursuant to Rule 12(b)(6), F.R.C.P. (Document No. 39). Having considered the motion, submission, and applicable law, the Court finds the motion should be granted in part and denied in part.

## I. BACKGROUND

This is a civil rights case. Plaintiff Justin Pulliam ("Pulliam") is an independent journalist who films activities of public interest, including police interactions with civilians. Pulliam has consistently filmed and reported on official activities for nearly three years and was known by Fort Bend County officials. This case arises out of two incidents that occurred while Pulliam was filming or attempting to film Fort Bend County police officers. On July 12, 2021, Pulliam was filming Fort Bend County Sherriff's Office ("FBCSO") activities at Jones Creek

Ranch Park (the "Park"). FBCSO Deputies eventually closed the Park, and members of the press, including Pulliam, were directed toward a media area near the entrance of the Park. At the media area, Defendant Sherriff Eric Fagan ("Fagan") began to address the media (the "Press Conference"). Before the Press Conference, Fagan allegedly gestured to Defendant Officer Robert Hartfield ("Hartfield") to remove Pulliam from the Press Conference. With the assistance of Defendant Constable Johnathan Garcia ("Garcia"), Pulliam was escorted to another area of the Park's parking lot before the Press Conference began. Pulliam was forced to stand several meters away from the Press Conference, which resulted in him being unable to hear or participate in the Press Conference.

On December 21, 2021, Pulliam was attempting to film police officers in Fort Bend County while they were interacting with a member of the public. While filming along with other bystanders, he was arrested (the "Arrest") by Defendant Officer Taylor Rollins ("Rollins"), assisted by Defendant Officer Ricky Rodriguez ("Rodriguez"). Before the Arrest, Rollins ordered Pulliam to move away from the incident. No other bystander present was ordered to move away from the scene or arrested. After the Arrest, multiple items including cameras and memory cards were

seized[1] and later searched after a warrant (the "Warrant") was issued based on the affidavit of another officer who is not a party to this case.

On December 5, 2022, Pulliam brought this action against Defendants Fort Bend County ("Fort Bend County"), Fagan, Hartfield, Garcia, Rollins, and Rodriguez (collectively, the "Defendants") asserting claims: (1) for freedom of speech violation under 42 U.S.C. § 1983 for the Press Conference incident against Fort Bend County, Fagan, Hartfield, and Garcia; (2) for freedom of speech violations under 42 U.S.C. § 1983 for the Arrest against Fort Bend County, Fagan, Rollins, and Rodriguez; (3) for retaliation under 42 U.S.C. § 1983 against Fort Bend County, Fagan, Rollins, and Rodriguez arising from the Arrest; (4) for equal protection under 42 U.S.C. § 1983 against Fort Bend County, Fagan, Hartfield, and Garcia arising from the Press Conference; and (5) unlawful search under 42 U.S.C. § 1983 against Fort Bend County. The Defendants independently filed motions to dismiss the original complaint. On February 13, 2023, Pulliam amended his complaint. Also on February 13, 2023, the parties filed an unopposed motion to reset deadlines and allow the Defendants to file one motion to dismiss the amended complaint. On

---

[1] Multiple items were confiscated including several iPhones, cameras, batteries, and other related camera equipment. Some of the items have since been returned to Pulliam. *See First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief*, Document No 33 at 12.

3

March 10, 2023, the Defendants filed this motion to dismiss for failure to state a claim.

## II. STANDARD OF REVIEW

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than . . . 'labels and conclusions.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breeches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point

of minimum expenditure of time and money by the parties and the court.' " *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

## III. LAW & ANALYSIS

The Defendants move to dismiss all of Pulliam's claims, contending he fails to state a claim upon which relief may be granted. Specifically, the Defendants contend: (1) Pulliam's Section 1983 claims fail as a matter of law; (2) the Defendants are immune under *Monell* and qualified immunity; and (3) Pulliam's search warrant claim must fail because the Warrant was properly issued in compliance with current precedent and the applicable laws. Pulliam contends the amended complaint adequately pleads his exclusion from the Press Conference and the Arrest were conducted per Fort Bend County policy, and that Fagan, Hartfield, Garcia, Rollins, and Rodriguez (the "Individual Defendants") violated clearly established constitutional protections. Pulliam, however, concedes his claim relating to the Warrant fails given the current precedent.[2]

