## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

JUSTIN PULLIAM,

     *Plaintiff,*

v.

COUNTY OF FORT BEND, TEXAS; SHERIFF ERIC FAGAN, in his individual capacity; OFFICER ROBERT HARTFIELD, in his individual capacity; OFFICER JONATHAN GARCIA, in his individual capacity; OFFICER TAYLOR ROLLINS, in his individual capacity; and OFFICER RICKY RODRIGUEZ, in his individual capacity,

     *Defendants*.

Civil Action No. 4:22-cv-4210

## JOINT PRETRIAL ORDER

### Appearance of Counsel

Plaintiff, Justin Pulliam, is represented by:

Christen Mason Hebert, Attorney-in-Charge
Texas Bar No. 24099898
Federal ID No. 3844981
chebert@ij.org

Jeffrey Rowes*, of counsel
Texas Bar No. 24104956
jrowes@ij.org

Michael Peña*, of counsel
Texas Bar No. 24131580
mpena@ij.org

INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936

*Admitted *pro hac vice*

Defendants, County of Fort Bend, Texas; Sheriff Eric Fagan, in his individual capacity; and Officer Taylor Rollins, in his individual capacity, are represented by:[1]

Kevin Hedges, Attorney-in-Charge
Texas Bar No. 09370100
Federal ID No. 9939
Rolf F. Krueger (Additional Counsel)
Texas Bar No. 24080990
Federal ID No. 3041756
401 Jackson St., 3rd Floor
Richmond, TX 77469
(281) 341-4555
(281) 341-4557 (Fax)
kevin.hedges@fortbendcountytx.gov
rolf.krueger@fortbendcountytx.gov

## Statement of the Case

### I.    Overview

This is a First Amendment case involving two incidents between Plaintiff Pulliam and Defendant members of the Fort Bend County Sheriff's Office (FBCSO): (1) Pulliam's exclusion from a press conference; and (2) events at a welfare check for a mentally ill man that resulted in Pulliam's arrest.

---

[1] All claims against Defendants Jonathan Garcia and Ricky Rodriguez, officers sued in their individual capacities, were voluntarily dismissed. ECF No. 56. Defendant Robert Hartfield was dismissed in this Court's summary-judgment ruling, ECF No. 81, adopting Judge Edison's Memorandum and Recommendation, ECF No. 77.

Pulliam is an independent journalist who covers local news in the Fort Bend County area and publishes his reporting on social-media platforms like YouTube. As part of his reporting, Pulliam films Fort Bend County Sheriff's officers in action.

Incident #1: Press Conference. On July 12, 2021, Defendant Sheriff Fagan held a press conference outdoors in Jones Creek Ranch Park in Fort Bend County to address the local media about the remains of a missing woman who had been found in the creek. Pulliam set up his camera alongside other members of the media. Sheriff Fagan directed two officers, one of whom was (former Defendant) Hartfield, to escort Pulliam approximately 80 feet back from other media under threat of arrest. Pulliam was allowed to film from that location.

Incident #2: Welfare Check. On December 21, 2021, Pulliam arrived at a rural property where the Kraft family lives. Pulliam was filming the activities of Fort Bend County deputies on the property when Defendant Sergeant Taylor Rolins arrived. Rollins placed Pulliam under arrest for violating § 38.15 of the Texas Penal Code. On May 16, 2022, Pulliam was indicted by a grand jury for violating § 38.15 of the Texas Penal Code on December 21, 2021. The case then proceeded to trial which resulted in a mistrial because of a hung jury with five jurors voting to acquit and one voting to convict. Over a year later, the Fort Bend County District Attorney's Office dismissed the case.

## II.    Pulliam's partial summary judgment on liability for the press conference incident

On September 24, 2024, the Court "**APPROVED AND ADOPTED**" Magistrate Judge Edison's Memorandum and Recommendation "in its entirety as the holding of the

Court." Doc. 81 at 2. Judge Edison's Memorandum resolved liability on the press conference incident in Pulliam's favor, granting summary judgment against Defendant Fort Bend County and Defendant Sheriff Fagan in his individual capacity on Pulliam's free speech and equal protection claims. *Id.*; *see also* M&R, Doc. 77 at 8–20. Defendant Robert Hartfield was dismissed from the lawsuit on qualified immunity. Doc. 81 at 2.

## III.   Issues for trial

**Pulliam contends:**

Trial will answer the six key questions remaining in this case. First, did the County have an official policy, practice, or custom of excluding and intimidating Pulliam based on his status as a social-media journalist and his critical coverage of law enforcement? Second, did Rollins violate Pulliam's right to record the police when Rollins ordered Pulliam to go across the street while Pulliam was filming the welfare check? Third, did Rollins violate Pulliam's First Amendment right to be free from retaliatory arrest when he arrested Pulliam for interference with public duties? Fourth, if Rollins violated any of Pulliam's constitutional rights, is he entitled to qualified immunity? Fifth what amount damages for constitutional rights violations at the press-conference incident and the welfare-check incident (if Pulliam establishes liability for the violations at the welfare-check incident) would compensate Pulliam for his injuries? Finally, what injunctive relief, if any, should be issued to protect Pulliam and others like him from constitutional violations in the future?

**Defendants contend:**

There are essentially two issues that will be called to trial on July 8, 2025.  First, the amount of damages, if any, Sheriff Fagan and Fort Bend County owe Plaintiff for First

Amendment and equal protection violations arising from the July 12, 2021 press conference. Second, whether Rollins retaliated against Pulliam for recording police activity on December 21, 2021 by (i) ordering him to relocate across the street and (ii) arresting him after he failed to comply with this order. If proven, the question is then becomes was an official Fort Bend County policy, practice, or custom the moving force that caused Rollins' purported retaliation. If Pulliam can prove these allegations, he then must prove the amount of damages, if any, Defendants Rollins and Fort Bend County owe Pulliam as a result.

## **Jurisdiction**

This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and civil-rights jurisdiction under 28 U.S.C. § 1343.

## **Motions**

Defendants will file a motion to exclude all undisclosed evidence and damage computations. Plaintiff reserves the right to file a cross-motion to exclude all of Defendants' evidence that was not identified by category and location under Rule 26 initial disclosures. If the Court rules against Defendants' motion to exclude, Pulliam will withdraw his cross-motion so the case may be tried on all the relevant evidence.

## **Contentions of the Parties**

**Pulliam contends:**

Pulliam contends that Defendant Sergeant Rollins and Defendant Fort Bend County are liable for violations of his First Amendment rights at the welfare check. These violations are in addition to the violations of Pulliam's First Amendment and equal-

protection rights related to the press conference on which this Court already granted Pulliam summary judgment.

