## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| JUSTIN PULLIAM,<br><br>*Plaintiff*,<br><br>v.<br><br>COUNTY OF FORT BEND, TEXAS; SHERIFF ERIC FAGAN, in his individual capacity; OFFICER ROBERT HARTFIELD, in his individual capacity; OFFICER JONATHAN GARCIA, in his individual capacity; OFFICER TAYLOR ROLLINS, in his individual capacity; and OFFICER RICKY RODRIGUEZ, in his individual capacity,<br><br>*Defendants*. | Civil Action No. 4:22-cv-4210 |

## PLAINTIFF'S PRETRIAL MEMORANDUM OF LAW

Christen Mason Hebert, Attorney-in-Charge
Texas Bar No. 24099898
Federal ID No. 3844981

Jeffrey Rowes*, of counsel
Texas Bar No. 24104956

Michael Peña*, of counsel
Texas Bar No. 24131580

INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
chebert@ij.org
jrowes@ij.org
mpena@ij.org

*Admitted *pro hac vice*

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................ iii

Introduction ......................................................................................................... 1

I. Rollins and the County Are Liable to Pulliam on Two Claims Stemming from the Arrest. .................................................................................................... 2

    A. Claim 1 for Trial: Rollins and the County Violated Pulliam's Right to Film the Police When Rollins Kicked Pulliam Off the Kraft Property Within Seconds of Arriving. ............................................................ 2

        1. Rollins and the County will not be able to carry their affirmative burden of proving that kicking Pulliam off the Kraft property was narrowly tailored to any content-neutral government interest. ............................................................................... 3

        2. Rollins is individually liable for violating Pulliam's right to film the police. .................................................................................. 4

        3. The County is liable under *Monell* because there was an official County policy of intimidating and excluding Pulliam. ..................... 5

    B. Claim 2 for Trial: Rollins and the County Are Liable for Arresting Pulliam in Retaliation for His Protected Speech. ........................................ 6

        1. The path if there is an official retaliatory policy. ............................. 10

        2. The path if there was no probable cause to arrest for interference with public duties. ......................................................................... 10

        3. The path if there was probable cause to arrest Pulliam for interference. .................................................................................... 13

        4. All paths lead to the *Mt. Healthy* burden-shifting framework ......... 14

        5. The independent intermediary doctrine does not preclude liability for retaliatory arrest. ......................................................... 16

II. Remedies: Permanent Injunction and Damages for the Press Conference Incident and Retaliatory Arrest ............................................................... 17

    A.   Injunctive Relief ........................................................................... 17

    B.   Damages ...................................................................................... 19

         1.   Lost profits ......................................................................... 20

         2.   Damages for equipment seized by FBCSO ...................................... 21

         3.   Reputation, personal humiliation, mental anguish and suffering ..... 21

         4.   Attorneys' fees for the criminal trial ................................................ 23

         5.   Punitive and nominal damages........................................................ 23

Conclusion .................................................................................................. 24

Certificate of Service ................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Awad v. Ziriax,*
  670 F.3d 1111 (10th Cir. 2012) .................................................................. 18

*Bailey v. Iles,*
  87 F.4th 275 (5th Cir. 2023) ............................................................... 5, 7, 8

*Borunda v. Richmond,*
  885 F.2d 1384 (9th Cir. 1988) .................................................................. 23

*Buehler v. Dear,*
  27 F.4th 969 (5th Cir. 2022) ..................................................................... 12

*Castellano v. Fragozo,*
  311 F.3d 689 (5th Cir. 2002) .................................................................... 23

*Castellano v. Fragozo,*
  352 F.3d 939 (5th Cir. 2003) .................................................................... 23

*Childers v. Iglesias,*
  848 F.3d 412 (5th Cir. 2017) .................................................................... 12

*City of Houston v. Hill,*
  482 U.S. 451 (1987) ................................................................................... 7

*Clarke v. Commodity Futures Trading Comm'n,*
  74 F.4th 627 (5th Cir. 2023) ..................................................................... 18

*Coll. Network, Inc. v. Moore Educ. Publishers, Inc.,*
  378 F. App'x 403 (5th Cir. 2010) ............................................................. 20

*Colson v. Grohman,*
  174 F.3d 498 (5th Cir. 1999) ...................................................................... 7

*Crawford-El v. Britton,*
  523 U.S. 574 (1998) .................................................................................... 7

*DeCorte v. Jordan,*
  497 F.3d 433 (5th Cir. 2007) .................................................................... 22

*Elrod v. Burns,*
   427 U.S. 347 (1976) ................................................................................ 18

*Est. of Davis ex rel. McCully v. City of North Richland Hills,*
   406 F.3d 375 (5th Cir. 2005) ................................................................... 5

*Est. of Andrews v. City of Cleveland*
   112 F.4th 436 (6th Cir. 2024) ................................................................ 19

*Faulk v. Duplantis,*
   No. 12-cv-1714, 2014 WL 7006002
   (E.D. La. Dec. 10, 2014) ....................................................................... 22

*Forsyth v. City of Dallas*,
   91 F.3d 769 (5th Cir. 1996) ................................................................... 22

*Freeman v. Gore,*
   483 F.3d 404 (5th Cir. 2007) ................................................................. 11

*Fyfe v. Curlee,*
   902 F.2d 401 (5th Cir. 1990) ................................................................. 24

*Galloway v. City of Albany*,
   239 F.3d 366 (5th Cir. 2000) ................................................................. 22

*Galloway v. City of Albany*,
   92 F. Supp. 2d 598 (N.D. Miss. 2000) ................................................. 22

*Gericke v. Begin,*
   753 F.3d 1 (1st Cir. 2014) ................................................................... 3, 4