---

[2] The Defendants also contend the search warrant is valid because there is no constitutional requirement to have a warrant be based solely on the verifying officer's personal knowledge. Pulliam concedes that based on controlling Supreme Court precedent, his search warrant claim fails. The Supreme Court has held that the totality-of-the-circumstances analysis is proper to determine probable cause under the Fourth Amendment. *Illinois v. Gates*, 462 U.S. 213, 216 (1983). Further, court precedent establishes that an affidavit that uses second-hand observations is not deemed insufficient on its face. *See Jones v. United States*, 362 U.S. 257 (1960), overruled on other grounds by *United States v. Salvucci*, 448 U.S. 83 (1980). Accordingly, the Court finds Pulliam fails to state a claim that relief may be granted as it relates his search warrant claim. Thus, the Court finds Pulliam's cause of action related to the search warrant claim should be

5

*A.     Section 1983 Claims*

The Defendants contend: (1) Pulliam fails to state a claim for which relief can be sought for either incident; but even if he could, (2) the Individual Defendants are protected by qualified immunity; and (3) Fort Bend County is immune under *Monell*. Pulliam contends: (1) he has adequately pled his Section 1983 claims; and (2) he has adequately pleaded facts that defeat the Defendants' assertions of immunity. The Court first turns to the claims against the individual defendants before addressing the claims against Fort Bend County.

*1.     Individual Defendants*

The Individual Defendants contend: (1) Pulliam fails to state a claim for which claim may be sought as to both incidents: and (2) qualified immunity applies to each of the Individual Defendants.[3] Pulliam contends he has adequately pled the misconduct on the part of the Individual Defendants violated his clearly established constitutional rights.

When government officials are sued for a constitutional violation under Section 1983, they may assert the affirmative defense of qualified immunity. *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 612 (5th Cir. 2004). Qualified immunity

---

dismissed. Therefore, the Court grants the Defendants' motion to dismiss as it relates to the search warrant claim.

[3] *Defendants' Motion to Dismiss for Failure to State a Claim on which Relief Can Be Granted Pursuant to Rule 12(b)(6), F.R.C.P.*, Document No. 39 at 4.

is "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Once qualified immunity is asserted, therefore, the burden shifts to the plaintiff to demonstrate the defense does not apply. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). This burden requires the plaintiff to allege sufficient facts showing that: (1) the defendants violated a clearly established constitutional right and (2) the Defendants' actions were objectively unreasonable under the circumstances. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004).

"Qualified immunity protects government officials performing discretionary functions from [civil] liability 'unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (quoting *Gibson v. Rich*, 44 F.3d 274, 276 (5th Cir. 1995)). The defense of qualified immunity provides ample room for mistaken judgments on the government actors' part and protects "all but the plainly incompetent or those who knowingly violate the law." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). As to supervisor liability, a supervisor may only be liable when he "affirmatively participates in the acts that cause the constitutional deprivation, or [he] implements unconstitutional policies that causally resulted in the constitutional injury." *Pena v. City of Rio Grande City*, 879 F.3d 613,

620 (5th Cir. 2018). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of other's constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citation omitted, alterations and emphasis in original).

The Fourteenth Amendment states: "No State shall . . . deprive any person of life, liberty, or property without due process of law; nor deny any person within in its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In order to adequately plead an equal protection, claim under the Fourteenth Amendment, a plaintiff must "allege . . . that he received treatment different from that received by similarly situated individuals and that unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).

To prove a First Amendment violation, one must show: (1) they were engaged in constitutionally protected activity; (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment

8

right to record the police does exist, subject only to reasonable time, place, and manner restrictions. *Turner v. Driver*, 848 F.3d 678, 683 (5th Cir. 2017).