At trial, Pulliam intends to prove that FBCSO, and therefore the County, had an official policy, practice, or custom of excluding and intimidating Pulliam based on his status as a social-media journalist and his critical coverage of law enforcement. That policy was the moving force of the violations of Pulliam's constitutional rights at the welfare check.

The basic facts are a startling display of authoritarianism and hostility to free speech. Upon arrival at the Kraft property, Rollins immediately ordered Pulliam, who was filming other FBCSO officers, to leave. Rollins initiated the contact (and conflict) with Pulliam, who was silently filming. Rollins did not take any time to assess the scene or speak to his fellow officers before kicking Pulliam out. And Rollins steadily escalated the conflict he himself created, resulting in him arresting Pulliam within 60 seconds of Rollins' arrival.

That this conflict and arrest was driven by hostility to Pulliam and his speech is evident in the fact that there was no legitimate safety reason for kicking Pulliam out. Although Rollins ordered two other civilians to leave, he quickly rescinded his order for those other civilians after they explained that they were mental health workers and not with Pulliam. Rollins did not restrict their movements, spoke to them with his back to the Kraft residence, and did not place any restrictions on the movement of Kraft's mother. Rollins nevertheless maintained the order to leave the scene for Pulliam and only Pulliam. This proves that "safety" was simply Rollins' pretext for getting rid of Pulliam, just as the Sheriff kicked Pulliam out of the press conference five months earlier.

Rollins arrested Pulliam for questioning why "safety" required only Pulliam to leave. Instead of answering Pulliam's reasonable question or simply changing his mind, Rollins arrested Pulliam. Again, before Rollins arrived, Pulliam was peacefully and silently filming with the permission of the property owner and no objection from Deputies Rodriguez and Lacey. Rollins created and escalated the conflict. He never would have arrested a journalist from the Houston Chronicle or the local NBC station simply for asking Rollins to change his mind the way he changed his mind about the two other civilians. As the trial will show, Rollins' message to Pulliam was the official County policy towards Pulliam: *you don't matter, you don't count, you're a nobody, we don't like you, go away or go to jail.*

Rollins and the County violated Pulliam's First Amendment rights at the Kraft property in two distinct ways. First, at the time of the welfare check, the right to record the police was a clearly established right, and a reasonable officer would have known that excluding a person recording the police without a legitimate content-neutral reason to do so violated that right. Second, Rollins and the County violated Pulliam's First Amendment rights to be free from retaliatory arrest and his right to record from police by arresting Pulliam.

The County is liable under the *Monell* doctrine because its official policy of intimidating and excluding Pulliam (as happened at the Sheriff's direction at the press conference) was the driving force behind Rollins' actions. Rollins is also individually liable and not entitled to qualified immunity because it was and remains clearly established that

the First Amendment prohibits government officials from retaliating against individuals engaged in protected speech.

For the violation of his constitutional rights at the press-conference incident and the welfare-check incident, Pulliam seeks compensatory damages for his injuries and declaratory and injunctive relief.

Pulliam seeks punitive damages from Sheriff Fagan for kicking him out of the press conference.

**Defendants contend:**

In connection with the **July 12, 2021** press conference:

1.     Pulliam failed to produce any documents or records in connection with his claim for compensatory damages during discovery and should therefore be precluded from presenting any of these documents or records now at trial.

2.     Pulliam failed to provide a computation of, and disclose or make available any records supporting, his claim for $98,227.79 in "lost profits" precluding recovery of these purported damages.

3.     Pulliam will be unable to prove entitlement to compensatory damages.

4.     Pulliam failed to disclose that he was seeking punitive damages from Sheriff Fagan in his initial disclosures, precluding recovery.

5.     Pulliam will be unable to prove entitlement to punitive damages given that there will be no competent or credible evidence presented that Sheriff Fagan acted with evil motive or intent or callous indifference to the constitutional rights of others.

8

6.    The only monetary damages Pulliam will be able to prove entitlement to is nominal damages in the amount of $1.00.[2]

7.    Pulliam will be unable to prove entitlement to injunctive relief given that no competent or credible evidence exists establishing that Pulliam will suffer from a continuing injury or a threatened future injury.

8.    Pulliam will be unable to prove entitlement to declaratory relief given that his requested declaration seeks nothing more than a resolution of issues already stated in the lawsuit.

In connection with the **December 21, 2021** incident:

1.    Pulliam's right to record police activity is subject to reasonable time, place, and manner restrictions.

2.    The Fifth Circuit recognizes that a reasonable time, place, and manner restriction on a citizen's right to record police activity includes an order to stand a safe distance away from a crime scene a peace officer reasonably perceives is unsafe. *See e.g., Bailey v. Ramos*, 125 F.4th 667, 678 (5th Cir. 2025).

3.    Rollins ordered Pulliam to relocate across the street for safety reasons only.

4.    Pulliam will be unable to produce any competent or credible evidence that Rollins' order to relocate across the street was for any reason other than safety concerns.

---

[2] Pl.'s 1st Am. Compl. (ECF No. 33 filed on Feb. 13, 2023) ¶ B ("For an award of $1 in nominal damages based on Defendants' violations of [Pulliam's] constitutional rights.").

5.    Rollins order to Pulliam to relocate across the street for safety reasons was reasonable, lawful, and justified given the circumstances and what Rollins reasonably believed at that time.

6.    In fact, Pulliam acknowledges and admits when a peace officer reasonably believes a scene is ***unsafe***, but Pulliam disagrees and believes it is ***safe*** and he should be allowed to record police activity, the peace officer's decision controls — not Pulliam's.

7.    Given that Rollins order to Pulliam to relocate across the street for safety reasons was reasonable, lawful, and justified, Rollins is entitled to qualified immunity in connection with Pulliam's First Amendment claim.

8.    Moreover, Rollins is also entitled to qualified immunity given that a reasonable person in his position would have believed that his conduct conformed to the constitutional standard in light of information available to him and the clearly established law.

9.    A plaintiff pressing a retaliatory arrest claim based on speech protected by the First Amendment generally must prove the absence of probable cause for the arrest.