*Giles v. Gen. Elec. Co.*,
   245 F.3d 474 (5th Cir. 2001) ................................................................. 22

*Gonzalez v. Trevino,*
   602 U.S. 653 (2024) ........................................................................ 14, 15

*Gorsky v. Guajardo*,
   No. 20-20084, 2023 WL 3690429
   (5th Cir. May 26, 2023) ........................................................................ 11

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ................................................................................ 4

*Hartman v. Moore*,
    547 U.S. 250 (2006) ................................................................................... 7, 16

*Hill v. Washburne*,
    953 F.3d 296 (5th Cir. 2020) ............................................................................ 18

*Hill v. Kilbourne*,
    157 F. Supp. 3d 545 (M.D. La. 2015) ............................................................. 24

*J & B Ent. v. City of Jackson*,
    720 F. Supp. 2d 757 (S.D. Miss. 2010) ..................................................... 19, 20

*J & D Towing, LLC v. Am. Alt. Ins. Corp.*,
    478 S.W.3d 649 (Tex. 2016) ............................................................................ 20

*Jenkins v. Town of Vardaman*,
    899 F. Supp. 2d 526 (N.D. Miss. 2012) ........................................................... 23

*Keenan v. Tejeda*,
    290 F.3d 252 (5th Cir. 2002) .............................................................................. 7

*Kerr v. City of Chicago*,
    424 F.2d 1134 (7th Cir. 1970) .......................................................................... 23

*Loftin v. City of Prentiss*,
    33 F.4th 774 (5th Cir. 2022) ............................................................................. 17

*Lozman v. Riveria Beach*,
    585 U.S. 87 (2018) ..................................................................................... 10, 16

*MaGee v. State*,
    715 S.W.2d 838 (Tex. App.—Houston [14th Dist.] 1986, no writ) ............................ 21

*Memphis Cmty. Sch. Dist. v. Stachura*,
    477 U.S. 299 (1986) ............................................................................. 19, 21, 24

*Miniex v. Hou. Hous. Auth.*,
    400 F. Supp. 3d 620 (S.D. Tex. 2019) ............................................................. 22

*Minter-Smith v. Mukasey*,
    No. 3:03-cv-1057, 2008 WL 2164565
    (S.D. Miss. May 22, 2008) ................................................................................ 22

*Moore v. LaSalle Mgmt. Co., L.L.C.*,
    41 F.4th 493 (5th Cir. 2022) .............................................................................. 6

*Mt. Healthy City Bd. of Educ. v. Doyle*,
   429 U.S. 274 (1977) ..................................................................8, 10, 14, 15

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ........................................................................... 3

*Nieves v. Bartlett*,
   587 U.S. 391 (2019) ....................................................................*passim*

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................ 18

*Opulent Life Church v. City of Holly Springs*,
   697 F.3d 279 (5th Cir. 2012) .............................................................. 18

*Perkins v. Hart*,
   No. 22-30456, 2023 WL 8274477
   (5th Cir. Nov. 30, 2023) .................................................................... 13

*Russell v. Altom*,
   546 F. App'x 432 (5th Cir. 2013) .................................................... 16

*Salinas v. O'Neill*,
   286 F.3d 827 (5th Cir. 2002) ............................................................. 22

*Sanchez v. Presidio Cnty.*,
   2021 WL 9639630 (W.D. Tex. Nov. 3, 2021) .................................... 22

*Saulsberry v. Ross*,
   485 S.W.3d 35 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ....................... 21

*SDJ, Inc. v. City of Houston*,
   837 F.2d 1268 (5th Cir. 1988) ............................................................ 3

*Siders v. City of Brandon*,
   123 F.4th 293 (5th Cir. 2024) ............................................................ 18

*Smith v. Wade*,
   461 U.S. 30 (1983) .............................................................................. 23

*Sockwell v. Phelps*,
   20 F.3d 187 (5th Cir. 1994) ............................................................... 19

*Trevino v. Iden*,
   79 F.4th 524, (5th Cir. 2023) ............................................................ 16

*Turner v. Driver*,
  848 F.3d 678 (5th Cir. 2017) .................................................................3, 5

*Vadie v. Miss. State Univ.*,
  218 F.3d 365 (5th Cir. 2000) ..................................................................22

*Williams v. Kaufman Cnty.*,
  352 F.3d 994 (5th Cir. 2003) ..................................................................24

*Williams v. Trader Publ'g Co.*,
  218 F.3d 481 (5th Cir. 2000) ..................................................................22

*Wilson v. Stroman*,
  33 F.4th 202 (5th Cir. 2022) ............................................................16, 17

*Winfrey v. Johnson*,
  766 F. App'x 66 (5th Cir. 2019) .............................................................17

*Wise Elec. Coop., Inc. v. Am. Hat Co.*,
  476 S.W.3d 672 (Tex. App.—Fort Worth 2015, no pet.) ...........................21

## CODES

Texas Penal Code § 38.15 ..............................................................................11

Texas Penal Code § 38.15(a)(1) .....................................................................11

Texas Penal Code § 38.15(d) ..........................................................................11

## OTHER AUTHORITIES

Restatement (Second) of Torts § 908(1) (1977) ..............................................24

## INTRODUCTION

This is a case about multiple, serious violations of the First Amendment. Trial will focus mainly on an unconstitutional arrest made in retaliation for speech. Defendant Sergeant Taylor Rollins, acting pursuant to County policy, instigated a conflict with Plaintiff Justin Pulliam, an independent journalist covering a welfare check for a mentally ill man, and then escalated that conflict into an arrest within 60 seconds. This Court has already held the County and Sherrif Fagan liable for violating Pulliam's rights when the Sheriff kicked him out of a press conference on threat of arrest. Trial will show that Rollins took that policy of intimidation and exclusion one step further by arresting Pulliam on the pretext of a bogus "interference" charge.