### a. Press Conference

The Individual Defendants contend Pulliam's claims related to the Press Conference fail because: (1) Pulliam cannot establish a constitutional right to stand anywhere he wanted; (2) Pulliam failed to complain he could not hear or participate in the Press Conference; and (3) an alleged altercation between Pulliam and a third party provided a legitimate reason to relocate Pulliam from the Press Conference.[4] Pulliam contends he has adequately pled his rights under the First and Fourteenth Amendments were violated when he was treated differently from other media members at the Press Conference and excluded from participating.

While asserting their above contentions, the Defendants offer no further case law or facts to support their contention that Pulliam's lack of complaint at the time or the occurrence of an alleged altercation defeats Pulliam's complaint.[5] In his response, Pulliam contends the basis of his claim is not that he has the right "to stand anywhere he wants," but that he was discriminated against and intentionally

---

[4] *Defendants' Motion to Dismiss for Failure to State a Claim on which Relief Can Be Granted Pursuant to Rule 12(b)(6), F.R.C.P.*, Document No. 39 at 5–6.

[5] The Court notes that while the Defendants cite an alleged altercation as a possible reason for the officers' actions, they give no facts detailing what actually occurred or what impact it had on their actions. *See Defendants' Motion to Dismiss for Failure to State a Claim on which Relief Can Be Granted Pursuant to Rule 12(b)(6), F.R.C.P.*, Document No. 39 at 5–6.

9

excluded from the Press Conference when Hartfield and Garcia removed him at Fagan's alleged direction.[6] Pulliam was ordered to stand several meters away and alleges this order interfered with his ability to participate and gather information like the other media members at the Press Conference.[7] Although Pulliam concedes he was told he could keep filming at the location he was moved to, Pulliam alleges he could not hear the Press Conference or otherwise meaningfully participate and, thus, was excluded from the Press Conference. Further, Hartfield and Garcia allegedly made statements acknowledging they knew Pulliam, were "familiar with his work," and yet deemed him not to be a member of the media.[8] Accordingly, Pulliam's complaint adequately alleges Garcia and Hartfield were deliberately interfering with Pulliam's clearly established constitutional rights under the First and Fourteenth Amendments when they removed him from the Press Conference and treated him differently than other members of the press.

---

[6] *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss*, Document No 40 at 12–13.

[7] *First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief*, Document No 33 at 12.

[8] *First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief*, Document No 33 at 12.

As to Fagan, Pulliam alleges in the complaint that Fagan gestured towards him as a signal to the officers to remove him from the Press Conference.[9] Further, the complaint alleges, during Pulliam's removal, Hartfield said, "Mr. Pulliam, uh, you are not, uh, media, so, at the Sheriff's request, could you step back this way with us please."[10] Additionally, the statements made by Garcia and Hartfield establish Fagan was aware of Pulliam and was directly involved in the alleged violations of Pulliam's constitutional rights.[11] Accordingly, Pulliam's complaint adequately alleges Garcia and Hartfield were acting under Fagan's supervision and direction when they removed Pulliam from the Press Conference and treated him differently than other members of the press. Therefore, the Court finds Pulliam has adequately pleaded facts both sufficient to demonstrate that Fagan, Hartfield, and Garcia cannot avail themselves of qualified immunity at this time. Accordingly, the motion to dismiss regarding failure to state a claim under Section 1983 arising from the

---

[9] The Court notes there seems to have also been direct interaction between Fagan and Pulliam before the Press Conference began. *See First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief*, Document No 33 at 10–11.

[10] *First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief*, Document No 33 at 12.

[11] The Court notes that Pulliam also alleges Fagan had a direct confrontation with him in the Park before the media was moved to the area where the Press Conference occurred. Pulliam alleges Fagan "crowded" him and interfered with his (and only his) ability to film. *See First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief*, Document No 33 at 10.

11

treatment of Pulliam at the Press Conference is denied. The Court now turns to the claims arising from the Arrest.

    *b. The Arrest*

The Individual Defendants contend that because a grand jury subsequently indicted Pulliam[12], his claims related to the Arrest should be dismissed. Pulliam contends: (1) that his first amendment rights were violated when he was arrested for lawfully filming police officers; and (2) the Individual Defendants retaliated against him for his past journalistic activities through the Arrest.