10.    Pulliam, admittedly, "did not comply" with Rollins' lawful and justified order to relocate across the street.[3]

11.    Pulliam "did not comply" with Rollins' lawful and justified order because he believed, at the time, he was being excluded simply for recording police activity and not

---

[3] *See id*. ¶ 1 ("In another act of retaliation, in December 2021, Fort Bend County Sheriff's [deputy] Taylor Rollins arrested [Pulliam] for filing a heated encounter with a citizen because [Pulliam] ***did not comply*** with an unconstitutional order to relocate across the street where filming was impossible.")

for safety reasons.  Pulliam's belief was based on the fact that two mental health professionals were allowed to remain on the scene and he was not.  Pulliam, however, was mistaken and unaware that the two individuals allowed to remain on the scene were mental health professional who could assist with de-escalation efforts and not simply ordinary citizens.

12.    Texas and federal courts have long held that a failure to comply with a peace officer's lawful order at a crime scene establishes probable cause for an arrest under Section 38.15 of the Texas Penal Code.  There is no clearly established authority which holds the opposite.

13.    Probable cause existed to arrest Pulliam for violating Section 38.15 of the Texas Penal Code on December 21, 2021 entitling Rollins to qualified immunity.  Indeed, a reasonable person in his position would have believed that his conduct conformed to the constitutional standard in light of information available to him and the clearly established law.

14.    Pulliam will be unable to produce any competent and credible evidence that establishes entitlement to the *Nieves* exception, or any other exception.

15.    Pulliam will be unable to produce any competent and credible evidence that his arrest was in retaliation for recording police activity or any other protected speech.

16.    Under the Independent Intermediary Doctrine, if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party.

17.     Rollins is shielded from liability pursuant the Independent Intermediary Doctrine given that Pulliam was indicted for violations of Section 38.15 by a duly empaneled grand jury.

18.     Given that Rollins is entitled to qualified immunity on Pulliam's claims, Fort Bend County is not liable under *Monell*.

19.     Pulliam will be unable to present any competent or credible evidence that his arrest was made pursuant to an official policy, practice, or custom, adopted, approved, or knowingly acquiesced by a Fort Bend County policymaker — much less an unconstitutional policy, practice, or custom, adopted, approved, or knowingly acquiesced by a Fort Bend County policymaker or one adopted by a Fort Bend County policymaker with deliberate indifference to the known or obvious fact that a specific constitutional violation would follow.

20.     In the event Pulliam can show entitlement to damages, Pulliam failed to produce any documents or records in connection with his claim for compensatory damages during discovery and should therefore be precluded from presenting any of these documents or records now at trial.

21.     Pulliam failed to provide a computation of, and disclose or make available any records supporting, his claim for (i) $64,885.21 in "lost profits" and (ii) $22,730.91 in "criminal case expenses" precluding recovery of these purported damages.

22.     Pulliam will be unable to prove entitlement to compensatory damages.

23.     Pulliam failed to disclose that he was seeking punitive damages against Rollins, precluding recovery of these damages.

24.     Pulliam will be unable to prove entitlement to punitive damages given that there will be no competent or credible evidence presented that Rollins acted with evil motive or intent or callous indifference to the constitutional rights of others.

25.     If entitlement to damages are proven, the only monetary damages Pulliam will be able to prove entitlement to is nominal damages in the amount of $1.00.[4]

26.     Pulliam will be unable to prove entitlement to injunctive relief given that no competent or credible evidence exists establishing that Pulliam will suffer from a continuing injury or a threatened future injury.

27.     Pulliam will be unable to prove entitlement to declaratory relief given that his requested declaration seeks nothing more than a resolution of issues already stated in the lawsuit.

## **Admissions of Fact**

None. Pulliam directs the Court's attention to Defendant Fort Bend County's Responses and Objections to Plaintiff's First Set of Requests for Admission and Defendant Sheriff Eric Fagan's Responses and Objections to Plaintiff's First Set of Requests for Admission, which will be filed with this Joint Pretrial Order as Attachments A and B.

---

[4] *See id.* ¶ B ("For an award of $1 in nominal damages based on Defendants' violations of [Pulliam's] constitutional rights.").

## **Contested Issues of Fact**

**Pulliam contends**:

1.    When Defendant Sheriff Fagan took office, he did not eliminate his predecessor's policy of treating Pulliam worse than other members of the public or the press.

2.    As of December 2021, FBCSO had a policy, practice, or custom of intimidating and excluding Pulliam based on his status as a social-media journalist and his critical coverage of law enforcement.

3.    On December 21, 2021, when Pulliam arrived at the Kraft property, Deputy Rodriguez radioed that "local journalist Justin Pulliam's on scene" because he wanted to alert his fellow officers that Pulliam was there recording their actions. Rodriguez knew that Pulliam was widely known to FBCSO officers and was aware of efforts by other officers to treat Pulliam worse than other journalists.

4.    When he arrived at the Kraft property, Defendant Sergeant Rollins knew that the red-haired man standing with a camera pointed at the Kraft residence was Pulliam.

5.    At no point before Rollins arrived was Pulliam distracting police officers from their duties or otherwise inhibiting the officers from tasks.

6.    Rollins initiated contact with Pulliam by ordering him across the street.

7.    Rollins ordered Pulliam to go across the street to restrict Pulliam's speech because of the content of Pulliam's reporting criticizing police and Pulliam's identity as the speaker.

8.     Rollins did not perceive any material risk from Edwin Kraft, the subject of the welfare check, that required ordering Pulliam across the street.

9.     Rodriguez did not perceive any material risk from Edwin Kraft that required ordering Pulliam across the street.

10.    Objectively, there was no material risk from Edwin Kraft that required Rollins to order Pulliam and only Pulliam to go across the street.

11.    During the 60 seconds between when Rollins arrived and placed Pulliam in handcuffs, Pulliam was not distracting Rollins from his duties. Had Rollins simply left Pulliam alone, none of this would have happened.

12.    When Pulliam was speaking to Rollins after Rollins allowed the Texana caseworkers to remain on scene, Pulliam was protesting that he had a right to stay and was asking Rollins to explain why it was necessary for Pulliam to go across the street when the two civilian caseworkers were being allowed to stay. Pulliam was not defying Rollins' order any more than the mental health workers were defying Rollins' order when they stopped to talk to him.

13.    Rollins arrested Pulliam because Rollins objected to Pulliam's speech and Pulliam himself, not because of anything Pulliam did or failed to do. Pulliam was walking backward toward the other side of the street and did not reach that destination only because Rollins arrested Pulliam before he could comply with Rollins' order. Had Pulliam been a mainstream media journalist, Rollins never would have treated him that way.

14.    Rollins initially ordered the Texana caseworkers to go across the street because he did not know who they were but allowed them to stay once they explained who

they were. Rollins did not arrest them for explaining why they thought they should be allowed to remain. The fact that Rollins arrested Pulliam while he similarly tried to explain why he thought he should be allowed to stay, cannot be explained by any actual danger presented by Edwin Kraft. It can be explained only by hostility to Pulliam's speech.