Trial will show, as captured on video, that Pulliam was silently and peacefully exercising his right to film Fort Bend County Sheriff's Office officers as they performed a welfare check for Edwin Kraft, a mentally ill man, at a rural property. Pulliam was well back from the residence where Kraft was believed to be. One officer, Deputy Rodriguez, walked by Pulliam and said "sir, we need you to stay back over there" but otherwise left Pulliam alone. Pulliam complied. There was no conflict at the otherwise quiet scene. Not between Pulliam and anyone. Not between the officers and anyone. Not between Kraft (who is nowhere to be seen) and anyone.

No conflict, that is, until Defendant Sergeant Rollins arrived and arrested Pulliam within 60 seconds for interference with public duties. As the video evidence will prove, Rollins instigated and steadily escalated the conflict with Pulliam, who, again, had been peacefully filming in a way that didn't bother anyone. The irony is that Rollins *created* the

1

very "interference" he complained of by needlessly bullying Pulliam to the point of open conflict. If Rollins had simply left Pulliam alone none of this would have happened.

But Rollins didn't leave Pulliam alone because of Rollins' own hostility and an official County policy of intimidating and excluding Pulliam. In kicking Pulliam off the Kraft property—Pulliam alone, not other civilians—and then arresting him when he dared to object, Rollins was enforcing the County's official policy about Pulliam: *you don't matter, you don't count, you're a nobody, we don't like you, go away or go to jail*. It is not remotely plausible that Rollins would have treated a reporter from the Houston Chronicle or NBC news that way. Why? Because the policy of intimidation and exclusion—openly practiced by the Sheriff himself—was for Pulliam alone. Rollins and the County are liable.

This Memorandum of Law will provide a detailed analysis of the legal claims and remedies (a detailed factual overview is provided in the proposed findings of fact and conclusions of law). Below, Part I addresses liability and Part II explains remedies.

## I.    Rollins and the County Are Liable to Pulliam on Two Claims Stemming from the Arrest.

### A.    Claim 1 for Trial: Rollins and the County Violated Pulliam's Right to Film the Police When Rollins Kicked Pulliam Off the Kraft Property Within Seconds of Arriving.

Pulliam engages in the speech that courts universally recognize as the core of the First Amendment: the right to gather information about the government, express opinions critical of government officials, and urge fellow citizens to hold their government officials accountable. The First Amendment represents "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and

that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269–70 (1964). Pulliam exercises these fundamental First Amendment rights by documenting the work of local government officials, including law enforcement, and publicly critiquing them—both in real time and by publishing videos with commentary on his social media.

> 1.  **Rollins and the County will not be able to carry their affirmative burden of proving that kicking Pulliam off the Kraft property was narrowly tailored to any content-neutral government interest.**

Pulliam's first claim for trial is that Rollins had no valid basis for ordering Pulliam off the Kraft property within seconds of Rollins' arrival. Pulliam has a "First Amendment right to record the police[.]" *Turner v. Driver*, 848 F.3d 678, 688 (5th Cir. 2017). "Filming the police contributes to the public's ability to hold the police accountable, ensure that police officers are not abusing their power, and make informed decisions about police policy." *Id.* at 689. Filming the police, as with the exercise of other First Amendment rights is presumptively permissible. "[A]n individual's exercise of her First Amendment right to film police activity carried out in public . . . necessarily remains unfettered unless and until a reasonable restriction is imposed or in place." *Id.* at 690 n.50 (quoting *Gericke v. Begin*, 753 F.3d 1, 8 (1st Cir. 2014)).

An officer may place content-neutral, "reasonable time, place, and manner restrictions" on the right to record the police. *Id.* Under the "time, place, and manner" test, the government has the burden to "prove that [its action] is narrowly tailored to serve a substantial interest and that it leaves open alternative channels of communication." *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1273 (5th Cir. 1988). "[A] police order that is

specifically directed at the First Amendment right to film police performing their duties in public may be constitutionally imposed only if the officer can reasonably conclude that the filming itself is interfering, or is about to interfere, with his duties." *Gericke*, 753 F.3d at 8.

Rollins and the County will not be able to carry their affirmative burden that kicking Pulliam off the Kraft property was "narrowly tailored" to any substantial government interest. Nor will they be able to prove that filming across the street was an adequate alternative to being present on the Kraft property. The evidence showing that Rollins and the County cannot carry their burden will include: (1) the fact that Deputy Rodriguez gave Pulliam permission to film where he was on the Kraft property; (2) Rollins took no time to assess the scene or even speak to Rodriguez or Deputy Lacy before kicking Pulliam out; (3) Rollins let other civilians remain without any restrictions; and (4) Rollins did not himself act like he perceived any danger. The actual explanation was hostility to Pulliam, his filming, and his track record of political speech.

### 2. Rollins is individually liable for violating Pulliam's right to film the police.

Having established that Rollins violated Pulliam's First Amendment rights with that initial order to leave, the question is whether Rollins is individually liable or whether he has qualified immunity. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified

immunity does not protect "the plainly incompetent or those who knowingly violate the law." *Est. of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005). A defendant is not entitled to qualified immunity if "prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Bailey v. Iles*, 87 F.4th 275, 282 (5th Cir. 2023) (citation omitted).