The Arrest occurred while Pulliam was filming a police interaction with a civilian allegedly experiencing a mental health crisis.[13] The amended complaint asserts Pulliam was not behaving in a way that posed a risk to either officers or other citizens or otherwise gave probable cause for an arrest. Pulliam alleges multiple bystanders were in a similar position but he was the only one arrested for allegedly interfering with the police activity, even though he was not interfering with or posing

---

[12] On, May 16, 2022, a Fort Bend Grand Jury returned an indictment for misdemeanor interfering with a police officer. *First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief*, Document No 33 at 25.

[13] *First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief*, Document No 33 at 14–20.

a threat to the officers.[14] Further, Pulliam alleges at the time Rollins arrested him, he was fifteen or twenty feet away from Rollins and over 170 feet from the house where other police officers were making contact with a member of the public.[15] The Individual Defendants assert no case law to support their proposition that an indictment precludes a claim for first amendment infringement. Indeed, based on the facts alleged in the complaint, it appears Pulliam was singled out and arrested for exercising his rights under the First Amendment. Therefore, the Court finds Pulliam's complaint adequately alleges that Rollins and Rodriguez infringed his clearly established constitutional rights through the Arrest.

As to Fagan, Pulliam alleges in his complaint that prior to the Arrest, Rodriguez informed his colleagues by police radio that Pulliam had arrived and referred to him as a "local journalist."[16] Pulliam further alleges an unidentified officer at the jail after the Arrest stated, "[we] should teach [Pulliam] for [messing] with us."[17] The complaint further alleges Fagan personally addressed Pulliam while

---

[14] *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss*, Document No 40 at 12–13.

[15] *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss*, Document No 40 at 12–13.

[16] *First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief*, Document No 33 at 15.

[17] *First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief*, Document No 33 at 20.

at the jail and said something to the effect of "fine we will do this the regular way"—allegedly in response to the Pulliam's refusal to answer his questions.[18] These statements contradict the assertion there is no evidence that Fagan or the other Defendants did not consider him to be a journalist or that they did not even know of him. Pulliam's complaint sufficiently pleads facts regarding the circumstances of the Arrest as retaliation for his prior interactions with FBCSO. Further, these statements, when taken as true as required at this stage, also establish that Fagan was personally directing the actions taken against Pulliam, thus infringing on clearly established constitutional rights under the First and Fourteenth Amendments. Therefore, the Court finds Pulliam has adequately pled facts to support his claim regarding the Arrest. Thus, the Court finds it would be premature to allow Fagan, Rollins, and Rodriguez to attempt to avail themselves of qualified immunity at this time. Accordingly, the motion to dismiss regarding failure to state a claim under Section 1983 arising from the Arrest is denied. The Court now turns to the claims against Fort Bend County.

---

[18] *First Amended Complaint for Declaratory, Injunctive, and Retrospective Relief,* Document No 33 at 21.

## 2. *Fort Bend County*

Fort Bend County contends Pulliam has not sufficiently pleaded facts showing municipal liability under *Monell* for violation of Section 1983. Pulliam contends he has adequately pleaded facts to establish a policy, namely the alleged approval by Fagan to remove, interfere with, and retaliate against Pulliam for his independent journalism activities.[19] Having considered the motion, submission, and applicable law, the Court determines the Defendants' motion as to Pulliam's Section 1983 claims against Fort Bend County should be denied. Accordingly, the motion to dismiss as to the claims against Fort Bend County is denied.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Motion to Dismiss for Failure to State a Claim on Which Relief Can be Granted Pursuant to Rule 12(b)(6), F.R.C.P. (Document No. 39) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Pulliam's unlawful search claim and denied as to the remaining claims.

---

[19] The Court notes while the Defendants raised the *Monell* doctrine, the motion was brief and did not offer much analysis on why the claims should fail. *See*, *Defendants' Motion to Dismiss for Failure to State a Claim on which Relief Can Be Granted Pursuant to Rule 12(b)(6), F.R.C.P.*, Document No. 39 at 2–4.

SIGNED at Houston, Texas, on this __29__ day of June, 2023.

*/s/ David Hittner*
DAVID HITTNER
United States District Judge