15.    Rollins would not have arrested Pulliam but for Pulliam's speech and Pulliam's status as a social-media journalist critical of local law enforcement.

16.    Deputy Rodrigez did not perceive Pulliam's arrest as justified or necessary.

17.    Pulliam was brought to the Fort Bend County jail after his arrest. At the jail, Pulliam was treated worse than other detainees.

18.    Defendant Sheriff Fagan was personally notified of Pulliam's arrest.

19.    Sheriff Fagan, Chief Deputy Provost, and Major Castaneda went to the jail to see and question Pulliam off camera. After Sheriff Fagan's questioning and Pulliam's refusal to respond, Pulliam was booked for the offense of interference with public duties. Sheriff Fagan approved booking Pulliam for interfering with public duties.

20.    Several Fort Bend County Sheriff's officers celebrated Pulliam's arrest on social media.

21.    Sheriff Fagan and several officers in FBCSO leadership reviewed the footage of Pulliam's arrest, but no officer has been disciplined, orally reprimanded, or even counseled for future improvement.

22.    From the County's perspective, nothing concerning Pulliam's arrest should have been handled differently.

23.     Fort Bend County Sheriff's Office assigned a robbery and homicide detective to investigate Pulliam for the class B misdemeanor of interference with public duties—an unusual event—because the Sheriff's Office wanted to retaliate against Pulliam for his speech.

24.     The robbery and homicide detective presented Pulliam's arrest to the prosecutor because he deferred to Rollins' decision to arrest Pulliam.

25.     Pulliam's arrest and his subsequent treatment by the County were the result of the County's policy, practice, or custom of intimidating and excluding Pulliam based on his status as a social-media journalist and his critical coverage of law enforcement.

26.     The factual circumstances surrounding Pulliam's arrest for interference with public duties—a journalist covering a welfare check for a mentally ill man—do not resemble the other arrests for interference with public duties that other Fort Bend County Sherrif's officers have made before and after Pulliam's arrest. Those other arrests do not involve journalists, do not involve speech alone, and always have additional factors beyond speech such as domestic violence or intoxication.

27.     Pulliam suffered injuries from his press conference exclusion, the Kraft scene exclusion, and his arrest. His speech was significantly chilled. As a result of his chilled speech, his revenue from his reporting was less than it otherwise would have been.

28.     Pulliam also suffered reputational harm and mental anguish.

29.     Pulliam's reporting equipment was confiscated following his arrest. FBCSO refused to return that equipment, requiring Pulliam to replace it.

17

30.     Pulliam incurred attorneys' fees in defending himself against the charge for interfering with public duties.

31.     If not ordered otherwise, FBCSO will continue to intimidate and exclude Pulliam to frustrate his reporting.

**Defendants contend:**

In connection with the **July 12, 2021** press conference:

1.     During discovery, Pulliam failed to produce any documents or records in connection with this claim for compensatory damages precluding admission of these documents or records at trial.

2.     During discovery, Pulliam failed to provide a computation of, and failed to produce or make available for inspection documents or other evidentiary material supporting, his claim for $98,227.79 in lost profits precluding recovery of these purported damages.

3.     Pulliam will be unable to prove entitlement to compensatory damages.

4.     During discovery, Pulliam failed to disclose that he was seeking punitive damages from Sheriff Fagan, precluding recovery of these damages.

5.     Sheriff Fagan did not act with evil motive or intent or callous indifference to the constitutional rights of others.

6.     Pulliam will be unable to prove entitlement to punitive damages.

7.     Pulliam will be unable to prove he will suffer from a continuing injury or a threatened future injury.

8.     Pulliam will be unable to prove entitlement to injunctive relief.

9.      Pulliam's requested declaration seeks nothing more than a resolution of issues already stated in the lawsuit.

10.     Pulliam will be unable to prove entitlement to declaratory relief.

In connection with the **December 21, 2021** incident:

1.      Pulliam's right to record police activity is subject to reasonable time, place, and manner restrictions.

2.      A reasonable time, place, and manner restriction on a citizen's right to record police activity includes an order from a peace officer to stand a safe distance away from a crime scene for safety reasons.

3.      Rollins ordered Pulliam to relocate across the street for safety reasons only.

4.      Pulliam will be unable to produce any competent or credible evidence that Rollins' order to relocate across the street was for any reason other than safety concerns.

5.      Rollins order to Pulliam to relocate across the street for safety reasons was reasonable, lawful, and justified given the circumstances and what Rollins reasonably believed at that time.

6.      Pulliam acknowledges and admits when a peace officer reasonably believes a scene is ***unsafe***, but Pulliam disagrees and believes it is ***safe*** and he should be allowed to record police activity, the peace officer's decision controls — not Pulliam's.

7.      Given that Rollins order to Pulliam to relocate across the street for safety reasons was reasonable, lawful, and justified, Rollins is entitled to qualified immunity in connection with Pulliam's First Amendment claim.

19

8.      Moreover, Rollins is also entitled to qualified immunity given that a reasonable person in his position would have believed that his conduct conformed to the constitutional standard in light of information available to him and the clearly established law.

9.      A plaintiff pressing a retaliatory arrest claim based on speech protected by the First Amendment generally must prove the absence of probable cause for the arrest.

10.     Pulliam, admittedly, "did not comply" with Rollins' reasonable, lawful, and justified order to relocate across the street.

11.     Pulliam "did not comply" with Rollins' lawful and justified order because he believed, at the time, he was being excluded simply for recording police activity and not for safety reasons.   Pulliam's belief was based on the fact that two mental health professionals were allowed to remain on the scene and he was not.   Pulliam, however, was mistaken and unaware that the two individuals allowed to remain on the scene were mental health professional who could assist with de-escalation efforts and not simply ordinary citizens.

12.     Probable cause existed to arrest Pulliam for violating Section 38.15 of the Texas Penal Code on December 21, 2021 entitling Rollins to qualified immunity.   Rollins is also entitled to qualified immunity given that a reasonable person in his position would have believed that his conduct conformed to the constitutional standard in light of information available to him and the clearly established law.

13.     Pulliam will be unable to produce any competent and credible evidence that establishes entitlement to the *Nieves* exception, or any other exception.

14.    Pulliam will be unable to produce any competent and credible evidence that his arrest was in retaliation for recording police activity or any other protected speech.