Rollins does not have qualified immunity. The right to film the police has been clearly established since *Turner v. Driver*. *See* 848 F.3d at 688 ("We conclude that First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist[.]"). Notably, this is not a situation in which Rollins made a good-faith effort to strike the right balance based on content-neutral factors and happen to get it wrong. This is a situation in which there was no content-neutral reason to kick Pulliam off, Rollins knew that, and kicked him off anyway because he didn't care about Pulliam's rights. It is clearly established that officers cannot deliberately and willfully infringe a journalist's First Amendment rights.

      **3.**      **The County is liable under *Monell* because there was an official County policy of intimidating and excluding Pulliam.**

The next question is whether Fort Bend County is also liable for Rollins' decision to kick Pulliam off the Kraft property. The simple answer is yes for the reasons the Court has already considered in ruling against the County when the Sheriff kicked Pulliam out of the press conference. In short, the County has an official policy—as practiced by the Sheriff himself—of kicking Pulliam out within seconds based on his status as a social media journalist and for his critical coverage. Because Rollins was applying County policy toward

5

Pulliam, the County is just as liable for Rollins' actions at the Kraft property as it is for the Sheriff's actions at the press conference.

That intuitive point said, "[t]o prevail" against Fort Bend County, Pulliam "must show (1) an official policy (or custom), (2) that a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022) (quotation omitted). Pulliam meets that burden.

The trial evidence will show an official policy of intimidating and excluding Pulliam based on his status as a social media journalist and critical coverage of local law enforcement. That evidence will include: (1) this Court's judgment against the County and Sheriff for kicking Pulliam out of the press conference in July 2021; (2) Sheriff Fagan's predecessor's policy of forbidding Pulliam from entering the Sheriff's Office building; (3) the Sheriff's personal visit to Pulliam in jail; (4) the anomalous prosecution of Pulliam; and (5) the lack of any accountability for the unconstitutional treatment of Pulliam.

### B.    Claim 2 for Trial: Rollins and the County Are Liable for Arresting Pulliam in Retaliation for His Protected Speech.

Pulliam has a second First Amendment claim for trial: the right not to be arrested in retaliation for his protected speech. As the video evidence will show, Rollins did not simply kick Pulliam off the property within seconds of arriving (an unconstitutional act), but Rollins then arrested Pulliam within seconds of asserting his First Amendment right to remain. This arrest was a second, independent violation of the First Amendment. "As a general rule, the First Amendment prohibits not only direct limitations on speech but also

adverse government action against an individual because of her exercise of First Amendment freedoms." *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). "[G]overnment officials" may not "subject[] an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)).

As this Court already recognized at summary judgment, "[f]or Pulliam to prevail on his First Amendment retaliation claim against Rollins and Fort Bend County arising out of his December 2021 arrest, he must prove: '(1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against [his] exercise of constitutionally protected conduct.'" Doc. 77 at 20 (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

Pulliam easily satisfies the first and second elements. First, Pulliam was engaged in the protected right to film the police (which Rollins had just violated by kicking him out) and then exercised his right to question the validity of Rollins' order after he allowed other civilians to stay. *See City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."). Second, an arrest is sufficient to chill speech. *Nieves v. Bartlett*, 587 U.S. 391, 397–99 (2019) (treating a retaliatory arrest as "sufficiently chilling"); *Bailey v. Iles*, 87

F.4th 275, 289 (5th Cir. 2023) ("[T]here is no dispute as to the second element [of the retaliation test], as Bailey's speech was chilled . . . in response to the arrest.").

Pulliam also meets the third element of a First Amendment retaliation claim although that analysis is more complicated. To prevail, "a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves*, 587 U.S. at 398 (quotation marks omitted). Specifically, the plaintiff must show that retaliation for speech is "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399.

Although the causation analysis seems straightforward, the arrest component makes it more complex. In the context of retaliatory arrest, a plaintiff must first get through at least one of three doors: The plaintiff must (1) prove the absence of probable cause for the arrest (the general rule); (2) establish the existence of a retaliatory official policy (the *Lozman* exception); or (3) if probable cause exists, produce objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been (the *Nieves* exception). If a plaintiff can move through *any* of these three doors, then the "*Mt. Healthy* framework"—the "two-step," burden-shifting framework from *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977)—is triggered.

Here is a flowchart to help the Court understand the analysis:



As the flowchart shows, the analysis follows different paths depending on whether the Court finds an official retaliatory policy, absence of probable cause, or objective evidence that officers don't typically arrest absent speech. Each path in this case, however, leads to the same destination: Pulliam can proceed to the *Mt. Healthy* framework, which comes out in his favor.

### 1.     The path if there is an official retaliatory policy.

Under *Lozman v. City of Riviera Beach*, a plaintiff "need not prove the absence of probable cause" if the plaintiff proves that he was arrested "pursuant to an 'official municipal policy' of intimidation." 585 U.S. 87, 99–101 (2018) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Nieves*, 587 U.S. at 398 (discussing *Lozman*). That's because "the existence and enforcement of an official policy motivated by retaliation separates [plaintiff's] claim from the typical retaliatory arrest claim." *Lozman*, 585 U.S. at 100. This Court has already found that there is an official policy of intimidating and excluding Pulliam. That means that Pulliam moves to the burden-shifting *Mt. Healthy* framework. *See id.* at 101.

### 2.     The path if there was no probable cause to arrest for interference with public duties.

The general rule is that the protected speech "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399. To show that speech was the but-for cause of arrest, the "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Id.* at 402.

10

Pulliam will prove the absence of probable cause for his arrest. The elements of the crime of interference are codified at Texas Penal Code § 38.15. Specifically, "a person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with: a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." *Id.* § 38.15(a)(1). Importantly, speech alone does not constitute the offense. *Id.* § 38.15(d) ("It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only."). The Fifth Circuit has held that "'merely arguing with police officers about the propriety of their conduct . . . falls within the speech exception to section 38.15' and thus does not constitute probable cause to arrest someone for interference." *Gorsky v. Guajardo*, No. 20-20084, 2023 WL 3690429, at *8 n.16 (5th Cir. May 26, 2023) (quoting *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007)).