15.    Rollins is shielded from liability pursuant the Independent Intermediary Doctrine given that Pulliam was indicted for violations of Section 38.15 by a duly empaneled grand jury.

16.    Given that Rollins is entitled to qualified immunity on Pulliam's claims, Fort Bend County is not liable under *Monell*.

17.    Pulliam will be unable to present any competent or credible evidence that his arrest was made pursuant to an official policy, practice, or custom, adopted, approved, or knowingly acquiesced by a Fort Bend County policymaker — much less an unconstitutional policy, practice, or custom, adopted, approved, or knowingly acquiesced by a Fort Bend County policymaker or one adopted by a Fort Bend County policymaker with deliberate indifference to the known or obvious fact that a specific constitutional violation would follow.

18.    In the event Pulliam can show entitlement to damages, Pulliam failed to produce any documents or records during discovery in connection with his claim for compensatory damages during discovery precluding admission of these documents and records at trial.

19.    During discovery, Pulliam failed to provide a computation of, and failed to produce or make available for inspection documents or other evidentiary material supporting, his claim for (i) $64,885.21 in lost profits and (ii) $22,730.91 in criminal case expenses, precluding recovery of these purported damages.

20.    Pulliam will be unable to prove entitlement to compensatory damages.

21.    Pulliam failed to disclose that he was seeking punitive damages against Rollins, precluding recovery of these purported damages.

22.    Pulliam will be unable to prove entitlement to punitive damages given that there will be no competent or credible evidence presented that Rollins acted with evil motive or intent or callous indifference to the constitutional rights of others.

23.    If entitlement to damages are proven, the only monetary damages Pulliam will be able to prove entitlement to is nominal damages in the amount of $1.00.[5]

24.    Pulliam will be unable to prove entitlement to injunctive relief given that no competent or credible evidence exists establishing that Pulliam will suffer from a continuing injury or a threatened future injury.

25.    Pulliam will be unable to prove entitlement to declaratory relief given that his requested declaration seeks nothing more than a resolution of issues already stated in the lawsuit.

### Agreed Applicable Propositions of Law

1.    Journalists who create content for social media possess the same First Amendment rights as everyone else. *See Branzburg v. Hayes*, 408 U.S. 665, 704 (1972) (Freedom of the press is "not confined to newspapers and periodicals" and includes "every sort of publication which affords a vehicle of information and opinion."); *Citizens United v. Fed. Elections Comm'n*, 558 U.S. 310, 352 (2010)) (With the advent of the Internet . . . ,

---

[5] *See id.*

the line between the media and others who wish to comment on political and social issues becomes far more blurred."); *see also Packingham v. North Carolina*, 582 U.S. 98, 105, 107 (2017) (noting that "social media users employ these websites to engage in a wide array of protected First Amendment activity" and describing social media as "the modern public square").

2.      "[V]iewpoint discrimination is a clearly established violation of the First Amendment in any forum." *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 350 (5th Cir. 2001).

3.      "First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist[.]" *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017).

4.      "For Pulliam to prevail on his First Amendment retaliation claim against Rollins and Fort Bend County arising out of his December 2021 arrest, he must prove: '(1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against [his] exercise of constitutionally protected conduct.'" ECF No. 77 at 20 (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

## Contested Issues of Law

The parties will each file a pretrial Memorandum of Law that more fully explains their respective view, but, in a nutshell:

**Pulliam contends:**

1.      The right to record the police in public in the performance of their official duties "is not without limitations." *Turner v. Driver*, 848 F.3d 678, 690 (5th Cir. 2017). When doing so for content-neutral reasons such as public safety, police regulation of filming is "subject to reasonable time, place, and manner restrictions." *Id*. "[T]hose restrictions 'must be narrowly tailored to serve a significant governmental interest.'" *Id.* (citation omitted). "Importantly, an individual's exercise of her First Amendment right to film police activity carried out in public . . . necessarily remains unfettered unless and until a reasonable restriction is imposed or in place." *Id.* n.50 (quoting *Gericke v. Begin*, 753 F.3d 1, 8 (1st Cir. 2014)).

2.      "[A]s a general rule, a plaintiff bringing a retaliatory-arrest claim must plead and prove the absence of probable cause for the arrest." *Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024) (quotation marks omitted).. In his *Gonzalez* concurrence, Justice Alito explained the specific analytic steps for a retaliatory-arrest claim. First, "plaintiffs pressing such claims [must] prove the absence of probable cause as a threshold requirement." *Id.* at 664 (Alito, J., concurring). Second, if a plaintiff proves the absence of probable cause, the "*Mt. Healthy* framework"—the "two-step," burden-shifting framework from *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977)—is triggered. "At the first step [of *Mt. Healthy*], the plaintiff must demonstrate that he engaged in protected speech and that his speech was a 'substantial' or 'motivating' factor in the defendant's decision to take action against him." *Gonzalez*, 602 U.S. at 662–63 (Alito, J., concurring) (quoting *Mt. Healthy*, 429 U.S. at 287). "Once the plaintiff makes this showing, the burden shifts to the

defendant at the second step to show that he would have taken the same adverse action even in the absence of the protected speech." *Id.* at 663. "To carry these burdens, parties operating within the *Mt. Healthy* framework may present a wide range of evidence—both objective and subjective." *Id.*

3.    There are two exceptions to the general rule that a plaintiff bringing a retaliatory-arrest claim must plead and prove the absence of probable cause: the *Lozman* exception and the *Nieves* exception.

4.    Under *Lozman v. City of Riviera Beach*, a plaintiff "need not prove the absence of probable cause" if the plaintiff proves that he was arrested "pursuant to an 'official municipal policy' of intimidation." 585 U.S. 87, 99–101 (2018) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Nieves*, 587 U.S. at 398 (discussing *Lozman*). That's because "the existence and enforcement of an official policy motivated by retaliation separates [plaintiff's] claim from the typical retaliatory arrest claim." *Lozman*, 585 U.S. at 100.

5.    Under *Nieves,* "[t]he existence of probable cause does not defeat a plaintiff's claim if he produces 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" *Gonzalez*, 602 U.S. at 655 (quoting *Nieves*, 587 U.S. at 407).

6.    If either the *Lozman* or *Nieves* exception applies, the *Mt. Healthy* framework is triggered. *Lozman*, 585 U.S. at 101; *Nieves*, 587 U.S. at 406–08.

7.    "To prevail" against Fort Bend County, Pulliam "must show (1) an official policy (or custom), (2) that a policy maker can be charged with actual or constructive

knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022) (quotation marks omitted). Pulliam meets that burden.