Rollins and the County are, of course, going to argue that Rollins arrested Pulliam not for speech, but for refusing to follow Rollins' order to get off the Kraft property. First, as a matter of logic, the fact that Rollins' order to leave the property was unconstitutional necessarily means that Rollins lacked probable cause to arrest Pulliam for interference. It can't be a crime to refuse to follow an unconstitutional order. Second, even if the Court deemed the order to leave constitutional, the statute doesn't require instant, unquestioning supplication. The statute requires "criminal negligence." Speaking to the police and questioning the validity of an order is not a form of criminal negligence. Two civilian women who turned out to be mental health workers questioned the validity of Rollins' order. That was not criminal negligence. To the contrary, it made sense to tell Rollins who

11

they were and why they should get to stay. That is why he changed his mind and let them stay rather than arrest them. If the civilian women hadn't committed a crime by talking to Rollins, then neither did Pulliam.

*Buehler v. Dear* "concerns the line between filming the police, which is legal, and hindering the police, which is not." 27 F.4th 969, 976 (5th Cir. 2022). There, "Buehler lead[] the Peaceful Streets Project (PSP), a watchdog organization with the stated mission of holding police accountable for official misconduct." *Id.* at 977. "Buehler regularly filmed the Austin police, and many officers were familiar with him." *Id.* In the incident at issue in that case, "Buehler shouts at [the officer] to get his attention and then begins arguing with [the officer]" and "repeatedly interrupts [the officer]'s answers to questions, and [the officer] tries several times to walk away while Buehler follows with his camera." *Id.* Buehler even says "I'm going after [the officer]. F***ing pigs. I hate pigs." *Id.* (asterisks in original).

But none of that speech alone resulted in arrest. The probable cause for Buehler's arrest for interference with public duties was his repeated refusal to obey a request to stay at least an arm's length away from the officer. *Id.* ("Buehler continued to stand closer to the officers than an arm's length away (certainly no more than two feet, and probably no more than one)."). *See also Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (probable cause to arrest for interference because of failure to heed "instruction [that] concerned the moving of [plaintiff]'s truck rather than the content of his speech"). Buehler aggressively hindered the police. *See Buehler*, 27 F.4th at 980–94.

12

By contrast, D.J. in *Perkins v. Hart* "did not cross the line between filming the police and hindering the police, and was engaged in clearly established, constitutionally protected activity on his family's private property." No. 22-30456, 2023 WL 8274477, at *7 (5th Cir. Nov. 30, 2023) (cleaned up). D.J., a minor, recorded the arrest of his mother on his cell phone. While D.J. was recording, an officer "moved directly in front of D.J., blocking his camera's view of [his mother] and [the arresting officer]. *Id.* at *2; *see id.* at *6 (noting the blocking officer admitted that he "intentionally" obstructed D.J.'s view). "While D.J. was clearly close to the arrest scene—the perimeter of which was still being secured by [the blocking officer]—D.J. was not a hazard, was not too close, and did not impede the [officers'] ability to perform their duties." *Id.* at *7.

Like D.J., Pulliam "did not cross the line between filming the police and hindering the police." *Id.* (cleaned up). He was "engaged in a clearly established, constitutionally protected activity" on "private property"—where he had permission to be and record. *Id.* Pulliam "was not a hazard, was not too close, and did not impede [Rollins' or other officers'] ability to perform their duties." *Id.* In short, it was not *criminally negligent* of Pulliam to plead his case to Rollins. Rollins lacked probable cause for the arrest.

### 3.    The path if there was probable cause to arrest Pulliam for interference.

Even if there was probable cause for the arrest, Pulliam can still prevail if he falls under an exception carved out in *Nieves*. "Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to

13

do so." *Nieves*, 587 U.S. at 406. This exception applies "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407. If the *Nieves* exception applies, the *Mt. Healthy* framework governs. *Nieves*, 587 U.S. at 406–08.

To fall under the *Nieves* exception, Pulliam must provide objective evidence that officers typically do not arrest under the circumstances, but he does not need "virtually identical and identifiable comparators." *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024). At trial, Pulliam will offer three categories of comparators that show, objectively, that reasonable officers do not arrest for interference with public duties under circumstances like those present at the Kraft property that day: (1) the Texana case workers who were not arrested for asking Rollins to change his mind; (2) testimony and video evidence of Pulliam's similar interactions with other officers at other times at other locations in which Pulliam was not arrested for asking officers to clarify their orders; and (3) records of all 30 other arrests by the FBCSO in recent years for interference with public duties, all of which involved "plus factors" in addition to speech such as intoxication, violence, physical interference, and disorderly conduct during more pressing situations. If probable cause exists, Pulliam falls under the *Nieves* exception and the *Mt. Healthy* framework once again governs. *See Nieves*, 587 U.S. at 406–08.