8.      The elements of the offense of interference with public duties are codified at Texas Penal Code § 38.15. Specifically, a "person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with: a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." *Id.* § 38.15(a)(1). Speech alone does not constitute the offense of interference with public duties. *Id.* at § 38.15(d) ("It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only.").

9.      Defendant Fort Bend County and Defendant Sergeant Rollins are liable for the violation of Pulliam's First Amendment rights when Rollins ordered Pulliam to leave the welfare-check scene and arrested Pulliam in retaliation for speech.

10.      The County had an official policy and custom of intimidating and excluding Pulliam based on his status as a social-media journalist and his critical coverage of law enforcement.

11.      Sheriff Fagan actually knew or constructively knew about FBCSO's policy and custom of intimidating and excluding Pulliam.

12.      The County's official policy and custom of intimidating and excluding Pulliam was the moving force of Rollins' violation of Pulliam's First Amendment rights to film police activities carried out in public and to be free from retaliatory arrest.

13.     Pulliam's reporting was speech that is fully protected by the First Amendment.

14.     Pulliam's speech with Rollins during their encounter, as well as Pulliam's recording of the scene, was speech that is fully protected by the First Amendment.

15.     Rollins' order for Pulliam to go across the street was an unreasonable restriction on Pulliam's right to record police and therefore violated the First Amendment.

16.     The First Amendment right to film police activities carried out in public was clearly established as of December 2021. A reasonable officer would have known that ordering a person filming police to leave the scene without a legitimate reason, safety or otherwise, violated the right to record police. Rollins is therefore not entitled to qualified immunity for his violation of Pulliam's First Amendment right to record the police.

17.     Rollins committed a separate First Amendment violation when he arrested Pulliam when the latter asserted his right not to be kicked out of the welfare-check scene.

18.     Fort Bend County's policy of hostility and intimidation brings Pulliam's arrest into the exception announced in *Lozman*. Pulliam need not prove the absence of probable cause.

19.     Alternatively, Rollins lacked probable cause to arrest Pulliam for interference with public duties, and his purported belief that probable cause existed was not objectively reasonable.

20.     Even if, technically, probable cause existed to arrest Pulliam for interference with public duties, a reasonable officer would typically exercise his or her discretion not to

arrest under these circumstances, thus bringing Pulliam into the exception announced in *Nieves*.

21.    Pulliam proved that the arrest was substantially motivated by his speech, and Defendants Rollins and the County were unable to show that they would have arrested Pulliam without his speech. The arrest therefore violated Pulliam's First Amendment right to be free from retaliatory arrest.

22.    To the extent that the grand jury's indictment plays any role in a retaliatory arrest claim, the grand jury's probable cause determination was tainted. The investigation and prosecution of Pulliam was replete with irregularities, and Defendants failed to meet their burden to show that all material information was presented to the grand jury.

23.    Because Rollins lacked a reasonable belief that probable cause existed to arrest Pulliam for interference with public duties, the arrest also violated Pulliam's clearly established right to record the police.

24.    The First Amendment right to be free from retaliatory arrest was clearly established as of December 2021. A reasonable officer would have known that arresting Pulliam in retaliation for speech violated the clearly established First Amendment to be free from retaliation.

25.    A reasonable officer also would have known that arresting Pulliam without a reasonable belief that probable cause existed violated the clearly established First Amendment right to record police.

26.    Rollins is not entitled to qualified immunity for his violation of Pulliam's First Amendment rights to record the police and to be free from retaliatory arrest.

27.     Pulliam is entitled to permanent injunctive relief because he has shown that (1) "the failure to grant the injunction will result in irreparable injury," (2) that the injury "outweighs any damage that the injunction will cause the opposing party," and (3) "the injunction will not disserve the public interest." *Hill v. Washburne*, 953 F.3d 296, 309 (5th Cir. 2020) (citation omitted).

28.     Pulliam is entitled to compensatory damages because "he proved actual injury caused by the denial of his constitutional rights." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986). Pulliam is entitled to damages compensating him for lost profits; the cost of replacing equipment seized by FBCSO; impairment of his reputation, personal humiliation, and mental anguish; and the attorneys' fees he incurred in the criminal proceeding resulting from his retaliatory arrest.

29.     With respect to evidence of damages and other exhibits, Pulliam satisfied the requirements of Rule 26. Defendants' objection is a baseless attempt to make up for the fact that they did no written discovery and deposed Pulliam without using a single exhibit, including for the discussion on damages. Defendants' problem is that they failed to gather any evidence of their own, not that Pulliam failed to make their case for them. Excluding Pulliam's evidence in light of Defendants' complete lack of diligence would be grossly unjust, enable Defendants to profit from their own failure to do discovery, and create perverse incentives for defendants to do nothing in discovery and then claim prejudice at trial when plaintiffs want to introduce ordinary evidence that any responsible party would have obtained in discovery.

30.     If Pulliam did not satisfy the requirements of Rule 26, that failure was substantially justified under Rule 37.

31.     If Pulliam did not satisfy the requirements of Rule 26 and the failure was not substantially justified, it was harmless under Rule 37.

32.     There is no basis for excluding Pulliam's evidence of damages or any of his other exhibits.

33.     If the Court finds (1) Pulliam failed to satisfy Rule 26, (2) that failure was not substantially justified, and (3) the failure was not harmless, then Defendants' appropriate remedy is whatever is required to cure the prejudice, such as bifurcating damages and liability, affording Defendants an opportunity to examine the evidence they complain not to have seen, and then resolving the damages claims on the evidence.

34.     If the Court excludes any of Pulliam's evidence on the basis of a Rule 26 initial disclosures violation, then Pulliam asserts his own Rule 26(a)(1) objection to Defendants' evidence. Rule 26(a)(1)(A)(ii) required Defendants to "describe by category and location . . . all documents . . . that the disclosing party has in its possession, custody, or control." The only document that Defendants identified as within their possession—as opposed to the possession of the State of Texas or the District Attorney (a state official under Texas law)—was Deputy Rodriguez' dashcam video. Thus, under the same reasoning Defendants assert in their forthcoming Rule 26 motion to exclude, Pulliam objects to all of Defendants' exhibits that were in their possession, custody, or control during discovery, except for Rodriguez' dashcam video. Pulliam will withdraw this objection if the Court rules that Pulliam's evidence is admissible.