### 4.    All paths lead to the *Mt. Healthy* burden-shifting framework

Regardless of how a plaintiff gets there, the *Mt. Healthy* framework consists of two steps, which Justice Alito explained in his *Gonzalez* concurrence. At the first step, the plaintiff must "demonstrate that he engaged in protected speech and that his speech was a

'substantial' or 'motivating' factor in the defendant's decision to take action against him."
*Gonzalez*, 602 U.S. at 662–63 (Alito, J., concurring) (quoting *Mt. Healthy*, 429 U.S. at
287). "Once the plaintiff makes this showing, the burden shifts to the defendant at the
second step to show that he would have taken the same adverse action even in the absence
of the protected speech." *Id.* at 663. "To carry these burdens, parties operating within the
*Mt. Healthy* framework may present a wide range of evidence—both objective and
subjective." *Id.*

Here, speech was a substantial factor in Rollins' decision to arrest Pulliam for
questioning the validity of an unconstitutional order to leave the Kraft property. No one
can watch the video and conclude that anything but Pulliam's speech was the motivating
cause. That shifts the burden to Defendants to prove that Rollins would have arrested for a
non-speech reason. But, as the video also shows, there was no non-speech conduct. Pulliam
did not walk towards or threaten Rollins, he did not get in Rollins' personal space, he did
not step between Rollins and others, he did not physically obstruct Rollins or anyone else.
He simply questioned the legitimacy of Rollins' order. Americans have a right to disagree
with police orders, especially when they are unconstitutional.

Without a non-speech reason to arrest Pulliam, Rollins is not entitled to qualified
immunity for the arrest. As of December 2021, it was clearly established that law
enforcement cannot arrest a person in retaliation for protected speech. *See Nieves*, 587 U.S.
at 398 ("If an official takes adverse action against someone based on that forbidden motive,
and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,
the injured person may generally seek relief by bringing a First Amendment claim."

(quotation marks omitted)). The County is likewise liable because of its unconstitutional policy of intimidating and excluding Pulliam.

>    **5.    The independent intermediary doctrine does not preclude liability for retaliatory arrest.**

Rollins and the County may argue the independent intermediary doctrine shields them from liability for the arrest. The idea behind this doctrine is that the decision of an independent intermediary, like a grand jury, "is sufficient to establish probable cause." *Russell v. Altom*, 546 F. App'x 432, 436 (5th Cir. 2013). But that argument is a red herring here. The Fifth Circuit applies it only to Fourth Amendment false arrest claims or First Amendment retaliatory *prosecution* claims. *See Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (confirming that an "intermediary's decision breaks the chain of causation for *false arrest*" (emphasis added)); *Trevino v. Iden*, 79 F.4th 524, 531 (5th Cir. 2023) (retaliatory prosecution claims have a presumption of regularity, as described in *Hartman v. Moore*, 547 U.S. 250, 263 (2006)).

The doctrine is irrelevant here for two reasons. First, Pulliam has a First Amendment retaliatory arrest claim, not a Fourth Amendment false arrest claim or a First Amendment retaliatory prosecution claim. Second, as discussed, the presence of probable cause does not bar a retaliatory arrest claim if either the *Lozman* or *Nieves* exceptions apply. Both do. These exceptions to probable cause exist to ensure that probable cause to arrest for vague crimes like "interference" cannot be used, as they were here, to conceal serious violations of the First Amendment. *See Lozman*, 585 U.S. at 100 ("[W]hen retaliation against protected speech is elevated to the level of official policy, there is a compelling need for

adequate avenues of redress."). In a *Lozman*-style case, the existence of probable cause does not create the usual doubts about whether speech was the but-for cause of arrest because "the official policy is retaliation for prior, protected speech." *Id.* Likewise, under the *Nieves* exception, if an officer typically refrains from arresting under the circumstances, the bare existence of probable cause does nothing to address the danger of "officers who abuse their authority by making an otherwise lawful arrest for an unconstitutional *reason*." *Nieves*, 587 U.S. at 414 (Gorsuch, J., concurring).[1]

## II.    Remedies: Permanent Injunction and Damages for the Press Conference Incident and Retaliatory Arrest

### A.    Injunctive Relief

Pulliam has already prevailed on his First Amendment and equal-protection claims related to the press conference and seeks injunctive relief to address the violation of those rights. If Pulliam also prevails on his retaliatory arrest claims, the appropriate injunctive remedy will overlap with the relief for the press conference claims—especially as both the press conference exclusion and the retaliatory arrest stem from Fort Bend County's official

---

[1] As a precaution, Plaintiff also intends to present evidence at trial establishing that the grand jury indictment was tainted and therefore does not apply. "[T]he independent-intermediary doctrine is not absolute." *Loftin v. City of Prentiss*, 33 F.4th 774, 782 (5th Cir. 2022). It "only applies where all the facts are presented to the grand jury[.]" *Winfrey v. Johnson*, 766 F. App'x 66, 71 (5th Cir. 2019) (quotation marks omitted). And it is Defendants' burden to prove that all material information was presented to the grand jury. *Id.* (concluding that defendant failed to prove that omitted material information was presented to the judge); *see also Wilson*, 33 F.4th at 212–13 (concluding that plaintiffs had alleged taint where they claimed officials made misrepresentations to the grand jury and withheld material video evidence). Defendants will be unable to meet that burden at trial.

policy and custom of hostility toward Pulliam, his journalism, and his speech. Pulliam sets forth his proposed injunctive relief in his proposed findings of fact and conclusions of law.

The facts at trial and summary judgment will establish Pulliam's entitlement to permanent injunctive relief: (1) "the failure to grant the injunction will result in irreparable injury," (2) that the injury "outweighs any damage that the injunction will cause the opposing party," and (3) "the injunction will not disserve the public interest." *Hill v. Washburne*, 953 F.3d 296, 309 (5th Cir. 2020) (citation omitted). The second and third factors, the balance of the equities and the public interest, "merge when the [g]overnment is the opposing party." *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Pulliam satisfies all requirements for permanent injunctive relief. First, his speech has been chilled. The failure to grant an injunction will result in irreparable injury because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). Second, the balance of equities and the public interest overwhelmingly favor a permanent injunction. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights[.]" *Siders v. City of Brandon*, 123 F.4th 293, 301 n.4 (5th Cir. 2024) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)); *Opulent Life Church*, 697 F.3d at 298 (confirming that injunctions "protecting First Amendment freedoms are always in the public interest" (citation omitted)). Therefore, as preliminarily set forth in the findings of

18

fact and conclusions of law, Pulliam seeks permanent injunctive relief to protect his constitutional interests.