**Defendants Contend:**

In connection with the **July 12, 2021** press conference:

1.    Pulliam failed to produce any documents or records in connection with his claim for compensatory damages during discovery and should therefore be precluded from presenting any of these documents or records now at trial.    *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) ("[A] party must, without awaiting a discovery request, provide … a computation of each category of damages … *[and] the documents or other evidentiary material*, unless privileged or protected from disclosure, on which each computation is based."); Fed. R. Civ. P. 37(c)(1) (providing that a party who fails to disclose such information "shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.").

2.    During discovery, Pulliam failed to provide a computation of, and failed to produce or make available for inspection documents or other evidentiary material supporting, his claim for $98,227.79 in lost profits, precluding recovery of these purported damages.    *See id.*; *see also e.g., Jacked Up, LLC v. Sara Lee Corp.*, No. 3:11-CV-3296-L, 2019 WL 1098992, at *9 (N.D. Tex. Mar. 8, 2019) (Lindsay, S.), aff'd sub nom. *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 Fed. Appx. 344 (5th Cir. 2020).

3.    Pulliam will be unable to prove entitlement to compensatory damages.

4.    Pulliam failed to disclose that he was seeking punitive damages from Sheriff Fagan in his initial disclosures, precluding recovery.    *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) ("[A] party must, without awaiting a discovery request, provide … a computation of *each*

*category* of damages … [and] the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based.").

5.      Pulliam will be unable to prove entitlement to punitive damages given that there will be no competent or credible evidence presented that Sheriff Fagan acted with evil motive or intent or callous indifference to the constitutional rights of others.

6.      The only monetary damages Pulliam will be able to prove entitlement to is nominal damages in the amount of $1.00.[6]

7.      Pulliam will be unable to prove entitlement to injunctive relief given that no competent or credible evidence exists establishing that Pulliam will suffer from a continuing injury or a threatened future injury. *Stringer v. Whitley*, 942 F.3d 715, 720-21 (5th Cir. 2019).

8.      Pulliam will be unable to prove entitlement to declaratory relief given that his requested declaration seeks nothing more than a resolution of issues already stated in the lawsuit. *See e.g., Nextera Energy Mktg. LLC v. Shell Energy N. Am. (US) LP*, 2023 WL 2541964, at *3 (S.D. Tex. Mar. 16, 2023) (Eskridge, C.).

In connection with the **December 21, 2021** incident:

1.      Pulliam's right to record police activity is subject to reasonable time, place, and manner restrictions.

2.      The Fifth Circuit has recently recognized that a reasonable time, place, and manner restriction on a citizen's right to record police activity includes an order to stand a

---

[6] *Id.*

safe distance away from a crime scene a peace officer reasonably perceives as unsafe. *See e.g., Bailey v. Ramos*, 125 F.4th 667, 678 (5th Cir. 2025).

3.    Rollins ordered Pulliam to relocate across the street for safety reasons only. *See e.g., id.*

4.    Pulliam will be unable to produce any competent or credible evidence that Rollins' order to relocate across the street was for any reason other than safety concerns.

5.    Rollins order to Pulliam to relocate across the street for safety reasons was reasonable, lawful, and justified given the circumstances and what Rollins reasonably believed at that time. *See e.g., id*.

6.    In fact, Pulliam acknowledges and admits when a peace officer reasonably believes a scene is ***unsafe***, but Pulliam disagrees and believes it is ***safe*** and he should be allowed to record police activity, the peace officer's decision controls — not Pulliam's.

7.    Given that Rollins order to Pulliam to relocate across the street for safety reasons was reasonable, lawful, and justified, Rollins is entitled to qualified immunity in connection with Pulliam's First Amendment claim.

8.    Moreover, Rollins is also entitled to qualified immunity given that a reasonable person in his position would have believed that his conduct conformed to the constitutional standard in light of information available to him and the clearly established law. *Voss v. Goode*, 954 F.3d 234, 239 (5th Cir. 2020)

9.    A plaintiff pressing a retaliatory arrest claim based on speech protected by the First Amendment generally must prove the absence of probable cause for the arrest. *Grisham v. Valenciano*, 93 F.4th 903, 909 (5th Cir. 2024).

10.    Pulliam, admittedly, "did not comply" with Rollins' lawful and justified order to relocate across the street.[7]

11.    Pulliam "did not comply" with Rollins' lawful and justified order because he believed, at the time, he was being excluded simply for recording police activity and not for safety reasons.   Pulliam's belief was based on the fact that two mental health professionals were allowed to remain on the scene and he was not.   Pulliam, however, was mistaken and unaware that the two individuals allowed to remain on the scene were mental health professional who could assist with de-escalation efforts and not simply ordinary citizens.

12.    Texas and federal courts have long held that a failure to comply with a peace officer's lawful order at a crime scene establishes probable cause for an arrest under Section 38.15 of the Texas Penal Code.  *See e.g., Duncantell v. State*, 230 S.W.3d 835, 842 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *see also e.g., Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 657 (5th Cir. 2004).

13.    Probable cause existed to arrest Pulliam for violating Section 38.15 of the Texas Penal Code on December 21, 2021 entitling Rollins to qualified immunity.  Rollins is also entitled to qualified immunity given that a reasonable person in his position would have believed that his conduct conformed to the constitutional standard in light of

---

[7] *See id*. ¶ 1 ("In another act of retaliation, in December 2021, Fort Bend County Sheriff's [deputy] Taylor Rollins arrested [Pulliam] for filing a heated encounter with a citizen because [Pulliam] ***did not comply*** with an unconstitutional order to relocate across the street where filming was impossible.")

information available to him and the clearly established law.  *Voss*, 954 F.3d at 239; *see also Bailey*, 125 F.4th at 678.

14.    Pulliam will be unable to produce any competent and credible evidence that establishes entitlement to the *Nieves* exception, or any other exception.

15.    Pulliam will be unable to produce any competent and credible evidence that his arrest was in retaliation for recording police activity or any other protected speech.

16.    Under the Independent Intermediary Doctrine, "[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party…."  *See McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)).  But, "the chain of causation remains intact if 'it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant….'"  *See Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)).

17.    Rollins is shielded from liability pursuant the Independent Intermediary Doctrine given that Pulliam was indicted for violations of Section 38.15 by a duly empaneled grand jury.

18.    Given that Rollins is entitled to qualified immunity on Pulliam's claims, Fort Bend County is not liable under *Monell*.  *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017).

19.    Pulliam will be unable to present any competent or credible evidence that his arrest was made pursuant to an official policy, practice, or custom, adopted, approved, or

knowingly acquiesced by a Fort Bend County policymaker — much less an unconstitutional policy, practice, or custom, adopted, approved, or knowingly acquiesced by a Fort Bend County policymaker or one adopted by a Fort Bend County policymaker with deliberate indifference to the known or obvious fact that a specific constitutional violation would follow.