### B. Damages

The "basic purpose" of § 1983 damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (citation and emphasis omitted). Pulliam is entitled to compensatory damages for the deprivation of his constitutional rights stemming from his exclusion at the press conference and his retaliatory arrest. Specifically, Pulliam is entitled to damages compensating him for lost profits; the cost of replacing equipment seized by FBCSO; impairment of his reputation, personal humiliation, and mental anguish; and attorneys' fees he incurred in the criminal proceeding resulting from his retaliatory arrest.

"Compensatory damages awarded pursuant to § 1983 are governed by common law tort principles." *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994); *see also Stachura*, 477 U.S. at 306; *Est. of Andrews v. City of Cleveland*, 112 F.4th 436, 443 (6th Cir. 2024) ("[Section] 1988 permits 'both federal and state rules on damages' to be 'utilized, whichever better serves the policies expressed in the federal statutes.'" (citation omitted)). "Thus, the applicable law in this case shall be drawn from th[e] court's jurisdictional base, the State of [Texas], in accordance with § 1988, and this law shall be applied so far as it is not inconsistent with the Constitution and laws of the United States." *J & B Ent. v. City of Jackson*, 720 F. Supp. 2d 757, 764 (S.D. Miss. 2010).

Under Texas tort law, the "chief purpose of damage awards in tort cases" is "fair, reasonable, and proper compensation for the injury inflicted as a proximate result of the

wrongful act complained of." *J & D Towing, LLC v. Am. Alt. Ins. Corp.*, 478 S.W.3d 649, 655 (Tex. 2016) (citation omitted). Compensation "must be sufficient to place the plaintiff in the position in which he would have been absent the defendant's [wrongful] act." *Id.* A plaintiff is entitled to "[a]ctual damages[, which] may be either direct or consequential." *Id.* Direct damages "compensate for a loss that is the necessary and usual result of the [wrongful] act," and consequential damages "compensate for a loss that results naturally, but not necessarily, from the [wrongful] act" and "must be both foreseeable and directly traceable to the act." *Id.*

At trial, Pulliam will provide evidence of his actual damages of $272,288.26—the sum of damages for his lost profits ($163,113.00), equipment replacement ($1,444.35), impaired reputation and mental anguish ($85,000), and criminal case expenses ($22,730.91).

### 1.   Lost profits

A Section 1983 plaintiff may recover damages for lost profits. *J & B Ent.*, 720 F. Supp. 2d at 764 (awarding a Section 1983 plaintiff lost profits resulting from the violation of procedural and substantive due process rights based on Mississippi tort law). Texas law authorizes an award of lost profits where a plaintiff can prove the loss with reasonable certainty. *See Coll. Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 F. App'x 403, 412 (5th Cir. 2010) (applying Texas law).

Pulliam will present analysis of objective YouTube revenue data at trial showing lost-profit damages in the amount of $98,277.79 from the chilling of his speech following

his exclusion from the press conference. Pulliam will also present evidence as trial showing lost-profit damages in the amount of $64,885.21 from after the retaliatory arrest.

### 2.     Damages for equipment seized by FBCSO

Pulliam is entitled to damages for the amount he spent to replace the equipment that FBCSO seized following the retaliatory arrest—equipment that FBCSO never returned or, in the case of one item, returned damaged. If the personal property has no ascertainable market value, a plaintiff may rely on the property's replacement cost as a measure of damages. *See Wise Elec. Coop., Inc. v. Am. Hat Co.,* 476 S.W.3d 672, 696–97, 701 (Tex. App.—Fort Worth 2015, no pet.); *Saulsberry v. Ross*, 485 S.W.3d 35, 52 n.19 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Fair market value cannot be ascertained when the property remains unrecovered, and the property's condition remains unknown. *See MaGee v. State*, 715 S.W.2d 838, 840 (Tex. App.—Houston [14th Dist.] 1986, no writ). Pulliam is therefore entitled to the amount that he paid to replace the property after the seizure. At trial, Pulliam will present evidence showing that he paid $1,444.35 to replace equipment FBCSO never returned or returned damaged.

### 3.     Reputation, personal humiliation, mental anguish and suffering

Compensatory damages in Section 1983 suits may include not only out-of-pocket loss and other monetary harms, but also such injuries as "impairment of reputation . . . , personal humiliation, and mental anguish and suffering." *Stachura*, 477 U.S. at 307 (citation omitted). To prove a claim for such injuries, there must be a "specific discernable injury to the claimant's emotional state," but "a plaintiff's testimony, standing alone, can support an award of compensatory damages" for mental injuries. *Vadie v. Miss. State Univ.*,

218 F.3d 365, 377–78 (5th Cir. 2000) (citations omitted). Mental anguish damage awards are reviewed for abuse of discretion. *Id.* at 375.

Pulliam will present evidence at trial that he suffered $30,000 in reputation, humiliation, and mental anguish damages for the press-conference incident. Pulliam will also prove that the retaliatory arrest caused him $55,000 in reputation, humiliation, and mental anguish damages—which includes the $6,023.49 Pulliam spent to ensure the backup and protection of his electronic files from his reporting and personal life out of fear of other seizures.