20.    In the event Pulliam can show entitlement to damages, Pulliam failed to produce any documents or records in connection with his claim for compensatory damages during discovery and should therefore be precluded from presenting any of these documents or records now at trial.  *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) ("[A] party must, without awaiting a discovery request, provide … ***a computation of*** each category of damages … ***[and] the documents or other evidentiary material***, unless privileged or protected from disclosure, on which each computation is based."); Fed. R. Civ. P. 37(c)(1) (providing that a party who fails to disclose such information "shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.")

21.    During discovery, Pulliam failed to provide a computation of, and failed to produce or make available for inspection documents or other evidentiary material supporting, his claim for (i) $64,885.21 in lost profits and (ii) $22,730.91 in criminal case expenses, precluding recovery. *See id*.; *see also e.g., CQ, Inc.*, 565 F.3d at 279.

22.    Pulliam will be unable to prove entitlement to compensatory damages.

23.    Pulliam failed to disclose that he was seeking punitive damages against Rollins, precluding recovery of these damages.[8]  *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) ("[A] party must, without awaiting a discovery request, provide … a computation of *each category* of damages … [and] the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based.").

24.    Pulliam will be unable to prove entitlement to punitive damages given that there will be no competent or credible evidence presented that Rollins acted with evil motive or intent or callous indifference to the constitutional rights of others.

25.    If entitlement to damages are proven, the only monetary damages Pulliam will be able to prove entitlement to is nominal damages in the amount of $1.00.[9]

26.    Pulliam will be unable to prove entitlement to injunctive relief given that no competent or credible evidence exists establishing that Pulliam will suffer from a continuing injury or a threatened future injury.  *Stringer v. Whitley*, 942 F.3d 715, 720-21 (5th Cir. 2019).

27.    Pulliam will be unable to prove entitlement to declaratory relief given that his requested declaration seeks nothing more than a resolution of issues already stated in the lawsuit.  *See e.g., Nextera Energy Mktg. LLC v. Shell Energy N. Am. (US) LP*, 2023 WL 2541964, at *3 (S.D. Tex. Mar. 16, 2023) (Eskridge, C.).

---

[8] *See* Ex. 2, Pl.'s Am. Disc. (served on Aug. 24, 2023) at 5.
[9] Pl.'s 1st Am. Compl. (ECF No. 33 filed on Feb. 13, 2023) ¶ B ("For an award of $1 in nominal damages based on Defendants' violations of [Pulliam's] constitutional rights.").

## Joint Exhibit List

Defendants provided a copy of their exhibits to Pulliam on June 18, 2025. Pulliam provided a copy of his exhibits to Defendants on June 24, 2025 and provided Defendants with a proposed joint exhibit list after reviewing both lists. Defendants rejected all proposed joint exhibits. Pulliam's exhibit list is attached hereto and marked as Attachment C and Defendants' exhibit list is attached hereto and marked as Attachment D.

## Witnesses and Witnesses List

Pulliam's Witness List is attached as Attachment E and Defendants' Witness List is attached as Attachment F.

## Settlement

**Plaintiff:** The parties are not presently in settlement talks. Pulliam seeks to vindicate his constitutional rights in Court with a publicly accessible and judicially enforceable judgment. Defendants have never taken full responsibility for the violation of Pulliam's constitutional rights. The failure to do so precludes any settlement.

**Defendants:** Pulliam has never made a settlement demand.  On March 21, 2025 Fort Bend County offered to settle this matter on the following terms:

- Payment to Pulliam in the amount of $100,000.

- Inclusion of Mr. Pulliam on the Fort Bend County Sheriff's Office media distribution list.

- Change to the Fort Bend County Sheriff's Office policy to include "social media journalism" in its definition of "media."

- Change to the Fort Bend County Sheriff's Office policy to ensure all Fifth Circuit precedent involving constitutional protections for social media journalism is followed.

- The Fort Bend County Attorney's Office provide the Fort Bend County Sheriff's Office training in connection with all Fifth Circuit precedent involving constitutional protections for social media journalism.

- A written apology from Sheriff Eric Fagan to Pulliam in connection with the July 2021 press conference.

Pulliam rejected this offer without providing a counter.

On June 17, 2025, Fort Bend County made an offer of judgment to Pulliam in the amount of $250,000. Pulliam has not responded. Defendants are committed to a reasonable settlement of this matter. Pulliam, however, has chosen not to engage in any settlement discussions or negotiations.

## Trial

This case is set for a bench trial. Parties believe this will take two days. Witnesses for both parties have been informed and have agreed to be available with one exception. Detective Travis James' wife is pregnant and expected to deliver any day. Accordingly, her delivery could potentially interfere with Detective James' availability.

Defendants did not notify Pulliam of the potential for Detective James to be unavailable until June 20, 2025. Pulliam reserves the right to seek appropriate relief including admission of all or part of Detective James' deposition into evidence or the recess of trial until Detective James is available to testify.

## Additional Required Attachments

**Motions in Limine:** Neither party will be filing a motion in limine.

**Pretrial Filings:** Pulliam and Defendants will each submit their own findings of fact, conclusions of law, and memorandum of law on the date this Joint Pretrial Order is filed.

Dated: July 1, 2025                    Respectfully submitted,

/s/ Christen Mason Hebert
Christen Mason Hebert, Attorney-in-Charge
Texas Bar No. 24099898
Federal ID No. 3844981
Jeffrey Rowes*, of counsel
Texas Bar No. 24104956
Michael Peña*, of counsel
Texas Bar No. 24131580
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
chebert@ij.org
jrowes@ij.org
mpena@ij.org

*Attorneys for Plaintiff*

*Admitted pro hac vice

Dated: July 1, 2025                    /s/ Kevin Hedges
Kevin Hedges, Attorney-in-Charge
Assistant Fort Bend County Attorney
Texas Bar No. 09370100
Federal ID No. 9939
Rolf F. Krueger, Assistant County Attorney
Texas Bar No. 24080990
401 Jackson St., 3rd Floor
Richmond, TX 77469
Tel: (281) 341-4555
Fax: (281) 341-4557
Kevin.Hedges@fortbendcountytx.gov
Rolf.krueger@fortbendcountytx.gov

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2025, I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system and served by the CM/ECF system to all counsel of record.

<u>/s/ Christen Mason Hebert</u>
Christen Mason Hebert, Attorney-in-Charge

*Counsel for Plaintiff*