Courts have awarded similar sums in cases with analogous facts. *See, e.g.*, *Galloway v. City of Albany*, 92 F. Supp. 2d 598, 600 (N.D. Miss.), *aff'd*, 239 F.3d 366 (5th Cir. 2000); *DeCorte v. Jordan*, 497 F.3d 433, 443 (5th Cir. 2007); *Faulk v. Duplantis*, No. 12-cv-1714, 2014 WL 7006002, at *3 (E.D. La. Dec. 10, 2014). The Fifth Circuit has repeatedly upheld awards of $100,000. *See, e.g.*, *Salinas v. O'Neill*, 286 F.3d 827, 833 (5th Cir. 2002); *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488–89 (5th Cir. 2001); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996); *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486–87 (5th Cir. 2000). And district courts have awarded even higher sums than that. *See, e.g.*, *Sanchez v. Presidio County*, 2021 WL 9639630, at *18–19 (W.D. Tex. Nov. 3, 2021); *Miniex v. Hou. Hous. Auth.*, 400 F. Supp. 3d 620, 661 (S.D. Tex. 2019); *Minter-Smith v. Mukasey*, Case No. 3:03-cv-1057, 2008 WL 2164565, at *11 (S.D. Miss. May 22, 2008). The damages Pulliam seeks therefore fit comfortably within Fifth Circuit precedent.

### 4.     Attorneys' fees for the criminal trial

Section 1983 plaintiffs may also recover attorneys' fees incurred from related criminal proceedings foreseeably resulting from constitutional violations as compensatory damages. *See Castellano v. Fragozo*, 311 F.3d 689, 711 (5th Cir. 2002), *vacated on other grounds*, 352 F.3d 939 (5th Cir. 2003); *Borunda v. Richmond*, 885 F.2d 1384, 1389–90 (9th Cir. 1988); *Kerr v. City of Chicago*, 424 F.2d 1134, 1141 (7th Cir. 1970).

Pulliam will present evidence at trial that he incurred reasonable attorneys' fees in the amount of $22,730.91 defending himself in a criminal trial resulting from his unconstitutional arrest. Pulliam's attorneys' fees "arose out of the necessity" of defending against "unwarranted criminal charges" and will be "presented to the trier of fact as an item of damage." *Borunda*, 885 F.2d at 1389. Defending himself in the criminal trial was a prerequisite to succeeding on his Section 1983 claims. *See Jenkins v. Town of Vardaman*, 899 F. Supp. 2d 526, 535 (N.D. Miss. 2012) ("The court finds that plaintiff's First Amendment retaliation claim is in fundamental conflict with his guilty plea and that, if he were to prevail on that claim in this court, it would necessarily imply the invalidity of his criminal conviction under *Heck* [*v. Humphrey*]."). Pulliam is therefore entitled to recover the fees from his criminal action because the expenditures were "*unquestionably, a foreseeable result of* [D]efendants' actions." *Castellano*, 311 F.3d at 711.

### 5.     Punitive and nominal damages.

Pulliam is also entitled to punitive damages against the Sheriff. Sheriff Fagan's order that Pulliam be removed from the press conference under the threat of arrest will be "shown to be motivated by evil motive or intent[.]" *Smith v. Wade*, 461 U.S. 30, 56 (1983).

23

Alternatively, Sheriff Fagan's order "involve[d] reckless or callous indifference to [Pulliam's] federally protected rights[.]" *Id.* Pulliam seeks $500 in punitive damages to "punish [Sheriff Fagan] for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Id.* at 54 (quoting Restatement (Second) of Torts § 908(1) (1977)).

Because the Court has found a violation of Pulliam's constitutional rights, Pulliam "is at minimum entitled to nominal damages of $1." *Fyfe v. Curlee*, 902 F.2d 401, 406 (5th Cir. 1990) (citing *Stachura*, 477 U.S. at 308 n.11). The Fifth Circuit has affirmed "an insignificant sum" of $100 in nominal damages, while noting that it has affirmed a nominal damages award of $2,000 in the commercial context. *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003). And at least one district court has cited *Williams* to support an award of $500 in nominal damages. *See Hill v. Kilbourne*, 157 F. Supp. 3d 545, 551 (M.D. La. 2015) ("Unfortunately, $500 remains a trifling sum or inconsequential sum in today's market.").

If it is found that Plaintiff is not entitled to compensatory damages, he seeks nominal damages of $100 in the alternative.

## CONCLUSION

In addition to the violation of Pulliam's constitutional rights at the press conference that this Court already recognized in granting partial summary judgment, Pulliam will prove at trial that his First Amendment rights were also violated when he was ordered to go across the street while filming and when he was arrested in retaliation for First Amendment activities. Pulliam will show that Rollins and Fort Bend County are jointly

liable for that violation. Pulliam will also establish that he is entitled to both permanent injunctive relief and compensatory and punitive, and damages in the amount of **$272,788.26** as remedies for the violations of his constitutional rights (or, in the alternative, $100 in nominal damages if no compensatory and punitive damages are awarded).

Dated: July 1, 2025.                            Respectfully submitted,

                                                /s/ Christen Mason Hebert
                                                Christen Mason Hebert, Attorney-in-Charge
                                                Texas Bar No. 24099898
                                                Federal ID No. 3844981

                                                Jeffrey Rowes*, of counsel
                                                Texas Bar No. 24104956

                                                Michael Peña*, of counsel
                                                Texas Bar No. 24131580

                                                INSTITUTE FOR JUSTICE
                                                816 Congress Ave., Suite 970
                                                Austin, TX 78701
                                                (512) 480-5936
                                                chebert@ij.org
                                                jrowes@ij.org
                                                mpena@ij.org

                                                *Admitted *pro hac vice*

                                                *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and served by the CM/ECF system to all counsel of record.

/s/ Christen Mason Hebert
Christen Mason Hebert, Attorney-in-Charge

*Counsel for Plaintiff*